# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                        SUPERIOR COURT DEPARTMENT

CIVIL ACTION NO.: 2081CV02957

NATALIE ANDERSON; Plaintiff
v.
MARRIOTT INTERNATIONAL, INC.;
RESIDENCE INN NASHUA (formally known as RESIDENCE INN BY MARRIOTT located in
NASHUA and is also the DBA of NASHUA TS LODGING LLC);
TRUE NORTH HOTEL GROUP;
JENNIFER BROOKS;
Defendants.

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. The plaintiff in the above captioned case hereby submits this amended[1] complaint against the Defendants for invasion of privacy, breach of contract, breach of implied contract, breach of the covenant of good faith & fair dealing, unjust enrichment, retaliation/discrimination for opposing discrimination (in violation of state and federal anti-discrimination laws in public accommodations), unfair and deceptive practices and acts, negligence, among other claims as outlined below. Plaintiff demands a jury trial.

## I. INTRODUCTION

2. The plaintiff brings a claim of invasion of privacy, breach of contract, breach of the covenant of good faith and fair dealing, interference with contract and business advantage, unfair treatment based on having made complaints about discrimination based on race (including violations of Title II, and Section 1981, and other state regulations, etc.), unfair and deceptive practices, infliction of emotional distress, consumer protection violations, negligence, and other wrongs, on the part of the defendants. All of which have caused the plaintiff injury and substantial damages as outlined in this complaint.

## II. PARTIES

3. Plaintiff Natalie Anderson is an individual who resides in Massachusetts. She, an African American female, is a natural person and citizen of the Commonwealth of Massachusetts.

4. Defendant Marriott International, Inc. (hereinafter "Marriott") is a Delaware corporation with its headquarters located at 10400 Fernwood Road, Bethesda, Maryland 20817. Marriott is a multinational hospitality company[2] that owns, manages, and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad. Marriott conducts business throughout the State of Massachusetts, and the United States. Marriott owns, operates, manages, or franchises multiple hotels in the New England area, including Massachusetts and New Hampshire. Marriott engages in the operation,

---

[1] According to the Massachusetts Rules of Procedure 15 (a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading.

[2] NB: Starwood Hotels & Resorts Worldwide, LLC is a wholly owned subsidiary of Marriott International, Inc.

management, and franchising of hotels, including the Residence Inn by Marriott line of franchises. Marriott operates, manages, or franchises the Residence Inn by Marriott Nashua hotel property. Marriott has, at all relevant times, engaged in trade or commerce in Massachusetts by advertising and offering hotel lodging to Massachusetts consumers.

5.  Defendant Residence Inn by Marriott of Nashua ("Residence Inn Nashua") is a franchise of Marriott and is managed by an operations management company, named True North Hotel Group, that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire. Residence Inn by Marriott of Nashua or Residence Inn Nashua is owned and/or managed by True North Hotel Group. The True North Hotel Group has apparently setup a limited liability company named Nashua TS Lodging LLC, for the purpose of doing business (DBA) as Residence Inn by Marriott of Nashua or simply Residence Inn Nashua as a sort of tradename. The real purpose of this elaborate structure or setup is unclear. However, Marriott provides general oversight, brand management and operations management, and revenue management oversight over Residence Inn by Marriott of Nashua. Defendant Residence Inn by Marriott of Nashua also goes by the name of "Residence Inn Nashua."

6.  Defendant True North Hotel Group is an operations management company that manages Residence Inn by Marriott of Nashua and that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire. Defendant True North Hotel Group does business in and owns or operates multiple hotel properties in Massachusetts and New Hampshire. The True North Hotel Group provides management services for the Residence Inn by Marriott of Nashua hotel property.

7.  Defendant Jennifer Brooks is the general manager of Residence Inn Nashua. She was the general manager of the Residence Inn Nashua at all times relevant to this case.

8.  NB: These defendants have setup an elaborate scheme in terms of the various entities that they have setup. However, it should be noted that each of the defendants share equally in the decisions and acts described herein. To the extent that any act or acts may have been done or implemented by any one defendant, then all defendants also share in that responsibility under the principal-agent theory and/or the vicarious liability doctrine.

### III. JURISDICTION AND VENUE

9.  The Massachusetts Superior Court has jurisdiction over this action pursuant to its laws and the amount in controversy exceeds $50,000, exclusive of interest and costs, in an amount to be determined at trial.

10. This court has both general and specific personal jurisdiction over the Defendants because the Defendants have conducted and continues to conduct substantial business in the State of Massachusetts.

11. Marriott International, Inc and/or Residence Inn By Marriott are registered with the Massachusetts Secretary of State.

12. This court has specific personal jurisdiction arising from Defendants' decision to conduct business in Massachusetts. The Defendants have sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State to render the exercise of jurisdiction by this court reasonable. NB: It should also be noted that the plaintiff has been the target and recipient of Marriot's numerous direct mail campaigns and email/internet marketing campaigns while she was a citizen of Massachusetts.

13. Venue is proper in this court because Defendants conduct business within this state as outlined above.

## IV. FACTUAL ALLEGATIONS

### A. An Overview of Marriott

14. Marriott is a leading hotel and hospitality company with more than 6,700 properties across 130 countries and territories, reporting revenues of more than $22 billion in fiscal year 2017.[3]

15. Marriott owns about 30 hotel brands including Marriott Vacation Club, Renaissance Hotels, The Ritz-Carlton, Moxy Hotels, and AC Hotels, among others. Marriott has grown exponentially over the last few years by acquiring other hotel chains. Most notably, Marriott acquired Starwood Hotels and Resorts in 2016 for $13.6 billion, bringing Starwood's Sheraton, Westin, W Hotels, and St. Regis properties under the Marriott umbrella. Since the Starwood acquisition, Marriott has become the world's largest hotel chain and now accounts for 1 out of every 15 hotel rooms around the globe.[4]

16. Marriott is a hotel and lodging corporation with its headquarters in Bethesda, Maryland.

17. Marriott owns, franchises, and manages hotels throughout the United States, including numerous hotel properties located in Massachusetts.

18. Marriott conducts its hotel business through various corporate entities operating under numerous trade names. Marriott hotels operate under at least the following trade names" Starwood, St. Regis, The Luxury Collection, W, Westin, Le Méridien, Sheraton, Tribute Portfolio, Four Points by Sheraton, Aloft, Element, The Ritz-Carlton, Design Hotels, Bvlgari Hotels & Resorts, Edition, JW Marriott, Autograph Collection Hotels, Renaissance Hotels, Marriott Hotels, Delta Hotels and Resorts, Gaylord Hotels, AC Hotels by Marriott, Courtyard by Marriott, Residence Inn by Marriott, Springhill Suites by Marriott, Fairfield Inn & Suites, TownePlace Suites by Marriott, and Moxy Hotels.

19. It offers lodging at its hotels to Massachusetts residents, including through its online reservation website and through the websites hosted by third party entities, such as Priceline and Expedia. These websites allow consumers to obtain information about Marriott's hotel rooms and allow consumers to compare Marriott's hotel room prices to that of other hotels as well as make hotel reservations. It also engages in

---

[3] About Marriott Hotels | Marriott Corporate Business Information, Marriott, https://www.marriott.com/marriott/aboutmarriott.mi (as of December 2018).

[4] Marriott Closes $13-Billion Purchase of Starwood to Become World's Largest Hotel Chain, Los Angeles Times, https://www.latimes.com/business/la-fi-marriott-starwood20160923-snap-story.html (last visited Dec. 6, 2018).

direct marketing campaigns to current or potential customers using both direct mail as well as email, social media, and other internet marketing methods.

