UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____    CIVIL ACTION NO: 22-CV-11553

NATALIE ANDERSON,

     Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,
RESIDENCE INN NASHUA (formerly
known as RESIDENCE INN BY
MARRIOTT located in NASHUA and is
also the DBA of NASHUA TS LODGING,
LLC); TRUE  NORTH HOTEL GROUP
AND JENNIFER BROOKS,

     Defendants.
_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process, and Fed. R. Civ. P. 12(b)(6), Defendants, Marriott International, Inc., Nashua TS Lodging, LLC d/b/a Residence Inn Nashua, True North Hotel Group, Inc., and Jennifer Brooks (collectively, the "Defendants"), hereby move to dismiss the Plaintiff's Amended Complaint for insufficiency of service of process and for failure to state a claim upon which relief can be granted.

## PROCEDURAL HISTORY

On or about December 7, 2020, Plaintiff, Natalie Anderson (hereinafter "Plaintiff"), filed an action in the Middlesex Superior Court in Middlesex County, Massachusetts, styled and captioned as above and assigned Civil Action No. 2081CV02957 (the "*Anderson Action*"). This complaint was not served. (See Docket from *Anderson Action*.) The *Anderson Action* was dismissed by the Hon. Joshua Wall on November 16, 2021, due to the plaintiff's failure to serve any party by the deadline. The Plaintiff filed a motion to vacate the dismissal on November 26,

2021 and on April 29, 2022, Judge Wall allowed the Plaintiff's motion to vacate the dismissal, and ordered that she may, "(a) file an amended complaint and (b) has ninety days to serve the defendants with the summons and amended complaint (on or before July 27, 2022)". On April 29, 2022, the plaintiff filed her Amended Complaint. (See Amended Complaint, "AC"). On June 3, 2022, four summonses were forwarded to the Plaintiff. On July 27, 2022, the Plaintiff filed an affidavit of indigency and request for waiver substation of state payment of fees and costs filed without Supplemental affidavit. On August 9, 2022, Judge Wall found indigency and approved the costs for service by mail/return receipt, allowed the Plaintiff's motion to extend time ordering that "service by mail must be made no later than August 31, 2022 and the returns no later than September 30, 2022." Defendants all received the Plaintiff's Amended Complaint via certified mail postmarked September 1, 2022 on various dates.[1]

## ALLEGATIONS IN THE PLAINTIFF'S AMENDED COMPLAINT

Plaintiff was a hotel guest at the Residence Inn Nashua in or around December 2018. (AC, ¶¶6-9). Nashua TS Holdings, LLC is the owner of the hotel and has a franchise relationship with Marriott International, Inc., a franchisor. True North Hotel Group operates the hotel. In December 2018, Jennifer Brooks was the general manager of the hotel. (Amended Complaint, ¶41). Sometime in December 2018, Ms. Brooks was approached by investigators asking information about the Plaintiff's guest status at the hotel. (AC, ¶¶40-41). Ms. Brooks verbally replied to the investigators and conveyed that Plaintiff was a guest of the hotel. (AC, ¶¶41-42). Now, the plaintiff asserts a claim of breach of privacy, alleging that she has been, "aggrieved by an unauthorized disclosure of confidential information which is a breach of privacy under [M.G.L. c.

---

[1] Defendant Residence Inn Nashua received the Amended Complaint on September 6, 2022. Defendant True North Hotel Group received the Amended Complaint on September 7, 2022. Defendant Marriott International, Inc. received the Amended Complaint on September 14, 2022. Defendant Jennifer Brooks received the Amended Complaint on September 3, 2022.

214 §1B]," and that the, "[d]isclosure of protected private information concerning the plaintiff to unauthorized persons is a 'breach' giving rise to significant financial, reputational, or other harm to the plaintiff." (AC, ¶¶77-79). The plaintiff also asserts a claim for breach of contract, alleging that, "Marriott…[has] a contractual agreement with customers…," and that, "[t]he defendants violated their contract by impermissibly disclosing the plaintiff's private information to third party strangers…as a result of that disclosure, plaintiff was harmed." (AC, ¶¶81-99). The plaintiff further asserts a claim for breach of implied contract, stating that, "[an implied] contract was formed…by the agreement entered into through the sales office, but also by [a]dvertisement…in materials on its websites and other places," and that the Defendants "breached this implied contract" causing the plaintiff to suffer damages. (AC, ¶¶101-112).