**B. Marriott Collects Highly Sensitive Information From its Customers.**

20. In order to stay at a Marriott property, guests must first make a reservation and provide Marriott their full names, mailing addresses, email addresses, telephone numbers, credit or debit card numbers, travel itinerary, and often times other sensitive information.

21. According to the Privacy Statement posted on its website, Marriott also collects other "Personal Data" (which it defines as "data that identif[ies] you as an individual or relate to an identifiable individual") about its guests during the course of their visits, including their:

- Name
- Gender
- Postal address
- Telephone number
- Email Address
- Credit and debit card number or other payment data
- Financial information in limited circumstances
- Language preference
- Data and place of birth
- Nationality, passport, visa, or other government-issued identification data
- Important dates, such as birthdays, anniversaries, and special occasions
- Membership or loyalty program data (including co-branded payment cards, travel partner program affiliations)
- Employer details
- Travel itinerary, tour group or activity data
- Prior guest stays or interactions, goods and services purchased, special service and amenity requests
- Geolocation information
- Social media account ID, profile photo and other data publicly available, or data made available by linking your social media and loyalty accounts

In more limited circumstances, Marriott also collects:

- Data about family members and companions, such as names and ages of children
- Biometric data, such as digital images
- Images and video and audio data via: (a) security cameras located in public areas, such as hallways and lobbies, in our properties; and (b) body-worn cameras carried by our loss prevention officers and other security personnel
- Guest preferences and personalized data ("Personal Preferences"), such as your interests, activities, hobbies, food and beverage choices, services, and amenities of which you advise us or which we learn about during your visit Marriott stores this incredibly sensitive trove of data and uses this information for its own commercial purposes.

22. In fact, Marriott collects and uses such detailed and sensitive consumer data that it enlisted a leading data analytics company to use that wealth of data to identify, attract, and retain the most profitable customers. In other words, Marriott uses all of the data it collects to help predict and influence its customers' future behaviors (i.e., convincing them to stay at their properties).

23. According to the analytics company, that's because there's no lack of available data here. Together, they have access to household profiles, including number of kids, type of jobs held by family members, their salaries, where and how they spend their money, and even the type of jeans they buy. The level and granularity of data Marriott and this analytics company collects is frightening. They can even identify when a guest leaves a hotel, where they go, and when they're at home and in bed for the night (by tracking their cell phone's location and activity).

24. Consumers place value in data privacy and security, and they consider it when making decisions on hotel room purchases. Marriott recognizes this and also the sensitivity of the information it collects and, in light of that, promises to use reasonable measures protect and keep it secure.

25. In fact, it is widely accepted that consumers are willing to pay higher prices to do business with merchants that better protect their privacy and information. A number of studies have found that U.S. consider security when purchasing goods and services, and that over 50% of consumers would consider paying more to work with a company with better security.

26. Likewise, studies have shown that over 70% of U.S. consumers will provide less personally identifiable information to organizations that suffer a data breach.

27. Consumer technology markets have likewise demonstrated that consumers value their privacy and security and incorporate data security practices into their purchases. Because of the value consumers place on data privacy and security, services with better security practices command higher prices than those without. Indeed, if consumers did not value their data security and privacy, profit-seeking corporations (like Marriott) would have no reason to tout their privacy and security credentials to current and prospective customers.

28. These value propositions reflect the fact that consumers view companies that promise to adequately secure customer data as being far more useful—and valuable—than those with substandard protections.

29. As a result, a hotel service with substandard data security and privacy protections is less useful and valuable than a product or service using adequate security protocols, and is, in reality, a different service entirely.

30. Had Plaintiff knew Marriott would not adequately protect her private sensitive information, she would not have stayed there.

### C. Plaintiffs' Privacy and Contractual Rights

31. Plaintiffs is a Marriott customer who has stayed at and purchased hotel rooms at a variety of Marriott properties over many years.

32. Plaintiff is a "Titanium" member of Marriott's rewards programs which is the highest level of loyalty-rewards elite membership attainable for Marriott customers.

5

33. Each time Plaintiff reserved and purchased a room at a Marriott hotel, she was required to provide her personal information, including her name, home address, email address, telephone number, travel information, and payment information, among other things.

34. Because she purchased her rooms from a well-known, supposedly reputable hotel chain, Plaintiff believed that Marriott would use reasonable and accepted security methods to secure her personal and sensitive information, and Marriott confirmed that belief in its Privacy Statements.

35. Accordingly, when Plaintiff stayed at Marriott properties and paid for her rooms, she paid for a service and also data privacy and security measures, whereby Marriott promised to take reasonable measures to protect her sensitive and private information.

36. Such data security was a material part of her purchases. Thus, without adequate and reasonable privacy and security protections that Marriott promised, and that Plaintiff justifiably believed she would receive as part of her purchase, the purchased services as a whole were substantially less useful and valuable to her.

37. Had Marriott adequately disclosed that it would not actually implement adequate privacy and security protocols, Plaintiff would—through reading Marriott's privacy statements or learning through the media—know to be wary of Marriott's privacy and data security practices.

38. Accordingly, had Marriott adequately disclosed its lax privacy and security practices prior to her purchases, plaintiff would not have stayed at Marriott properties in the first place including the Residence Inn Nashua.

**D. Defendants Breached Plaintiffs' Privacy and Contractual Rights**

39. The defendants violated the plaintiff's privacy by divulging to hostile third party strangers certain sensitive private and personal information about the plaintiff and about its agreement with plaintiff and about plaintiff's stay at Defendants' hotel. This invasion of privacy was wanton and reckless and without regard to the plaintiff's rights and resulted in damages.

40. In or around December 2018, the defendants knowingly and intentionally divulged and disclosed to outside third parties/outsiders/unauthorized persons, private customer information/data about the plaintiffs including the personal and hotel occupancy records and details of the plaintiff's stay at the Residence Inn Nashua.

41. In particular, Defendant Jennifer Brooks, general manager of Residence Inn Nashua, specifically gave the plaintiff's private customer information to at least two strangers/outsiders (who did not work for Marriott or who did not work for any of the defendants nor were employees, contractors, or agents of any of the defendants). These two strangers posed as "private investigators", and solicited from Ms. Brooks, information about the plaintiff, by simply walking into the Defendants' hotel and asking to speak with the general manager.

42. Without seeking the consent of the plaintiff, Defendant Brooks recklessly and carelessly, without hesitation or caution or due diligence, vomited out wholesale private customer information about the plaintiff to these third party outsiders/strangers who walked-in from the street, by looking up plaintiff's information in Defendant hotel's computer system and directly divulging plaintiff's private customer information to these two strangers who simply walked off the street into hotel and began asking questions about the plaintiff. There was no subpoena presented to Ms. Brooks nor was there any basis in law or company policy to breach the data privacy of the plaintiff.

43. This was a gross direction of duty by Ms. Brooks to protect and safeguard the privacy and security of the plaintiff's customer information contained within Marriott's computer system.

44. The defendants' conduct impermissibly invaded and intruded upon the plaintiff's privacy and contract rights.

45. Marriott hotels, including Residence Inn Nashua, generally have a privacy and confidentiality agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at a Marriott hotel and, in this case, when the plaintiff stayed at defendants' hotel in 2017.