The Plaintiff asserts a claim for breach of implied covenant of good faith and fair dealing, alleging that, "[d]efendants owed to Plaintiff a duty of utmost good faith and fair dealing…"and that, "…the defendants have breached the implied covenant…and caused harm to plaintiff." (AC, ¶¶114-122). The Plaintiff asserts a claim for unjust enrichment, stating, "[t]he defendants have received a substantial monetary benefit, in the form of several months of rent payment by Plaintiff," and that, "[d]ue to gross…violations of its own procedures and its policies, plaintiffs have suffered prejudice and was subjected to mistreatment…Defendants have therefore been unjustly enriched by monies paid for services…" (AC, ¶¶124-131). The Plaintiff also asserts a claim for interference with advantageous business/contractual relationships against Defendant Jennifer Brooks, stating that "[she] intentionally interfered with the plaintiff's…contractual relationship with Residence Inn Nashua when she disclosed plaintiffs information…and when, upon learning of plaintiffs discrimination lawsuit against another hotel, she sought to drive the plaintiff out of Defendants' hotel by various acts…," thereby causing the Plaintiff to sustain

damages. (AC, ¶¶133-139). The plaintiff further asserts a claim for retaliation/discrimination based on race in conjunction with a violation of 42 U.S.C. § 1981(b), alleging that, "Defendants violated 42 U.S.C § 1981 by discriminating against plaintiff because of her race…" when they, "(1) intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, because of Plaintiff's race…," and that, "[As] a result…Plaintiff has suffered damages." (AC, ¶¶141-166).

The plaintiff also asserts a claim for violation of M.G.L. c. 93A, alleging among other things, that the Defendants, "engaged in unfair and deceptive practices, in violation of 93A …causing the plaintiff to suffer "harm in the form of monies paid for Defendants' products and/or services." (AC, ¶¶167-189). The plaintiff asserts a claim for negligence, alleging that, "Defendants owed a duty of reasonable care to Plaintiff in safeguarding those records from theft or unauthorized access…Defendants breached that duty… [a]s a direct result of Defendants' negligent conduct, Plaintiff suffered harm." (AC, ¶¶191-200). The plaintiff finally asserts a claim for intentional/negligent infliction of emotional distress, alleging that, "Defendants caused or created emotional distress for Plaintiff…and knew that their breach of privacy…would cause emotional distress…Defendants intentionally inflicted emotional distress on Plaintiff." (AC, ¶¶201-209).

## ARGUMENT

The Defendants seek dismissal of the Plaintiff's Amended Complaint for insufficiency of service of process and on grounds that the Amended Complaint contains insufficient allegations of fact to establish the required elements of her claims.[2] Consequently, the Plaintiff's allegations all fail as a matter of law and the relief sought by the Defendants is warranted.

---

[2] Including: breach of privacy, breach of contract, breach of implied contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, interference with contractual/business relationship, retaliation /discrimination

## I.   Rule 12(b)(5) Standard

A Motion to Dismiss under Rule 12(b)(5) is the proper method to contest or challenge the manner of delivery or the lack of delivery of a summons and complaint. Fed. R. Civ. P. 12(b)(5). A return of service "generally serves as *prima facie* evidence that service was validly performed." *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008). A defendant, however, may adduce "rebuttal evidence to refute any presumption of valid service." *Id*. An affidavit is, "[s]ufficient to refute the *prima facie* presumption created by a return of service." *Id.* at 112. Once the defendant effectively rebuts the presumption, the burden returns to the plaintiff to prove proper service. *Id*.

## II.   Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In light of this standard, the Plaintiff's amended complaint fails to allege facts to establish the required elements of her claims. Consequently, Plaintiff's allegations all fail as a matter of law.

## III.   Choice Of Law Issue

"When exercising diversity jurisdiction, federal courts apply the choice-of-law rules of the forum state . . . .Massachusetts state courts apply 'a functional choice of law approach that responds

---

based on race, violation of 42 U.S.C. § 1981, violation of M.G.L. c. 93A, negligence, and intentional and/or negligent emotional distress.

to the interests of the parties, the States involved, and the interstate system as a whole.' " *Reicher v. Berkshire Life Ins. Co. of Am*., 360 F.3d 1, 3 (1st Cir. 2004) (quoting *Bushkin Assocs., Inc. v. Raytheon Co*., 393 Mass. 622, 473 N.E.2d 662, 668 (1985)). "Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation." *Hendricks & Assocs., Inc. v. Daewoo Corp*., 923 F.2d 209, 212 n. 3 (1st Cir.1991). The analysis is heavily guided by the Restatement. *Alharbi v. Theblaze, Inc*., 199 F. Supp. 3d 334, 360 (D. Mass. 2016).