46. In addition, the defendants in this case (above and beyond Marriott's privacy policies) had or entered into a specific agreement with the plaintiff, that was entered into between the plaintiff and the Residence Inn Nashua, to keep information about her stay private and confidential and to not release any information to anyone without her consent. This agreement was, in part, triggered specifically because of certain harassing anonymous phone-calls that were made/directed to plaintiff's room, which the defendants wrongly allowed to be transferred to her unit more than once, causing her emotional distress and terror.

47. Hence, in addition to the expectation of privacy that attaches generally to any hotel guest when they stay at hotel, as a matter of privacy law and constitutional law (an expectation of privacy, or rights thereof, that have been recognized by the US supreme court and the Massachusetts supreme court), there is an additional expectation of privacy that attaches to a guest that stays at a Marriott hotel given that Marriott publicly announced policies and promises, upon which customers rely on to their detriment. And beyond even that, the plaintiff had an even greater or additional expectation of privacy based on the specific agreement that was entered into by the defendants to protect and safeguard the information of the plaintiff for safety, security, and privacy reasons.

48. The plaintiff therefore had a strong privacy interest and a contractual interest in keeping her information private and confidential. Such information also contains credit card information used, and other personal and private information including but not limited to rewards card information, rewards and loyalty patterns, purchase habits, other private financial data, data regarding personal preferences and requests.

49. Also, the plaintiff had a right to privacy regarding any future reservations that they make with Marriott hotels.

50. But the defendants ignored these obligations, promises and contractual duty in order to wantonly divulge information about the plaintiff's information including but not limited to details about certain of plaintiff's lodging arrangements in the past and for the future as well as private hotel records pertaining to the plaintiff. This was a complete breach of privacy.

51. Moreover, courts have recognized a hotel guest's right to privacy as it relates to their occupancy at a hotel ("we have stated that the privacy interest in a hotel room is comparable to that of the home." See State v. Tarasuik, 160 N.H. 323, 328 (2010) at 328.).

52. Similarly, courts across the nation have enforced the privacy rights of hotel guests. See also Erin Andrews v. Marriott International, Inc., 2016 IL App (1st) 122731, where the plaintiff was awarded approximately $55 million for the violations of the privacy rights of a hotel guest.

53. Moreover, all hotels also have an interest in protecting the privacy of their hotel guests. See City of Los Angeles v. Patel (US Supreme Court 2015).

54. If hotel guests are made to believe that their information will not be protected, hotels will lose customers and market share. This is especially true for larger global brands, like Marriott, who rely heavily on their reputational assets for global market share.

55. Because Marriott had a specific agreement with the plaintiff to keep information about their stay private and confidential and to not release any information to anyone without their consent, then Marriott also had a further specific contractual obligation towards the plaintiff.

56. This obligation should not have been interrupted and plaintiff's private information should not have been disclosed to third parties/outsiders/unauthorized persons, simply because a third party wanted to intrude to obtain private information about the plaintiff.

57. Additionally, Plaintiff took (and continues to take) considerable precautions to protect the unauthorized dissemination of her personal and sensitive information to unauthorized persons or third parties that she has not consented to. Unfortunately, as a result of Marriott's failure to implement its promised and paid-for security practices, Plaintiff's personal and sensitive information was disseminated without her consent.

58. As a result, Plaintiff has suffered damages.

59. Additionally, as a result of Marriott's breach and failure to adequately protect plaintiff's information, Plaintiff is at risk that unauthorized third parties will or could further misuse her sensitive and personal information[5].

---

[5] NB: In fact, Plaintiff has suffered the fraudulent use of her personal and financial data by unknown parties, resulting in her having to close her credit card that was on file with Residence Inn Nashua and issue a fraud alert on her card account. Plaintiff does not

60. The defendants, as a Marriot hotel, know better (or should have known better) than to disclose such private customer information to outsiders/strangers/unauthorized persons. The defendants know that Marriott hotels have privacy agreements concerning their guest information. The fact that the defendants were so cavalier with divulging plaintiff's private information to third parties shows a wanton disregard for plaintiff's privacy rights.

61. Defendants must have known that disclosing private customer information to third parties would lead to harm and damage.

62. The defendants' conduct was foreseeable to create or cause havoc to the plaintiff and thus was done intentionally without regard for the plaintiff's rights.

63. NB: The defendants willfully divulged plaintiff's information to strangers/outsiders/unauthorized persons, even after there was an incident of multiple harassing anonymous calls transferred[6] by the hotel front desk to the plaintiff's room (which involved silent heavy breathing and then hanging up more than once) for which the plaintiff felt threatened, harassed and stalked and for which the plaintiff complained to the hotel/the defendants, and requested that the hotel not transfer anyone to her room or divulge any information to anyone whatsoever based on safety concerns (to which the defendants agreed).

64. The defendants committed a serious and significant violation of the plaintiff's right to privacy in subsequently divulging her private customer information to strangers/outsiders/unauthorized persons. And this was no low-level error of a low-level employee. This was done by the general manager who definitely should have known better. To this day, it is unclear what motivated the general manager to commit such an egregious violative act.

65. Yet, to add insult to injury, even after the defendants breached plaintiff's privacy, they still did not inform the plaintiff that there was a breach. The defendants had a duty to inform the plaintiff that the defendants had disclosed her information to a third party. The plaintiff only discovered the breach from another

---

know for certain if the defendants' unauthorized breach of plaintiff's privacy may have led to any fraud or breach of her credit cards. Discovery, however, will tell or confirm this information in terms of the full extent of the breach of privacy that occurred.

[6] This itself is another example of a breach of privacy and security as well, by defendants' hotel. The anonymous person who called, who the front desk later stated was a male, asked if there was a Natalie Anderson staying there and the hotel front desk staff immediately confirmed this and then transferred the person to her room without first checking with the plaintiff. The anonymous person did not know the room number of the plaintiff or the extension to her room, nor did the person know if the plaintiff was a resident/occupant of the hotel. This exemplifies the lax privacy and security of Defendants' hotel. Moreover, when the person called a second time, the front desk person recognized the voice and for the first time asked who it is, and the person stated he was a "business associate" and refused to give his name, but still the hotel desk staff transferred his call again to plaintiff's room where he again breathed into phone saying nothing while the plaintiff answered the phone and kept saying "hello", but to no avail until the anonymous caller hung up without saying anything. This occurred more than once. Yet, it did not occur to the hotel front desk staff that if the anonymous male caller (who refused to give his name) was a business associate, why did he not know her room number in the first place or her extension or have her cellphone or know for certain if she was an occupant. The bottom line is that the hotel front desk should not have disclosed to the anonymous caller any information about the plaintiff, nor should he have transferred him to her room more than once without getting this basic information from him or without first checking with the plaintiff, which on information and belief accords with Marriott policies and best practices.

source not related to the defendants. The defendants never informed the plaintiff that two strangers had been asking questions about the plaintiff and were seeking to obtain information about plaintiff's stay and related private and sensitive information. The defendants also never informed the plaintiff that Ms. Brooks divulged private information about the plaintiff to these two strangers/outsiders/unauthorized persons. Instead, the defendants covered it up and hid this from the plaintiff. The defendants left the plaintiff there as a "sitting duck" while she was a resident at Defendants' hotel. These strangers could have been stalkers or worked on behalf of a stalker or someone capable of violence against women. It is totally outrageous for the defendants to have engaged in such blatant flagrant violative conduct.

## V. COUNTS

66. The plaintiff alleges the following violations of law by the defendants: breach of privacy; breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, interference with business or contractual relations; retaliation/discrimination based on race (associational retaliation/discrimination); unfair and deceptive practices/acts (93A violations); negligence; intentional infliction of emotional distress, unfair and deceptive practices.