### a) <u>Choice of Law Issue: Contract-Based Claims</u>

Generally, when facing a claim that does not arise under the Constitution or the laws of the United States, a federal court must apply the substantive law of the forum in which it sits, including that state's conflict-of-laws provisions. See *Reicher*, 360 F.3d 1. The leading case in Massachusetts on conflict of laws is *Bushkin*, 393 Mass. 622. Rejecting the proposition that the choice of law question should turn on where a contract was entered, the Supreme Judicial Court instead applied a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin*, at 631. The Supreme Judicial Court turned to the factors set forth in the Restatement (Second) of Conflict of Laws for guidance. *Id*. at 632.[3] With respect to contract actions, the Restatement provides guidelines for courts to follow.[4]

---

[3] These include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Id*. See also *Restatement (Second) of Conflict of Laws (1971)* § 6(2).

[4] (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6; (2) In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties; (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

*Restatement (Second) of Conflict of Laws* (1971); See also *Daynard v. MRRM, P.A*., 335 F. Supp. 2d 156, 160–61 (D. Mass. 2004).

The allegations pertaining to the Plaintiff's contract claims occurred in New Hampshire. Pursuant to Massachusetts conflict of laws, New Hampshire substantive state law should apply to the plaintiff's contract-based claims[5]. See *Reicher*, 360 F.3d 1 (2004). In the case at bar, the place of contracting, negotiation, performance, and location of the subject matter of the contract, all took place in New Hampshire while the plaintiff was a guest at the Residence Inn Nashua. Therefore, New Hampshire substantive state law should be applied to the Plaintiff's contract-based allegations.

b) <u>**Choice of Law Issue: Tort-Based Claims**</u>

Similarly, "When faced with a tort claim, the Supreme Judicial Court has applied *Bushkin's* functional approach and looked to Restatement (Second) of Conflict of Laws §§ 6 and 145 for guidance." *Cosme v. Whitin Mach. Works, Inc*., 417 Mass. 643, 646 (1994). With respect to tort actions in general, the Restatement provides a set of guidelines to be used in the court's choice of law analysis.[6] *Restatement*, *supra*, § 145. See *Daynard supra*.

Like the plaintiff's contract claims, the tort incident the Plaintiff alleges occurred in New Hampshire. Pursuant to Massachusetts conflict of laws, New Hampshire substantive state law should apply to the plaintiff's tort-based claims.[7] See *Daynard supra*, at 163. Here, the place where

---

[5] Those include: breach of contract, breach of implied contract, breach of covenant of good faith and fair dealing, and unjust enrichment

[6] (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6; (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue."

[7] Including: breach of privacy, interference with contractual/business relationship, retaliation/discrimination based on race, negligence, and intentional and/or negligent emotional distress.

the injury occurred, where the conduct causing the injury occurred, the place of business of the hotel, and the place where the parties was centered are all in New Hampshire, wherein the Plaintiff was a guest at the Residence Inn Nashua, and the manager allegedly responded to an investigator's inquiry confirming that the plaintiff's was indeed a guest at the hotel. Therefore, New Hampshire substantive state law should be applied to the Plaintiff's tort-based allegations.

**IV.  The Plaintiff's Amended Complaint Should Be Dismissed For Insufficient Service Of Process Pursuant To Fed. R. Civ. P. 12(B)(5)**

A Motion to Dismiss under Rule 12(b)(5) is the proper method to contest or challenge the manner of delivery or the lack of delivery of a summons and complaint. Fed. R. Civ. P. 12(b)(5). A return of service "generally serves as *prima facie* evidence that service was validly performed." *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008). A defendant, however, may adduce "rebuttal evidence to refute any presumption of valid service." *Id*. Once the defendant effectively rebuts the presumption, the burden returns to the plaintiff to prove proper service. *Id*.