## COUNT I: BREACH OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)
## (All Defendants)

67. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

68. The plaintiff alleges invasion of her right of privacy under G.L. c. 214, § 1B, which states: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.'" See also Nelson v. Salem State College, 446 Mass. 525, 536 (2006) ("To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious."). See also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-518 (1991) (Schlesinger).

69. The statute allows recovery for the public disclosure of private facts. See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 n. 16 (2005); Schlesinger, supra at 517 & n. 4, 519-521; Amato v. District Attorney for the Cape & Islands Dist., 80 Mass.App.Ct. 230, 240 (2011).

70. "The right which the plaintiffs claim was infringed upon is their right to be left alone." Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 637 (1996) (Ellis). See Schlesinger, supra at 517.

71. "Nowhere are expectations of privacy greater than in the home, and '[i]n the home ... all details are intimate details....' " Commonwealth v. Balicki, 436 Mass. 1, 12 n. 14 (2002), quoting Kyllo v. United States, 533 U.S. 27, 37 (2001).

72. Massachusetts recognizes a legal claim for publication of private facts based on Mass. Gen. Laws ch. 214, § 1B, which proscribes "unreasonable, substantial or serious interference" with one's privacy.

73. The Massachusetts privacy statute allows remedies for "breaches" of private information or "invasions" of information privacy.

74. Under Massachusetts law, a publication of private facts claim involves publication of facts of a "highly personal or intimate nature" which are "of no business of the public."

75. The disclosure need not be made to the public at large and a disclosure to two people has been found sufficient to warrant relief under § 1B.

76. Offensiveness to a reasonable person is not one of the statutory criteria under § 1B but Massachusetts courts consider publication of private information "of no business to the public" to be "offensive." See Cefalu v. Globe Newspaper Co., 391 N.E.2d 935, 939 (Mass. App. Ct. 1979).

77. The plaintiff has been aggrieved by an unauthorized disclosure of confidential information, which is a breach of privacy under the state right of privacy statute:  Massachusetts General Laws, chapter 214, section 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy.").

78. The acquisition, access, use or disclosure of protected private information concerning the plaintiff to unauthorized persons is a "breach" giving rise to significant financial, reputational or other harm to the plaintiff, especially when intentionally done by a hotel.

79. The plaintiff thus alleges harm from the privacy breach and the plaintiff has suffered damages including mental distress and harm to her interest in privacy arising from the information being made accessible to third parties.

## COUNT II: BREACH OF CONTRACT
### (All Defendants)

80. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

81. The defendants violated their contract by impermissibly disclosing the plaintiff's private information to third party strangers/ outsiders/ unauthorized persons, posing as private investigators, and, as a result of that disclosure, plaintiff was harmed.

82. The defendants have engaged in a breach of contract resulting in a violation of plaintiff's right to privacy, Mass. Gen. Laws ch. 214, §1B.

83. There existed a contract with defendant and plaintiff. The defendants breached the contract it had with the plaintiff and her spouse. The defendants breached their obligation not to disclose his information or data without proper cause or legal compulsion.

84. The defendants breached the contract with plaintiff by providing private third parties with her private information, and as a result of that contract breach the plaintiff suffered harm.

85. Where there is an agreement between a hotel and a customer to rent a unit for a specified time, the hotel has a duty to the customer, who has confirmed this arrangement, to honor its end of the bargain by providing the customer with the service which they both agreed upon. By entering this agreement, the hotel's promises including those concerning privacy are further ratified.

86. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiffs.

87. Marriott, including Residence Inn line of business, have a contractual agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at their hotels and, in this case, when the plaintiffs stayed at Residence Inn Nashua.

88. Plaintiffs relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail themselves of all of the benefits, access, resources, and protections available to them as promised by Defendants.

89. Defendants breached this contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive, and disparate manner and by retaliating against plaintiff when defendants learned she had raised concerns in a court complaint about how she was treated by a neighboring hotel.

90. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

91. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

92. Plaintiff had a reasonable expectation that the defendants would adhere to the terms of such contract.

93. Plaintiff further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and federal regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation. If plaintiff had known upfront that the defendants would have engaged in such discriminatory and retaliatory practices, plaintiff would likely have elected to stay elsewhere, investing their resources, equity, and time other than at Residence Inn Nashua.

94. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

95. Moreover, the defendants allowed itself to be influenced by the third-party interference.

96. Similarly, upon learning of a complaint of race discrimination against a neighboring hotel, the defendants allowed that complaint against a neighboring hotel to influence how it treated the plaintiff, which is a form of associational discrimination. It was only after the defendants became aware that

plaintiff had previously made a discrimination claim against a neighboring hotel, did the defendants then suddenly began to shift its dealing and treatment of the plaintiff, resulting subtle and constructive attempts at breaching the agreement with plaintiff.

97. Plaintiff thus further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and other federal and state regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation.

98. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

99. As a result of those actions, plaintiff has suffered and will continue to suffer damages.

## COUNT III: BREACH OF IMPLIED CONTRACT
### (All Defendants)

100. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

101. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

102. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

103. Plaintiff had a reasonable expectation that defendants would adhere to the terms of such contract.

104. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiff.

105. Plaintiff relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail himself of all the benefits, access, resources, and protections available to his as promised by Defendants.

106. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive, and disparate manner and by retaliating against plaintiffs when they raised concerns about how they were being treated or about their adherence to their own policies.

107. As a result of those actions, plaintiff have suffered and will continue to suffer damages.

108. Defendants solicited and invited Plaintiff to share personal information such as dates of birth, passport numbers, credit and debit card numbers and other payment data, employer details, geolocation information, and other personal and confidential information as described herein, when they booked a room.

109. When Plaintiff provided their personal and confidential information to Defendants when they booked a room, they entered into implied contracts with the Defendants, pursuant to which Defendants agreed to

safeguard to protect their information, and to timely and accurately notify Plaintiff if their data had been breached or compromised.

110. Plaintiff would not have provided and entrusted their personal and confidential information to Defendants in connection with booking a room in the absence of the implied contract between them.

111. Defendants breached the implied contracts it made with Plaintiff by failing to safeguard and protect the personal and confidential information of Plaintiff and by failing to provide timely and accurate notice to them that their information was compromised or disclosed to unauthorized persons.

112. As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff has suffered damages.

## COUNT IV: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (All Defendants)

113. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

114. Defendants owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiff to receive the fruits of the contract.

115. Through its actions and inactions, Defendants breached its duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests.

116. By the conduct alleged herein, the defendants have breached the implied covenant of good faith and fair dealing and caused harm to plaintiff.

117. As a result, Plaintiff has suffered damages.

118. The defendants violated the implied covenant of good faith and fair dealing when the defendants breached the terms of the contract by impermissibly disclosing the plaintiff's information to third party outsiders.

119. In Massachusetts, every contract "imposes an obligation of good faith and fair dealing in its performance and enforcement," and this covenant is that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Lechoslaw v. Bank of v. N.A., 575 F. Supp. 2d 286, 296–97 (D. Mass. 2008).

120. This covenant is intended to ensure "that the parties remain faithful to the intended and agreed expectations of the contract" and that neither party will do anything that will prevent the other party from receiving the benefits of the contract. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008).

121. There is a contract between the plaintiff and defendants that requires the defendants to protect the plaintiff's personal information by not disclosing it to third parties including private investigators without being compelled to do so.

122.    The plaintiff clearly has an expectation that her data would be kept confidential, and that expectation was violated when the defendants provided the records to third party outsiders claiming to be private investigators.