The Plaintiff's case in the *Anderson Action* was dismissed in November 2021 due to the plaintiff's failure to serve any party by the deadline. After vacating her dismissal, Judge Wall ordered that "service by mail must be made no later than August 31, 2022 and the returns no later than September 30, 2022." Here, the envelopes containing the summons and complaint were postmarked for September 1, 2022, indicating that they were mailed on that date. Service by mail is complete upon mailing. See Mass. R. Civ. P. Rule 5(b); Fed. R. Civ. P. Rule 5(b)(2)(C). The date that the envelopes were mailed is clearly September 1, 2022, which is not in accordance with the court's order that the summons and complaint be mailed no later than August 31, 2022. Moreover, the Plaintiff failed to served Defendant Jennifer Brooks altogether by not mailing the summons and complaint to Ms. Brooks' residence. Attempting to serve Ms. Brooks by mail to her place of employment is not proper or effective service. Fed.R.Civ.P. 4(e); Mass. R. Civ. P. Rule

8

4(e). As of writing and filing this motion, no returns have been filed per Judge Wall's order. The Plaintiff's Amended Complaint should be dismissed for insufficient service of process and failure to comply with a court order.

**V.      Count I Of The Plaintiff's Complaint, Breach of Privacy (Public Disclosure of Private Facts), Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Breach Of Privacy.**

New Hampshire recognizes four forms of the tort related to the invasion of the right to privacy[8],  Of the four, the only potentially applicable form for invasion of privacy is, "[(2)] public disclosure of private facts." *Lovejoy v. Linehan*, 161 N.H. 483, 485–86 (2011) (citing *Hamberger v. Eastman*, 106 N.H. 107, (1964)). The public disclosure form of the tort, "involves the invasion of something secret, secluded or private pertaining to the plaintiff." *Lovejoy*, *supra* at 486 (quoting *Karch v. BayBank FSB*, 147 N.H. 525, 535 (2002)). As set forth in the *Restatement (Second) of Torts*, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." § 652D (1977). The intrusive conduct must be such that, "[the defendant] should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues." *Fischer v. Hooper*, 143 N.H. 585, 590 (1999). Notably, a claim alleging disclosure, "'depend[s] upon publicity.'" *Karch, supra* at 535 (quoting *Hamberger supra* at 110)).

As explained in the *Restatement*, "publicity" differs from mere "publication." *Restatement (Second) of Torts* § 652D, comment a (1977). While 'publication' involves 'any communication

---

[8] (1) intrusion upon the plaintiff's physical and mental solitude or seclusion; (2) public disclosure of private facts; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness." *Lovejoy v. Linehan*, 161 N.H. 483, 485–86 (2011).

by the defendant to a third person,' "[p]ublicity ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Karch*, *supra*, at 535.

Here, the Plaintiff alleges that Jennifer Brooks, as general manager of the Residence Inn Nashua, disclosed information that confirmed that the Plaintiff was a guest at the hotel  to two individuals who identified themselves as investigators. The Plaintiff asserts that private information was disclosed, but has failed to allege what   privateinformation was disclosed. Plaintiff also fails to allege sufficient facts to support the allegation that the disclosure of the information was "offensive" (i.e., "beyond the limits of decency"). Further, the Plaintiff fails to properly plead that the alleged disclosed private information was given "publicity" to to mean that the matter was made public, communicated to the public at large, or to so many people that the matter is certain to become one of public knowledge. Rather, the plaintiff makes only conclusory allegations that a breach of privacy occurred. Due to the lack of factual support, Because the Plaintiff's breach of privacy claim fails as a matter of law, the claim should be dismissed.

## VI.   Count II Of The Plaintiff's Complaint, Breach of Contract, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Breach Of Contract.

In order for a contract to be considered valid, "[o]ffer, acceptance, and consideration are essential to contract formation.[9]" *Chisholm v. Ultima Nashua Indus. Corp.*, 150 N.H. 141, 144–45 (2003). "For a meeting of the minds to occur, the parties must assent to the same contractual terms" that is, "[t]he parties must have the same understanding of the terms of the contract and must

---

[9] "A valid offer may propose the exchange of a promise for a performance. An offer may be accepted by commencement of performance. Consideration is present if there is either a benefit to the promisor or a detriment to the promisee. In addition, there must be a meeting of the minds in order to form a valid contract*." Chisholm*, *supra* at 144.

manifest an intention, supported by adequate consideration, to be bound by the contract." *Durgin v. Pillsbury Lake Water Dist*., 153 N.H. 818, 821(2006). "The interpretation of a contract is a question of law…" *Czumak v. N.H. Div. of Developmental Servs*., 155 N.H. 368, 373 (2007). "When interpreting a written agreement, [courts give] the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." *Id*. "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract." *Id*. "A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." *Lassonde v. Stanton*, 157 N.H. 582, 588 (2008); *Audette v. Cummings*, 165 N.H. 763, 767 (2013). Damages are available only if the harm was a reasonably foreseeable result at the time the parties entered into the contract. See *Salem Engineering & Const. Corp. v. Londonderry School Dist*., 122 N.H. 379, 383 (1982).