### COUNT V: UNJUST ENRICHMENT

### (All Defendants)

123.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

124.    In the alternative, plaintiffs also allege Unjust Enrichment.

125.    The defendants have received a substantial monetary benefit, in the form of several months of rent payment by Plaintiff.

126.    As set forth above, due to gross and numerous violations of its own procedures and its policies, plaintiffs have suffered prejudice and was subjected to mistreatment, disparate treatment, discrimination, retaliation, and unfair practices.

127.    Defendants have therefore been unjustly enriched by monies paid for services to the Defendants that have been inferior, sub-par, poor and markedly hostile.

128.    Plaintiffs are entitled to credits for room nights based on the Defendants' customer satisfaction guarantee.

129.    By its wrongful acts and omissions, Defendants have been unjustly enriched at Plaintiff's expense, and conversely Plaintiff has been unjustly deprived.

130.    As a result, plaintiff has been caused significant harm.

131.    For the reasons set forth herein, under the circumstances it would be inequitable for the defendants to retain all of the monies that they have received from plaintiff.

### COUNT VI: INTERFERENCE WITH ADVANTAGEOUS BUSINESS OR CONTRACTUAL RELATIONSHIPS

### (Defendant Jennifer Brooks)

132.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

133.    Plaintiff possessed an advantageous relation with Marriott and thereby all Marriott franchises.

134.    The plaintiff had a contractual or business relationship with Residence Inn Nashua, and the acts of Jennifer Brooks interfered with that contract or business relationship.

135.    Plaintiff anticipated further advantageous relations with Marriott and Residence Inn Nashua in the future.

136.    Defendant Brooks intentionally interfered with the plaintiff's advantageous or contractual relationship with Residence Inn Nashua when she disclosed plaintiff's information to private investigators and when, upon learning of plaintiff's discrimination lawsuit against another hotel, she sought to drive the plaintiff out of Defendants' hotel by various acts, including subtle and covert ones, intended to deprive

15

plaintiff of her contractual rights including unreasonably raising her rents to unaffordable amounts or by attempting to cancel or block her return reservations with Residence Inn Nashua. Similarly, the defendants unwound or sought to unwind promises and agreements that had been made with plaintiff regarding favorable rates for long-term stays. They effectively tried to do things to not welcome back the plaintiff at the hotel (after discovering the plaintiff's protected activity while the plaintiff went away for a Christmas trip and was scheduled to return thereafter to defendants' hotel).

137.  As a result of Defendant Brooks' misconduct, Plaintiff's advantageous relations/contractual relations may be irretrievably damaged. Plaintiff has suffered and will continue to suffer substantial and irreparable harm.

138.  By the above-described conduct, *inter alia,* Ms. Brooks knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with Plaintiff's actual and potential advantageous relations and contractual relations.

139.  As a result of this intentional interference, plaintiff has suffered and continue to suffer damages.

### COUNT VII: RETALIATION/DISCRIMINATION BASED ON RACE
### (ASSOSCIATIONAL RETALIATION/DISCRIMINATION BASED ON PROTECTED
### ACTIVITY)
### (All Defendants)

140.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

141.    The defendants sought to constructively break plaintiff's rental agreement for reasons related to plaintiff raising concerns that a neighboring hotel (not the defendants' hotel) had engaged in racial discrimination and retaliation for raising concerns about discrimination, against the plaintiff.

142.    Defendants then, suddenly and without explanation, began to treat the plaintiffs differently and less favorably, and thus engaged in intentional conduct in violation of laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiffs' protected rights.

143.    Hence, Defendants sought to breach the agreement with plaintiff in retaliation because she raised concerns about racial discrimination by another neighboring hotel.

144.    The defendants engaged in conduct adverse to the plaintiff within weeks of them finding out about the discrimination complaints against the neighboring hotel.

145.    There is a temporal proximity and a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e., defendants took adverse action because plaintiff engaged in protected activity.

146.    [NB: There is a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e., defendants took adverse action because plaintiff engaged in protected activity. It is very rare that there will be direct evidence of retaliatory motive. Instead, most retaliation cases are proven by circumstantial evidence of the retaliatory motive. However, in this case, there is both direct as well as circumstantial evidence of retaliation].

147.    Furthermore, the pattern of discrimination and retaliation also occurred relative to how plaintiff was treated in general as a guest, including having plaintiff's rent increased shortly after her protected activity was discovered.

148.    Defendants thus have also violated 42 U.S.C. § 1981. Section 1981 provides: *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to **make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).* The statute also states that *"[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."* 42 U.S.C. § 1981(b).

149.    The Defendants denied plaintiff the use and enjoyment of the benefits, privileges, terms, and conditions that they extend to all other similarly situated guests, residents, and invitees. The Defendants breached their contract with plaintiff and retaliated/discriminated against plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the state code.

150.    To state a *prima facie* case of discrimination, the plaintiff is to show that: (1) they belonged to a protected class; (2) they sought to make a contract for services ordinarily provided by the defendant; and (3) they were denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

151.    In this case, the plaintiff has clearly met this burden for a prima facie case of discrimination, as follows:

    a.    The plaintiff is African American and belong to a protected class. This is undisputable.

    b.    Plaintiff sought to make and enforce a contract for services ordinarily provided by the defendants. This is undisputable.

    c.    Plaintiff was denied the right to enter/enforce a contract for such services simply because she opposed discrimination at a neighboring hotel. Plaintiff was treated in a manner that was unfavorable compared to other guests outside the protected class, only because the defendants

discovered plaintiff's protected activity, and the plaintiff was treated in such a hostile manner that a reasonable person would find it objectively retaliatory/discriminatory.

152.    By seeking to unwind the contract it had with plaintiff, the Defendants interfered with the making and enforcement of a contract.

153.    Defendants' actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

154.    The plaintiff has suffered damages as a result of the foregoing.

## COUNT VII: VIOLATION OF FEDERAL CIVIL RIGHTS STATUTE 42 U.S.C. § 1981
### (All Defendants)

155.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

156.    By the above acts, Defendants violated 42 U.S.C § 1981 by discriminating against plaintiff because of her race as African American [black].

157.    Section 1981 guarantees freedom from racial discrimination in the making, enforcement performance, modification, and termination of contracts.

158.    Section 1981 also guarantees enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

159.    Plaintiff's use of the Defendant's hotel and services falls under section 1981 protection.

160.    Defendants have (1) intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, because of Plaintiff's race; and (2) limited and classified or stereotyped Plaintiff in ways that adversely affected her status as a customer, because of her race; all in violation of Title II of the Civil Rights Act of 1964. As a direct and proximate result of Defendant's intentional, deliberate, and willful discriminatory acts and omissions, Plaintiff has suffered damages.

161.    Discrimination in hotel accommodations include refusals to provide African Americans service, or the harassment of African American customers, or providing inferior service to African Americans. This country has had a dark history throughout the country, including throughout the south where the Civil Rights Movement of the 1960s was symbolized by challenges to segregation in places of public accommodations and gaining equal access to hotels, restaurants, lunch counters, and stores for African Americans.

162.    The right of African American customers to be free from discrimination in hotel accommodations have been upheld in landmark cases such as: Gilliam v. HBE Corp. (d/b/a Adam's

163.    Mark Hotel), a challenge to discriminatory treatment of African American guests at the Adam's Mark Hotel during the 1999 Black College Reunion in Daytona Beach that settled for $2.1 million; and the

series of cases challenging the pervasive discrimination against African Americans during the annual Black Bike Week in Myrtle Beach, South Carolina.