Here, the Plaintiff claims that there was a contract between herself and the Defendants by concluding that "there is an agreement between a hotel and a customer to rent a unit for a specified time, the hotel has a duty to the customer…[b]y entering into this agreement, the hotel's promises including those concerning privacy are further ratified." The plaintiff's claim of ratification of promises is conclusory and unsupported as there are no alleged facts regarding what promises existed Further, the allegation that there was a "contractual agreement" with Marriott without pleading the required elements of contract formation is insufficient to support a cause of action for breach of contract. The Plaintiff further concludes, without any factual support, that Marriott's online privacy statement is a part of a contract with the Defendants.

Assuming, *arguendo*, that this Court finds that the plaintiff's insufficient and conclusory allegations properly allege that a valid, binding contract existed between the parties, and that

Marriott's privacy statement was a part of that contract, the Plaintiff has failed to plead how the Defendants have breached the contract terms (given that no terms have been alleged), or that the Defendants would foresee that the plaintiff's alleged injury would be a probable consequence of a breach *at the time of contracting*. The Plaintiff's conclusory allegation that Defendant "breached [the] contract by refusing to follow their own policies…" is insufficient. For these reasons, the Plaintiff's allegations are speculative, and the breach of contract claim fails as a matter of law.

**VII.    Count III Of The Plaintiff's Complaint, Breach of Implied Contract Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Breach Of Implied Contract.**

"An implied in fact contract is a true contract that is not expressed in words; the terms of the parties' agreement must be inferred from their conduct." *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 514 (1981). "Like all contracts, implied-in-fact contracts cannot be formed absent an offer, acceptance, consideration and a meeting of the minds …  Whether such a contract has been formed is a factual question." *Chase Home for Child. v. New Hampshire Div. for Child.*, *Youth & Fams.,* 162 N.H. 720, 728 (2011). An implied in law contract is not a contract, but is a legal remedy imposed by a court, "'[w]ithout reference to the assent of the obligor, (arising) from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution." *Presby v. Bethlehem Village District*, 120 N.H. 493, 495 (1980) (quoting, *State v. Hale*y, 94 N.H. 69, 72 (1946)).

The Plaintiff claims that she relied on the Defendants', "[p]ublished materials containing policies…and promises which created an implied contract with the plaintiff." However, the Plaintiff does not state what it is that she relied upon and the manner in which she relied upon it. Therefore, the plaintiff has not sufficiently plead the elements necessary to support that an implied-in-fact contract was formed. Again, assuming *arguendo*, that this Court finds that the plaintiff's

12

insufficient and conclusory allegations properly allege that an implied contract existed between the parties, and that Marriott's privacy statement was a part of that contract, the Plaintiff has failed to plead how the Defendants have breached any terms of the contract (given no terms have been properly alleged), or that the Defendants would foresee that the plaintiff's alleged injury would be a probable consequence of a breach at the time of contract formation. The Plaintiff's conclusory allegation that Defendants "breached [the] contract by refusing to follow their own policies…" is insufficient, based on pure speculation, and not supported by factual allegations. This Court should dismiss the breach of implied contract count against the Defendants because the Plaintiff's breach of implied contract claim fails as a matter of law.

**VIII.** **Count IV Of The Plaintiff's Complaint, Breach of Implied Covenant of Good Faith and Fair Dealing, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Breach Of Implied Covenant of Good Faith and Fair Dealing.**

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another." *Birch Broad., Inc. v. Capitol Broad. Corp.*, 161 N.H. 192, 198, (2010) (citing *Livingston v. 18 Mile Point Drive*, 158 N.H. 619, 624 (2009)). "In New Hampshire, there is not merely one rule of implied good-faith duty, but a series of doctrines, each of which serves a different function." *Id.* The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." *Id*. The broader function of the third category is to, "[p]rohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations as well as "with common standards of decency, fairness and reasonableness." *Id.*

Here, the Plaintiff has failed to plead that a valid, binding contract existed, as described *supra*. There is no allegation of an agreed-upon common purpose or justified expectation of the parties with regard to any contract. Nor are there any allegations to support that the Defendants

failed to act in accordance with any terms of a contract. Without proper allegations supporting that a contract existed, and that certain terms of a contract were breached by the Defendants, beyond conclusory statements, there can be no breach of covenant of good faith and fair dealing. For these reasons, the Plaintiff's breach of implied covenant of good faith and fair dealing claim fails as a matter of law and this Count should be dismissed.