164.    Moreover, retaliation for opposing discrimination is against public policy because it creates a chilling effect on the society's goal of encouraging citizens to oppose, report and speak up about discriminatory practices wherever they occur.

165.    The above raises an important question of federal law as it implicates federal concerns pertaining to the eradication or prevention of race discrimination in public accommodations. It also implicates the issue of the right to make and enforce contracts as an equal protection/constitutional right (as well as certain rights under Title VIII and/or Title II of the Civil Rights Act).

166.    NB: Marriott needs to ensure that its franchisee hotels do not retaliate/discriminate against their black customers who have engaged in protected activity in opposing discrimination from other hotels and they cannot simply wash their hands of any responsibility to eradicate race discrimination from public accommodations simply because it entered into a franchising relationship with a franchisee of its Marriott brand.

## COUNT VIII: UNFAIR AND/OR DECEPTIVE PRACTICES AND/OR ACTS ("93A" VIOLATIONS)

### (All Defendants)

167.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

168.    The defendants' disclosure of plaintiffs' private information violated Massachusetts General Laws Chapter 93A, Section 9.

169.    Chapter 93A provides a cause of action to any person who has been harmed by another's use or employment of any unfair or deceptive method, act, or practice.  Mass. Gen. Laws ch. 93A, § 9.

170.    [NB: Plaintiff has also sent a 93A demand letter sent to the defendants but has not received an answer as yet. The plaintiff intends seek leave to amend her complaint if and/or when she receives a response to her 93A demand letter].

171.    The defendants violated their contract by impermissibly disclosing the plaintiff's private information to private investigators, and, as a result of that disclosure, plaintiff was harmed.

172.    Massachusetts courts have consistently required unfair or deceptive practices to be more than a "mere breach of contract, but rather must show misconduct rising to the level of commercial extortion or a similar degree of culpable conduct."  See Lam v. PNC Mortg., 130 F. Supp.3d 429, 435–36 (D. Mass. 2015) (quoting Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000).

173.   The defendants have engaged in a breach of contract resulting in a violation of plaintiff's right to privacy, Mass. Gen. Laws ch. 214, §1B.

174.   The Massachusetts 93A (consumer protection) statute protects both consumers by promoting fair competition in commercial markets for goods and services. It prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

175.   93A applies to Defendants' actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

176.   The Defendants are each a "person" as defined under the statute. Defendants' conduct as alleged herein relates to "sales." Plaintiff is a "consumer" as defined under the statute.

177.   Defendants advertise, offer, and sell "consumer goods" or "consumer services" as defined by the statute.

178.   Defendants advertise, offer, or sell or services in Massachusetts and engage in trade or commerce directly or indirectly affecting the people of Massachusetts.

179.   Defendants engaged in unfair and deceptive practices, in violation of 93A by

- Making false or misleading oral and written representations with the capacity or tendency, or effect of deceiving or misleading consumers.

- Failing to state a material fact where the failure deceives or intends to deceive.

- Advertising or offering consumer goods or services without intent to sell them as advertised or offered; and

- Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer relies on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement.

180.   Specifically, Defendants engaged in these unfair and deceptive trade practices in connection with the sale or selling of consumer goods or services, in violation of 93A, by:

- Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's personal information, which was a direct and proximate cause of the breach of plaintiff's privacy.

- Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous incidents.

- Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's' personal information, which was a direct and proximate cause of the breach of privacy.

- Misrepresenting it would protect Plaintiffs' personal information.

20

- Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' personal information.

181. Defendants were aware or should have been aware that they were not implementing proper or adequate privacy and security protections as outlined above.

182. Defendants acted intentionally, knowingly, and maliciously to violate 93A as it was on notice of the possibility of an attempt by outsiders or unauthorized third parties to breach the plaintiff's private customer information.

183. Defendants intended to mislead Plaintiff and induce her to rely on their misrepresentations and omissions.

184. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data privacy/security and ability to protect the confidentiality of consumers' personal and confidential information.

185. Had Defendants not engaged in the deceptive omission of material facts described above, Plaintiff would have been presented with an informed choice as to whether or not to book a room at their hotel.

186. Plaintiff was injured by Defendants' unfair and deceptive acts, and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

187. Had Defendants disclosed their true privacy and security practices, Plaintiff either would not have booked at Defendants' hotels or would have paid substantially less to do so (i.e., the value of a hotel stay without adequate privacy and security protections is worth substantially less than the value of a hotel stay with adequate protection).

188. As a direct and proximate result of Defendants' violation of chapter 93A, Plaintiff have suffered harm in the form of monies paid for Defendants' products and/or services.

189. Plaintiff also seeks an order requiring Defendants to cease the unfair practices described herein.

## COUNT IX: NEGLIGENCE

### (All Defendants)

190. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

191. Plaintiff pleads this negligence count as an additional or alternative count.

192. As a custodian of important and sensitive personal information, Defendants owed a duty of reasonable care to Plaintiff in safeguarding those records from theft or unauthorized access.

193. Defendants knew, acknowledged, and agreed the information was private and confidential and would be protected as private and confidential.

194. Defendants breached that duty by employing substandard methods of data security, and failing to adequately protect and safeguard plaintiff's personal, confidential, and sensitive information by knowingly

disregarding standard privacy and security principles, despite obvious risks, and by allowing unauthorized access to Plaintiff's' personal information. Furthering its dilatory practices, Defendants failed to provide adequate oversight of the personal information to which it was entrusted, resulting in a serious breach of the personal and confidential information of the plaintiff.

195.    Moreover, the law imposes an affirmative duty on Defendants to timely disclose the unauthorized access of personal and confidential information to Plaintiff so Plaintiff could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their information.

196.    Defendants breached their duty to notify Plaintiff of the unauthorized access by failing to notify them of the breach of privacy. To date, the Defendants have not provided sufficient information to Plaintiff regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff.

197.    As a direct result of Defendants' negligent conduct, Plaintiff suffered harm.

198.    But for Defendants' failure to secure this data, Plaintiff would not have suffered this harm.

199.    It is reasonably foreseeable that Defendants' practices would harm the plaintiff.

200.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages.

## COUNT X: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (All Defendants)

201.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

202.  Defendants have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

203.  Defendants caused or created emotional distress for Plaintiff.

204.  Defendants knew that their breach of privacy and their retaliation/discrimination against Plaintiff would cause emotional distress.

205.  The emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

206.    Defendant brooks undertook these actions against the plaintiffs in order to cause them distress and drive them out of the hotel; that her conduct did cause the plaintiffs "extreme discomfort and distress"; and that "the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it."

207.  Defendants intentionally inflicted emotional distress on Plaintiff when as a direct and proximate result of Defendants actions and inactions Plaintiff were caused to suffer severe emotional distress as the result of which a reasonable person in Plaintiff's position would have suffered similar emotional distress under like circumstances.

208.  Plaintiff sustained damages as a result of Defendants intentional infliction of emotional distress on them.

209.  Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

## VI. CONCLUSION

210.    As a result of the above-described acts, the plaintiffs suffered, continue to suffer, and will in the future suffer emotional distress, embarrassment, frustration, anger, and feelings of racial stigmatization, all to her economic and noneconomic damages in an amount to be determined by a jury at trial.

211.    Plaintiff is also entitled to reasonable attorney fees pursuant to statute.

WHEREFORE, I respectfully pray that the Court grant the following relief:

(1) Enter judgment in Plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief, and such other and further relief as Plaintiffs may be entitled to by bringing this action.