IX.    **Count V Of The Plaintiff's Complaint, Unjust Enrichment, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Unjust Enrichment.**

"Unjust enrichment is an equitable remedy that is available when an individual receives 'a benefit which would be unconscionable for him to retain.'" *Axenics, Inc. v. Turner Const. Co.*, 164 N.H. 659, 669, 62 A.3d 754, 764 (2013) (quoting *Clapp v. Goffstown Sch. Dist.*, 159 N.H. 206, 977 (2009)). "The party seeking restitution must establish not only unjust enrichment, but that the person sought to be charged had wrongfully secured a benefit or passively received one which it would be unconscionable to retain...." *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 611 (2010).

The Plaintiff alleges that the Defendants have been unjustly enriched in the form of several months of rent payment by the Plaintiff. The Plaintiff has failed to plead that the benefit would be unconscionable for the hotel to retain. The Defendants provided the Plaintiff with aa long-term hotel room stay as a guest at the Residence Inn Nashua. The Plaintiff paid for the room rental. There is no factual allegation that the Defendant coerced the Plaintiff to pay money to the Defendants for which the Plaintiff did not benefit. Certainly acceptance of money from an individual renting a room at a hotel does not amount to unconscionable action, as contemplated by New Hampshire law. There is no factual allegation to support any claim of restitution against the Defendants. Moreover, there is no allegation as to how the Defendants were unjustly enriched

by the claimed disclosure of private information.   For these reasons, the Plaintiff's unjust enrichment claim fails as a matter of law and should be dismissed.

**X.     Count VI Of The Plaintiff's Complaint, Interference With Advantageous Business Or Contractual Relationships, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Interference With Advantageous Business Or Contractual Relationships**

"To establish liability for intentional interference with contractual relations, a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." *Singer Asset Fin. Co., LLC v. Wyner*, 156 N.H. 468, 478 (2007). Whether the alleged conduct is "improper" requires an "inquiry into the mental and moral character of the defendant's conduct*." Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159 (3d Cir.1988).

The Plaintiff has failed to allege how the Defendants interfered with any economic relationship with a third party. Moreover, there is no allegation that the defendant knew of any such relationship such that the Defendants could intentionally or improperly interfere with the relationship.   . Similarly, the Plaintiff concludes that Jennifer Brooks intentionally interfered with the Plaintiff's contractual relationship with the Residence Inn Nashua when she disclosed the Plaintiff's private information to third parties and intended to deprive the Plaintiff of her contractual rights. This allegation is not logical.  Jennifer Brooks was an employee of the hotel and merely responded to an inquiry regarding whether the plaintiff was a guest at the hotel.  For Ms. Brooks to intend to interfere with an advantageous or contractual relationship with the Plaintiff would also mean that she intended to do the same to her employer.  Ms. Brooks' employer is not a third-party in relation to Ms. Brooks.  Therefore, the elements of the cause of action cannot be

met. Because the plaintiff's claim fails as a matter of law, it should be dismissed against the Defendants.

**XI.** **Count VII and Count VII [sic] Of The Plaintiff's Complaint, Retaliation/Discrimination Based On Race (Associational Retaliation/Discrimination Based on Protected Activity) and Violation of Federal Civil Rights Statute 42 U.S.C.§ 1981, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Retaliation/Discrimination Based On Race.[10]**

Section 1981 provides, in part, that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). "As the First Circuit recently reiterated, [t]he 'exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units' is section 1983. *Buntin v. City of Boston*, 857 F.3d 69, 70-71 (1st Cir. 2017) (quoting *Jett v. Dallas ISD*, 491 U.S. 701, 733 (1989)). *Alston v. Town of Brookline*, 997 F.3d 23, 42 (1st Cir. 2021). The Supreme Court has held that a § 1981 claim requires "a plaintiff [to] initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

The Plaintiff appears to allege that the alleged conduct/breach of contract was retaliatory and based on race, in violation of § 1981. While § 1981 does encompass retaliation claims, "[b]ecause § 1981 is concerned only with discrimination on the basis of race, its implicit prohibition of retaliation against those who complain of discrimination is similarly limited to complaints of racial discrimination," *Long v. Marubeni Am. Corp.,* 406 F. Supp. 2d 285, 290