(2) Award damages within the jurisdictional limits of this court and enhanced damages as appropriate.

(3) Award reasonable attorneys' fees and costs including service and filing fees.

(4) Grant a pro se liberal construction to this pleading.

(5) Order such other relief as this Court deems just and equitable.

Respectfully submitted by,
Plaintiff Natalie Anderson

679 Washington Street, Suite # 8-206
Attleboro, MA 02703

Dated: November 12, 2021

# EXHIBIT 2

## 2081CV02957 Anderson, Natalie vs. Residence Inn Nashua Doing Business as Nashua TS Lodging LLC et al



- Case Type:
- Torts
- Case Status:
- Re-Opened
- File Date
- 12/08/2020
- DCM Track:
- A - Average
- Initiating Action:
- Other Tortious Action
- Status Date:
- 04/29/2022
- Case Judge:
- 
- Next Event:
- 

All Information | Party | Event | Tickler | Docket | Disposition

### Party Information

**Anderson, Natalie**
- Plaintiff

| Alias | **Party Attorney** |
|---|---|
| | • Attorney |
| | • Pro Se |
| | • Bar Code |
| | • PROPER |
| | • Address |
| | • Phone Number |
| | • |

**More Party Information**

**Residence Inn Nashua**
- Defendant

| Alias | Party Attorney |
|---|---|

**More Party Information**

**Brooks, Jennifer**
- Defendant

| Alias | Party Attorney |
|---|---|

**More Party Information**

**Marriott, International, Inc.**
- Defendant

| Alias | Party Attorney |
|---|---|

**More Party Information**

**True North Hotel Group**
- Defendant

| Alias | Party Attorney |
|---|---|

**More Party Information**

### Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 03/28/2022 02:00 PM | Civil L1 CR15 | | Motion Hearing | Doolin, Hon. Michael | Rescheduled |
| 04/28/2022 02:00 PM | Civil L1 CR15 | | Motion Hearing | Wall, Hon. Joshua | Held via Video/Teleconference |