---

[10] To the extent that the Plaintiff claims retaliation or discrimination based on race arising under Title VII, the Plaintiff must first exhaust administrative remedies by submitting the claim with either the Equal Employment Opportunity Commission within 180 days, or a parallel state agency (i.e. Massachusetts Commission Against Discrimination) within 300 days of said practice. *Aly v. Mohegan Council, Boy Scouts of Am.*, 711 F.3d 34, 41 (1st Cir. 2013). The plaintiff's failure to do so in this case precludes her from making the claim now in federal court.

(S.D.N.Y. 2005). The Plaintiff's amended complaint the lacks any factual allegations to support a plausible inference of racial discrimination or that Plaintiff complained of any racial discrimination. Other than alleging that she is a racial minority and making a conclusory statement that, "[Defendants] intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, …and limited…[or] stereotyped Plaintiff in ways that adversely affected her status as a customer, because of her race," there is nothing in the Plaintiff's amended complaint that plausibly alleges that race was the "but for" (or any, for that matter), reason behind the alleged disclosure of private information. Because the Plaintiff's claim for  violation of 42 U.S.C. §1981 fails as a matter of law, the claim against the Defendants should be dismissed.

**XII.** **Count VIII Of The Plaintiff's Complaint, Unfair And/Or Deceptive Practices And/Or Acts ("93A Violations"), Should Be Dismissed Because It Is Not A Cognizable Claim Under New Hampshire Law.**

The Court should dismiss the violation of G.L. c. 93A count against the Defendants because this court should apply New Hampshire substantive state law. As discussed in Section C(3) of this memorandum, pursuant to Massachusetts conflict of laws, this Court should apply New Hampshire substantive state law to the plaintiff's tort-based claims, meaning G.L. c. 93A would not be applied, and therefore, the Plaintiff's claim fails as a matter of law. Even if the Court were to analyze the Plaintiff's violation of G.L. c. 93A under Massachusetts law, the Plaintiff's claim is not supported by sufficient facts. M.G. L. c. 93A proscribes "unfair or deceptive acts or practices in the conduct of trade or commerce." c. 93A, §2. "Although the language… is unquestionably broad, by its terms it imposes the substantive limitation that the law or regulation at issue must be intended to protect consumers…" *Klairmont v. Gainsboro Rest., Inc*., 465 Mass. 165, 174, (2013). "A violation of a law or regulation… will be a violation of c. 93A, § 2 (a ), only if the conduct leading to the violation

is both unfair or deceptive and occurs in trade or commerce…[a]nd whether the particular violation

or violations qualify as unfair or deceptive conduct "is best discerned 'from the circumstances of

each case.' *Klairmont* v. *supra* at 174 (citing *Kattar v. Demoulas*, 433 Mass. 1, 739 N.E.2d 246

(2000)).

Here, the Plaintiff fails to properly plead that the alleged disclosure of private information

was done so in a deceptive, and unfair manner so as to qualify as deceptive/unfair conduct.  Indeed,

the plaintiff claims that the Defendants provided information to investigators that she was a guest

at the hotel, when asked.  Such conduct does not rise to the level of bad faith contemplated by G.L.

c. 93A. Thus, even if this Court should find that Massachusetts law applies to this case, the G.L.

c. 93A still fails as a matter of law and should be dismissed.

### XIII. Count IX Of The Plaintiff's Complaint, Negligence, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Negligence.

"A plaintiff claiming negligence must prove: (1) that the defendant owed the plaintiff a

duty; (2) that the duty was breached; (3) that the plaintiff suffered an injury; and (4) that the

defendant's breach was the proximate cause of the injury." *Vachon v. New England Towing, Inc*.,

148 N.H. 429, 430 (2002) (citing *Ronayne v. State*, 137 N.H. 281, 284 (1993)). "A special

relationship exists between an innkeeper and a guest." *Barnes v. N.H. Karting Assoc.*, 128 N.H.

102, 106, (1986). "[T]he scope of the duty imposed is limited by what risks, if any, are reasonably

foreseeable." *Kellner v. Lowney*, 145 N.H. 195, 198 (2000).