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---------|------------|----------|----------|----------------|
| Service | 12/08/2020 | 03/08/2021 | 90 | 11/16/2021 |
| Answer | 12/08/2020 | 04/07/2021 | 120 | 11/16/2021 |
| Rule 12/19/20 Served By | 12/08/2020 | 04/07/2021 | 120 | 10/28/2021 |
| Rule 12/19/20 Filed By | 12/08/2020 | 05/07/2021 | 150 | 10/28/2021 |
| Rule 12/19/20 Heard By | 12/08/2020 | 06/07/2021 | 181 | 10/28/2021 |
| Rule 15 Served By | 12/08/2020 | 02/01/2022 | 420 | 10/28/2021 |
| Rule 15 Filed By | 12/08/2020 | 03/03/2022 | 450 | 10/28/2021 |
| Rule 15 Heard By | 12/08/2020 | 03/03/2022 | 450 | 10/28/2021 |
| Discovery | 12/08/2020 | 11/28/2022 | 720 | 10/28/2021 |
| Rule 56 Served By | 12/08/2020 | 12/28/2022 | 750 | 10/28/2021 |
| Rule 56 Filed By | 12/08/2020 | 01/27/2023 | 780 | 10/28/2021 |
| Final Pre-Trial Conference | 12/08/2020 | 05/29/2023 | 902 | 10/28/2021 |
| Judgment | 12/08/2020 | 12/08/2023 | 1095 | 10/28/2021 |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|-------------|-------------|---------------|--------------|
| 12/07/2020 | Attorney appearance<br>On this date Pro Se added for Plaintiff Natalie Anderson | | |
| 12/07/2020 | Original civil complaint filed. | 1 | Image |
| 12/07/2020 | Civil action cover sheet filed. | 2 | Image |
| 12/07/2020 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit | 3 | |
| 12/08/2020 | Case assigned to:<br>DCM Track A - Average was added on 12/08/2020 | | |
| 03/09/2021 | Plaintiff Natalie Anderson's Motion for extension of time to serve process on defendants due to health reasons/covid-19 | 4 | Image |
| 03/15/2021 | Endorsement on Motion to (#4.0): ALLOWED<br><br>Judge: Barrett, Hon. C. William | | Image |
| 06/03/2021 | Plaintiff Natalie Anderson's Motion for Extension of Time To Serve Process on Defendants Due To Health Reasons/Covid-19 | 5 | Image |
| 08/03/2021 | Endorsement on Motion for extension of time to Serve Process on Defendants Due to Health Reasons/COVID-19 (#5.0): ALLOWED<br><br>Judge: Wall, Hon. Joshua | | Image |
| 09/07/2021 | Plaintiff Natalie Anderson's Motion for Extension of Time to Serve Process on Defendants Due to Health Reasons/ COVID-19 | 6 | Image |
| 09/21/2021 | Endorsement on Motion for Extension of Time to Serve Process (#6.0): ALLOWED<br>Tolling of time requirements ended.  Plaintiff needs to complete service.  The motion is Allowed, but for extension to October 22, 2021 only. Service must be made on or before October 22, 2021.<br>So Ordered.<br><br>Judge: Wall, Hon. Joshua | | Image |
| 10/22/2021 | Plaintiff Natalie Anderson's EMERGENCY Motion to Extend Time to Serve Process on Defendants | 7 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 10/28/2021 | Endorsement on Motion to Extend time for service (#7.0): DENIED<br>The fifth motion to extend time to serve is DENIED.  Plaintiff filed the complaint in December 2020 and has received four extensions to serve.  In granting the fourth extension, the Court ordered service no later than October 22, 2021.  The fifth motion cites a change of address, but waiting ten months to discover a change of address is not good cause.  Under Rule 4(j), the Court DISMISSES the complaint.  SO ORDERED<br><br>Judge: Wall, Hon. Joshua | | |
| 10/28/2021 | Affidavit of Natalie Anderson (Plaintiff) | 8 | Image |
| 11/15/2021 | Pleading titled, Return of Service, filed with the court on 11/12/2021, returned to Pro Se Natalie Anderson Court dismissed the case on 10/28/21 | | Image |
| 11/15/2021 | Pleading titled, Amended complaint, filed with the court on 11/15/2021, returned to Pro Se Natalie Anderson Court dismissed the case on 10/28/21 | | Image |
| 11/16/2021 | Plaintiff Natalie Anderson's Submission of<br>Notice/Letter to Clerk of Courts of Irregularity | 9 | Image |
| 11/16/2021 | JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any party by deadline review. | 10 | |
| | Judge: Wall, Hon. Joshua | | |
| 11/16/2021 | Document:<br>A Judgment of Dismissal 1-88 was generated and sent to:<br>Plaintiff:  Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824<br>Defendant:  Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Defendant:  Jennifer Brooks No addresses available | | |
| 11/16/2021 | Document:<br><br>Judgment of Dismissal 1-88<br>Sent On:  11/16/2021 09:50:24<br>Notice Sent To:  Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824<br>Notice Sent To:  Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Notice Sent To:  Jennifer Brooks No addresses available | | |
| 11/16/2021 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed with Supplemental affidavit | 11 | |
| 11/26/2021 | Plaintiff Natalie Anderson's Motion to<br>Vacate 1-88 Dismissal<br><br>(Second Motion) | 12 | Image |
| 12/16/2021 | Plaintiff Natalie Anderson's EMERGENCY Motion and<br>Affidavit for Recusal of Judge Joshua Wall | 13 | Image |
| 12/16/2021 | Plaintiff Natalie Anderson's EMERGENCY Motion to<br>change venue | 14 | Image |
| 12/16/2021 | NOTICE OF APPEAL: of the decision/judgment entered on 11-16-21 by judge Joshua Wall of the Middlesex Superior Court of Massachusetts ("Trial Court") 11/16/2021 JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any party by deadline review, Judge: Wall, Hon, Joshua, Paper #10<br><br>Applies To: Anderson, Natalie (Plaintiff) | 15 | Image |
| 12/17/2021 | Docket Note: PLEADING #'S 13 & 14 EMAILED TO J. WALL | | |
| 12/28/2021 | Self-Represented Plaintiff Natalie Anderson's EMERGENCY Motion to<br>correct the record | 16 | Image |
| 12/28/2021 | Self-Represented Plaintiff Natalie Anderson's EMERGENCY Request and<br>notice for Court to rule on outstanding motions before escalating to SJC (final request) | 17 | Image |
| 01/18/2022 | Notice of assembly of record sent to Counsel | 18 | Image |
| 01/18/2022 | Notice to Clerk of the Appeals Court of Assembly of Record | 19 | Image |
| 01/18/2022 | Appeal: Statement of the Case on Appeal (Cover Sheet). | 20 | Image |
| 02/01/2022 | Endorsement on Submission of Emergency Motion and Affidavit for Recusal of Judge Joshua Wall (#13.0): DENIED<br>I have no personal connection to the parties or the events in question. I have interest in the case and no opinions of the parties or the events. Because no reason for recusal exists, the motion is DENIED.<br><br>Judge: Wall, Hon. Joshua | | Image |
| 02/01/2022 | Endorsement on Submission for [Emergency] Motion to correct the record (#16.0): DENIED | | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 02/01/2022 | Endorsement on Submission for [Emergency] Motion to Change Venue (#14.0): DENIED | | Image |
| 02/01/2022 | Endorsement on Submission of Final [emergency] request and notice for court to rule on outstanding motions before escalation to SJC (#17.0): No Action Taken | | Image |
| 02/09/2022 | Plaintiff Natalie Anderson's EMERGENCY Motion to Compel Clerk to Docket Emergency Motion to Compel Court to Act/Rule on Outstanding Motions and Motion to Stop Judicial Misconduct | 21 | Image |
| 02/09/2022 | Plaintiff Natalie Anderson's EMERGENCY Motion to Compel Court to Act on/ Rule on Outstanding Motions and Motion to Stop Judicial Misconduct | 22 | Image |
| 03/01/2022 | Notice of docket entry received from Appeals Court NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Motion of Appellant to stay appellate proceedings filed by Anderson. (Paper #6), on February 28, 2022, the following order was entered on the docket: RE#6: Appellate proceedings are stayed to 03/24/2022 by when the plaintiff shall file a status report regarding the disposition of the post dismissal motions pending in the trial court. | 23 | Image |
| 03/15/2022 | The following form was generated: Notice to Appear Sent On: 03/15/2022 14:06:42 ON NOTICE: THIS WILL BE A ZOOM HEARING. ZOOM INFORMATION: Topic: L1 Hearing Room Zoom: Join Zoom Meeting https://us02web.zoom.us/j/89115464618?pwd=SmRDTE8yMTYvWDZWcGJmS1JSVkRtdz09 Meeting ID: 891 1546 4618 Passcode: Lone Dial by your location   +1 929 436 2866 US (New York) Meeting ID: 891 1546 4618 Passcode: 804907 Any problems getting onto the Zoom, please call 978.656.7800. | | |
| 03/23/2022 | Plaintiff Natalie Anderson's EMERGENCY Motion to Continue Hearing | 24 | Image |
| 03/24/2022 | The following form was generated: Notice to Appear Sent On: 03/24/2022 12:19:09 THIS WILL BE A ZOOM HEARING. ZOOM INFORMATION: L1 Zoom Information: Meeting ID: 891 1546 4618 Password: Lone Join Zoom Meeting https://us02web.zoom.us/j/89115464618?pwd=SmRDTE8yMTYvWDZWcGJmS1JSVkRtdz09 | | |
| 03/24/2022 | Event Result:: Motion Hearing scheduled on:      03/28/2022 02:00 PM Has been: Rescheduled      For the following reason: Request of Plaintiff Hon. Michael Doolin, Presiding Staff:      Amanda Rowan, Assistant Clerk Magistrate | | |
| 03/24/2022 | Endorsement on Motion to continue hearing (#24.0): ALLOWED Motion to continue is ALLOWED. Judge: Doolin, Hon. Michael | | Image |
| 03/28/2022 | Notice of docket entry received from Appeals Court NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Status Report filed by Natalie Anderson. (Paper #7), on March 28, 2022, the following order was entered on the docket: RE#7: A review of the status report and the current trial court docket indicates that the motions currently pending in the trial court were filed after the notice of assembly issued to this court. | 25 | Image |
| 03/28/2022 | Notice of docket entry received from Appeals Court NOTICE OF DOCKET ENTRY: Please take note that on March 28, 2022, the following entry was made on the docket of the above of the above-referenced case: ORDER: This appeal will be paired with the appeals in 22-P-11 and 22-P-235 for consideration by a panel. | 26 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 04/22/2022 | Notice of docket entry received from Appeals Court<br>NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Status Report Filed by Natalie Anderson. (Paper #8), on April 22, 2022, the following order was entered on the docket: RE#8: Appellate proceedings stayed to 5/16/22. Status report due then regarding the 4/28/22 hearing on any outstanding Motion. | 27 | Image |
| 04/28/2022 | Event Result:: Motion Hearing scheduled on:<br>   04/28/2022 02:00 PM<br>Has been: Held via Video/Teleconference<br>Hon. Joshua Wall, Presiding<br>Appeared:<br>   Plaintiff   Natalie Anderson, appearing via telephone<br>         Pro Se,<br>Staff:<br>   Amanda Rowan, Assistant Clerk Magistrate<br>   FTR, Monitor | | |
| 04/29/2022 | ORDER: Re Paper #12- Plaintiff's Motion to Vacate Dismissal and order re filing of amended complaint and service of summons and amended complaint | 28 | Image |
| 04/29/2022 | Amended: amended complaint filed by Natalie Anderson<br>adding True North Hotel Group and Marriott International, Inc., and DBA of Residence Inn | 29 | Image |
| 04/29/2022 | Endorsement on Request for Fee waiver (#11.0): ALLOWED | | |
| 06/03/2022 | Docket Note: 4 summonses forwarded to plaintiff | | |
| 06/27/2022 | Notice of docket entry received from Appeals Court<br>Please take note that, with respect to the Motion for voluntary dismissal of appeal based on resolution of lower court case filed by Natalie Anderson. (Paper #11), on June 27, 2022, the following order was entered on the docket: RE# 11: The stay of appellate proceedings is vacated. Appeal dismissed with prejudice and without an award of costs or fees to any party, pursuant to M.R.A.P. 29(b). | 30 | Image |
| 07/26/2022 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit<br>(IMPOUNDED) | 31 | |
| 08/09/2022 | Endorsement on Application<br><br>(P#31 - Affidavit of Indigency) - 1.  The Court finds indigency and approves costs for service by mail / return receipt; contact Clerk for details of the mail payment process.<br>2.   The Court ALLOWS the motion to extend time and service by mail must be made no later than August 31, 2022 and the returns no later than September 30, 2022.<br>3.   The Court will consider the request for transfer after return of service. So Ordered.<br>Dated 8/8/22. Notice mailed 8/9/22.<br><br>Judge: Wall, Hon. Joshua | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Active | | |