The Plaintiff's amended complaint lacks any factual allegations to support a plausible

inference of duty and proximate causation, other than alleging that the Defendants, "owed a duty

of reasonable care to Plaintiff in safeguarding those records from…unauthorized access," that

Defendants "[b]reached that duty by employing substandard methods of data security, and failing

to adequately protect…plaintiff's…personal information," and that "[b]ut for the Defendant's

18

failure to secure this data, the Plaintiff would not have suffered harm." There are no sufficient facts to plausibly support that each of the Defendants owed this particular duty to the Plaintiff, or that this incident was the "but for" cause of Plaintiff's alleged harm. Further, the Plaintiff has not alleged sufficient facts as to what harm damages were suffered. For these reasons, the Plaintiff's negligence count fails as a matter of law and should be dismissed.

**XIV.** **Count X Of The Plaintiff's Complaint, Intentional And/Or Negligent Infliction of Emotional Distress, Should Be Dismissed Because The Plaintiff Alleges No Facts To Support A Conclusory Allegation Of Intentional And/Or Negligent Infliction of Emotional Distress.**

"A claim for negligent infliction of emotional distress…must satisfy three prongs: (1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." *Corso v. Merrill*, 119 N.H. 647, 651, (1979). To recover for emotional distress under a traditional negligence theory, New Hampshire courts consistently require plaintiffs to demonstrate physical symptoms of their distress regardless of physical impact. *Palmer v. Nan King Restaurant*, 147 N.H. 681, 683–84 (2002). Consequently, the New Hampshire courts have held that, "[t]he emotional harm must be a significant, painful mental experience with lasting effects." *Palmer*, supra at 684.

The Plaintiff's Amended Complaint the lacks any factual allegations to support the plausible inference of causation, foreseeability, and serious mental/emotional harm other than alleging that the Defendants, "caused or created the emotional distress," that Defendants, "knew that their breach of privacy would cause emotional distress," and that they have caused harm to Plaintiff, including "stress, loss of sleep, emotional upset, anxiety, etc." The Plaintiff has not pled an adequate claim of physical symptoms to support a negligent infliction of emotional distress claim. Because the Plaintiff's negligent infliction of emotional distress count fails as a matter of law, it should be dismissed.

19

To make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant, "by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another." *Tessier v. Rockefeller*, 162 N.H. 324, 341, 33 A.3d 1118, 1131 (2011) (citing *Morancy v. Morancy,* 134 N.H. 493, 496, (1991)). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." *Mikell v. Sch. Admin. Unit No. 33*, 158 N.H. 723, 729 (2009). Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Here, the Plaintiff's amended complaint lacks any factual allegations to support the plausible inference that the Defendants' conduct was negligent, much less extreme and outrageous. Other than alleging that the Defendants, "intentionally inflicted emotional distress on Plaintiff," and that Plaintiff "[was] caused to suffer severe emotional distress as the result…", there is nothing in the Plaintiff's amended complaint that plausibly alleges the conduct of the Defendants reached that as to be so extreme that it went "beyond all possible bounds of decency." Plaintiff's intentional infliction of emotional distress count fails as a matter of law.

## **CONCLUSION**

Based on the reasons set forth above, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process and failure to comply with a court order, and Fed. R. Civ. P. 12(b)(6), on the grounds that the Plaintiff has plead insufficient allegations of fact to establish the required elements of each of the ten counts in the Amended Complaint. Therefore, all the Plaintiff's claims fail as a matter of law.

The Defendants,

NASHUA TS LODGING LLC; TRUE NORTH
HOTEL GROUP; INC, MARRIOTT
INTERNATIONAL, INC., and JENNIFER
BROOKS,

By Their Attorneys,


MORRISON MAHONEY LLP


*s/ Amy B. Yarbro*

_____

Amy B. Yarbro, BBO # 686665
ayarbro@morrisonmahoney.com
Gabriela Archilla, BBO#706925
garchilla@morrisonmahoney.com
250 Summer Street
Boston, MA  02210
(617) 439-7500


## CERTIFICATE OF SERVICE

I, Amy B. Yarbro, attorney for the defendants, hereby certify that I have this day served the foregoing **Memorandum of Law in Support of Motion to Dismiss** to all counsel or parties of record in this action by e-mail to:

Natalie Anderson
679 Washington Street, Suite #8-206
Attleboro, Massachusetts 02703
Liberty_6@msn.com


Dated:  September 28, 2022                    Attorney:       */s/ Amy B. Yarbro*
                                                                        Amy B. Yarbro

21