# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPARTMENT

CIVIL ACTION NO. 2081CV02957

Natalie Anderson
    Plaintiff,

V

Residence Inn Nashua (Formerly known as Residence Inn by Marriott
Located in Nashua and is also the DBA of Nashua TS Lodging, LLC);
Marriott International, Inc., True North Hotel Group and Jennifer Brooks
    Defendants.

## REMOVAL TO THE U.S. DISTRICT COURT

# COMMONWEALTH OF MASSACHUSETTS
## Middlesex Superior Court Department

### The Trial Court

### Lowell

I, Robert E. MacIntyre, Deputy Assistant Clerk of the Superior Court, Within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of Pleadings in **2081CV02957** entered in the Superior Court on the **Seventh day of December** in the year of our Lord 2020.

In testimony whereof, I hereunto set my hand and affix seal of said Middlesex Superior Court at Lowell in said county, this **Fifth** day of **October,** in the year of our Lord **Two Thousand Twenty-Two.**

Robert E. MacIntyre
Deputy Assistant Clerk



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Public Docket Report**

2081CV02957 Anderson, Natalie vs. Residence Inn Nashua Doing Business as Nashua TS Lodging LLC et al

| | |
|---|---|
| **CASE TYPE:** Torts | **FILE DATE:** 12/07/2020 |
| **ACTION CODE:** B99 | **CASE TRACK:** A - Average |
| **DESCRIPTION:** Other Tortious Action | |
| **CASE DISPOSITION DATE:** 10/05/2022 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 09/22/2022 |
| **CASE JUDGE:** | **CASE SESSION:** Civil L1 CR15 |

## PARTIES

**Plaintiff**
Anderson, Natalie
679 Washington Street #8-206
Attleboro, MA 02703

**Attorney** PROPER
Pro Se
Massachusetts Bar
Added Date: 12/07/2020

**Defendant**
Brooks, Jennifer

**Private Counsel** 686665
Amy B Yarbro
Morrison Mahoney LLP
Morrison Mahoney LLP
250 Summer St
Boston, MA 02210
Work Phone (617) 439-7594
Added Date: 09/21/2022

**Attorney** 706925
Gabriela B Archilla
Morrison Mahoney LLP
Morrison Mahoney LLP
250 Summer St
Boston, MA 02210
Work Phone (617) 439-7517
Added Date: 09/21/2022

**Defendant**
Marriott, International, Inc.

**Defendant**
Residence Inn Nashua Doing Business as Nashua TS
Lodging LLC

| **Defendant** | **Private Counsel** | **686665** |
|---|---|---|
| True North Hotel Group | Amy B Yarbro | |
| | Morrison Mahoney LLP | |
| | Morrison Mahoney LLP | |
| | 250 Summer St | |
| | Boston, MA 02210 | |
| | Work Phone (617) 439-7594 | |
| | Added Date: 09/21/2022 | |
| | **Private Counsel** | **706925** |
| | Gabriela B Archilla | |
| | Morrison Mahoney LLP | |
| | Morrison Mahoney LLP | |
| | 250 Summer St | |
| | Boston, MA 02210 | |
| | Work Phone (617) 439-7517 | |
| | Added Date: 09/21/2022 | |

COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX COUNTY
Public Docket Report

### FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 12/08/2020 | Civil Filing Fee (per Plaintiff)<br><br>Dismissed Type: Waive-Covid-19 Indigent<br>Dismissed Date: 06/02/2021<br>Dismissed Amount: 240.00<br>Dismissing Clerk / Judge: Wall, Hon. Joshua<br>Comments: order # 4<br>Dismissed By: HOBOOK81 | 240.00 | 0.00 | 240.00 | 0.00 |
| 12/08/2020 | Civil Security Fee (G.L. c. 262, § 4A)<br><br>Dismissed Type: Waive-Covid-19 Indigent<br>Dismissed Date: 06/02/2021<br>Dismissed Amount: 20.00<br>Dismissing Clerk / Judge: Wall, Hon. Joshua<br>Comments: order # 4<br>Dismissed By: HOBOOK81 | 20.00 | 0.00 | 20.00 | 0.00 |
| 12/08/2020 | Civil Surcharge (G.L. c. 262, § 4C)<br><br>Dismissed Type: Waive-Covid-19 Indigent<br>Dismissed Date: 06/02/2021<br>Dismissed Amount: 15.00<br>Dismissing Clerk / Judge: Wall, Hon. Joshua<br>Comments: order 4<br>Dismissed By: HOBOOK81 | 15.00 | 0.00 | 15.00 | 0.00 |
| | **Total** | **275.00** | **0.00** | **275.00** | **0.00** |

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Public Docket Report**

## INFORMATIONAL DOCKET ENTRIES

| Date | Ref | Description | Judge |
|---|---|---|---|
| 12/07/2020 | | Attorney appearance<br>On this date Pro Se added for Plaintiff Natalie Anderson | |
| 12/07/2020 | 1 | Original civil complaint filed. | |
| 12/07/2020 | 2 | Civil action cover sheet filed. | |
| 12/07/2020 | 3 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit | |
| 12/08/2020 | | Case assigned to:<br>DCM Track A - Average was added on 12/08/2020 | |
| 03/09/2021 | 4 | Plaintiff Natalie Anderson's Motion for extension of time to serve process on defendants due to health reasons/covid-19 | |
| 03/15/2021 | | Endorsement on Motion to (#4.0): ALLOWED<br><br>Judge: Barrett, Hon. C. William | Barrett |
| 06/03/2021 | 5 | Plaintiff Natalie Anderson's Motion for Extension of Time To Serve Process on Defendants Due To Health Reasons/Covid-19 | |
| 08/03/2021 | | Endorsement on Motion for extension of Time to Serve Process on Defendants Due to Health Reasons/COVID-19 (#5.0): ALLOWED<br><br>Judge: Wall, Hon. Joshua | Wall |
| 08/05/2021 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Defendant: Jennifer Brooks No addresses available | |
| 09/07/2021 | 6 | Plaintiff Natalie Anderson's Motion for Extension of Time to Serve Process on Defendants Due to Health Reasons/ COVID-19 | |
| 09/21/2021 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824 via us mail<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Defendant: Jennifer Brooks No addresses available | |
| 09/21/2021 | | Endorsement on Motion for Extension of Time to Serve Process (#6.0): ALLOWED<br>Tolling of time requirements ended. Plaintiff needs to complete service. The motion is Allowed, but for extension to October 22, 2021 only. Service must be made on or before October 22, 2021.<br>So Ordered.<br><br>Judge: Wall, Hon. Joshua | Wall |
| 10/22/2021 | 7 | Plaintiff Natalie Anderson's EMERGENCY Motion to Extend Time to Serve Process on Defendants | |

## COMMONWEALTH OF MASSACHUSETTS
### MIDDLESEX COUNTY
**Public Docket Report**

| | | | |
|---|---|---|---|
| 10/28/2021 | | Endorsement on Motion to Extend time for service (#7.0): DENIED<br>The fifth motion to extend time to serve is DENIED. Plaintiff filed the complaint in December 2020 and has received four extensions to serve. In granting the fourth extension, the Court ordered service no later than October 22, 2021. The fifth motion cites a change of address, but waiting ten months to discover a change of address is not good cause. Under Rule 4(j), the Court DISMISSES the complaint. SO ORDERED<br><br>Judge: Wall, Hon. Joshua | Wall |
| 10/28/2021 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Defendant: Jennifer Brooks No addresses available | |
| 10/28/2021 | | Disp for statistical purposes | |
| 10/28/2021 | 8 | Affidavit of Natalie Anderson (Plaintiff) | |
| 11/15/2021 | | Pleading titled, Return of Service, filed with the court on 11/12/2021, returned to Pro Se Natalie Anderson<br>Court dismissed the case on 10/28/21 | |
| 11/15/2021 | | Pleading titled, Amended complaint, filed with the court on 11/15/2021, returned to Pro Se Natalie Anderson<br>Court dismissed the case on 10/28/21 | |
| 11/16/2021 | 9 | Plaintiff Natalie Anderson's Submission of<br>Notice/Letter to Clerk of Courts of Irregularity | |
| 11/16/2021 | 10 | JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any party by deadline review.<br><br>Judge: Wall, Hon. Joshua | Wall |
| 11/16/2021 | | Document:<br>A Judgment of Dismissal 1-88 was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Defendant: Jennifer Brooks No addresses available | |
| 11/16/2021 | | Document:<br><br>Judgment of Dismissal 1-88<br>Sent On: 11/16/2021 09:50:24<br>Notice Sent To: Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824<br>Notice Sent To: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Notice Sent To: Jennifer Brooks No addresses available | |
| 11/16/2021 | 11 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed with Supplemental affidavit | |

| | | | |
|---|---|---|---|
| 11/26/2021 | 12 | Plaintiff Natalie Anderson's Motion to Vacate 1-88 Dismissal<br><br>(Second Motion) | |
| 12/16/2021 | 13 | Plaintiff Natalie Anderson's EMERGENCY Motion and Affidavit for Recusal of Judge Joshua Wall | |
| 12/16/2021 | 14 | Plaintiff Natalie Anderson's EMERGENCY Motion to change venue | |
| 12/16/2021 | 15 | NOTICE OF APPEAL: of the decision/judgment entered on 11-16-21 by judge Joshua Wall of the Middlesex Superior Court of Massachusetts ("Trial Court") 11/16/2021 JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any party by deadline review, Judge: Wall, Hon, Joshua, Paper #10<br><br>Applies To: Anderson, Natalie (Plaintiff) | |
| 12/17/2021 | | Docket Note: PLEADING #'S 13 & 14 EMAILED TO J. WALL | |
| 12/28/2021 | 16 | Self-Represented Plaintiff Natalie Anderson's EMERGENCY Motion to correct the record | |
| 12/28/2021 | 17 | Self-Represented Plaintiff Natalie Anderson's EMERGENCY Request and notice for Court to rule on outstanding motions before escalating to SJC (final request) | |
| 01/18/2022 | 18 | Notice of assembly of record sent to Counsel | |
| 01/18/2022 | 19 | Notice to Clerk of the Appeals Court of Assembly of Record | |
| 01/18/2022 | 20 | Appeal: Statement of the Case on Appeal (Cover Sheet) | |
| 02/01/2022 | | Endorsement on Submission of Emergency Motion and Affidavit for Recusal of Judge Joshua Wall (#13.0): DENIED<br>I have no personal connection to the parties or the events in question. I have no interest in the case and no opinions of the parties or the events. Because no reason for recusal exists, the motion is DENIED.<br><br>Judge: Wall, Hon. Joshua | Wall |
| 02/01/2022 | | Endorsement on Submission for [Emergency] Motion to correct the record (#16.0): DENIED | Wall |
| 02/01/2022 | | Endorsement on Submission for [Emergency] Motion to Change Venue (#14.0): DENIED | Wall |
| 02/01/2022 | | Endorsement on Submission of Final [emergency] request and notice for court to rule on outstanding motions before escalation to SJC (#17.0): No Action Taken | Wall |
| 02/02/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 | |

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Public Docket Report**

| | | |
|---|---|---|
| 02/02/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 |
| 02/02/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 |
| 02/02/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 |
| 02/02/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 |
| 02/09/2022 | 21 | Plaintiff Natalie Anderson's EMERGENCY Motion to<br>Compel Clerk to Docket Emergency Motion to Compel Court to Act/Rule on Outstanding Motions and Motion to Stop Judicial Misconduct |
| 02/09/2022 | 22 | Plaintiff Natalie Anderson's EMERGENCY Motion to<br>Compel Court to Act on/ Rule on Outstanding Motions and Motion to Stop Judicial Misconduct |
| 03/01/2022 | 23 | Notice of docket entry received from Appeals Court<br>NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Motion of Appellant to stay appellate proceedings filed by Anderson. (Paper #6), on February 28, 2022, the following order was entered on the docket: RE#6: Appellate proceedings are stayed to 03/24/2022 by when the plaintiff shall file a status report regarding the disposition of the post dismissal motions pending in the trial court. |

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Public Docket Report**

| | | |
|---|---|---|
| 03/15/2022 | | The following form was generated: |
| | | Notice to Appear<br>Sent On: 03/15/2022 14:06:42 |
| | | ON NOTICE:<br>THIS WILL BE A ZOOM HEARING. |
| | | ZOOM INFORMATION:<br>Topic: L1 Hearing Room Zoom:<br>Join Zoom Meeting<br>https://us02web.zoom.us/j/89115464618?pwd=SmRDTE8yMTYvWDZWcGJm<br>S1JSVkRtdz09<br>Meeting ID: 891 1546 4618<br>Passcode: Lone<br>Dial by your location<br>   +1 929 436 2866 US (New York)<br>Meeting ID: 891 1546 4618<br>Passcode: 804907<br>Any problems getting onto the Zoom, please call 978.656.7800. |
| 03/23/2022 | 24 | Plaintiff Natalie Anderson's EMERGENCY Motion to<br>Continue Hearing |
| 03/24/2022 | | The following form was generated:<br><br>Notice to Appear<br>Sent On: 03/24/2022 12:19:09<br><br><br>THIS WILL BE A ZOOM HEARING.<br>ZOOM INFORMATION:<br><br>L1 Zoom Information:<br>Meeting ID: 891 1546 4618<br>Password: Lone<br>Join Zoom Meeting<br>https://us02web.zoom.us/j/89115464618?pwd=SmRDTE8yMTYvWDZWcGJm<br>S1JSVkRtdz09 |
| 03/24/2022 | | Event Result:: Motion Hearing scheduled on:<br>   03/28/2022 02:00 PM<br>Has been: Rescheduled     For the following reason: Request of Plaintiff<br>Hon. Michael Doolin, Presiding<br>Staff:<br>   Amanda Rowan, Assistant Clerk Magistrate             Doolin |
| 03/24/2022 | | Endorsement on Motion to continue hearing (#24.0): ALLOWED<br>Motion to continue is ALLOWED.<br><br>Judge: Doolin, Hon. Michael                             Doolin |

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Public Docket Report**

| | | | |
|---|---|---|---|
| 03/24/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703 | |
| 03/28/2022 | 25 | Notice of docket entry received from Appeals Court<br>NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Status Report filed by Natalie Anderson. (Paper #7), on March 28, 2022, the following order was entered on the docket: RE#7: A review of the status report and the current trial court docket indicates that the motions currently pending in the trial court were filed after the notice of assembly issued to this court. | |
| 03/28/2022 | 26 | Notice of docket entry received from Appeals Court<br>NOTICE OF DOCKET ENTRY: Please take note that on March 28, 2022, the following entry was made on the docket of the above of the above-referenced case: ORDER: This appeal will be paired with the appeals in 22-P-11 and 22-P-235 for consideration by a panel. | |
| 04/22/2022 | 27 | Notice of docket entry received from Appeals Court<br>NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Status Report Filed by Natalie Anderson. (Paper #8), on April 22, 2022, the following order was entered on the docket: RE#8: Appellate proceedings stayed to 5/16/22. Status report due then regarding the 4/28/22 hearing on any outstanding Motion. | |
| 04/28/2022 | | Event Result:: Motion Hearing scheduled on:<br>    04/28/2022 02:00 PM<br>Has been: Held via Video/Teleconference<br>Hon. Joshua Wall, Presiding<br>Appeared:<br>    Plaintiff    Natalie Anderson, appearing via telephone<br>          Pro Se,<br>Staff:<br>    Amanda Rowan, Assistant Clerk Magistrate<br>    FTR, Monitor | Wall |
| 04/29/2022 | 28 | ORDER: Re Paper #12- Plaintiff's Motion to Vacate Dismissal and order re filing of amended complaint and service of summons and amended complaint | Wall |
| 04/29/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703<br>Defendant: Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062<br>Defendant: Jennifer Brooks No addresses available | |
| 04/29/2022 | 29 | Amended: amended complaint filed by Natalie Anderson adding True North Hotel Group and Marriott International, Inc., and DBA of Residence Inn | Wall |
| 06/03/2022 | | Docket Note: 4 summonses forwarded to plaintiff | |

COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX COUNTY
Public Docket Report

| 06/27/2022 | 30 | Notice of docket entry received from Appeals Court | |
|---|---|---|---|
| | | Please take note that, with respect to the Motion for voluntary dismissal of appeal based on resolution of lower court case filed by Natalie Anderson. (Paper #11), on June 27, 2022, the following order was entered on the docket: RE# 11: The stay of appellate proceedings is vacated. Appeal dismissed with prejudice and without an award of costs or fees to any party, pursuant to M.R.A.P. 29(b). | |
| 07/26/2022 | 31 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit (IMPOUNDED) | |
| 08/09/2022 | | Endorsement on Application | Wall |
| | | (P#31 - Affidavit of Indigency) - 1. The Court finds indigency and approves costs for service by mail / return receipt; contact Clerk for details of the mail payment process. | |
| | | 2. The Court ALLOWS the motion to extend time and service by mail must be made no later than August 31, 2022 and the returns no later than September 30, 2022. | |
| | | 3. The Court will consider the request for transfer after return of service. So Ordered. | |
| | | Dated 8/8/22. Notice mailed 8/9/22. | |
| | | Judge: Wall, Hon. Joshua | |
| 08/09/2022 | | EDocument sent: A Clerk's Notice (eDoc) was generated and sent to: Plaintiff: Natalie Anderson 679 Washington Street #8-206, Attleboro, MA 02703 | |
| 09/21/2022 | 32 | Notice of Removal to the United States District Court filed by Defendants, True North Hotel Group, Inc. and Jennifer Brooks. | |
| 09/21/2022 | | Case transferred to another court. | |
| 09/21/2022 | | Attorney appearance On this date Amy B Yarbro , Esq. added as Private Counsel for Defendant Jennifer Brooks. | |
| 09/21/2022 | | Attorney appearance On this date Amy B Yarbro , Esq. added as Private Counsel for Defendant True North Hotel Group. | |
| 09/21/2022 | | Attorney appearance On this date Gabriela B Archilla , Esq. added for Defendant Jennifer Brooks. | |
| 09/26/2022 | | Docket Note: Pleadings received on 9/22/22, subsequent to the removal, returned to plaintiff | |
| 10/05/2022 | | REMOVED to the U.S. District Court by Defendants, True North Hotel Group and Jennifer Brooks on 10/5/2022. | |

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set by hand and affix the seal of said Superior Court
this 5TH Day OF OCTOBER 2022

Deputy Assistant Clerk

Date Filed 9/21/2022 11:57 AM
Superior Court - Middlesex
Docket Number 2081CV02957

**32**

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

MIDDLESEX, ss.                                    CIVIL ACTION NO. 2081CV02957

_____

NATALIE ANDERSON,

      Plaintiff,

v.                                                      **RECEIVED**
                                                        9/21/2022
MARRIOTT INTERNATIONAL, INC.,
RESIDENCE INN NASHUA (formerly
known as RESIDENCE INN BY
MARRIOTT located in NASHUA and is
also the DBA of NASHUA TS LODGING,
LLC); TRUE  NORTH HOTEL GROUP
AND JENNIFER BROOKS,

      Defendants.

_____

## <u>NOTICE OF REMOVAL FROM SUPERIOR COURT</u>

      NOTICE IS HEREBY GIVEN that on September 21, 2022, Defendants, True North Hotel

Group, Inc. and Jennifer Brooks (collectively, the "Defendants"), filed Notice of Removal of this

action in the United States District Court for the District of Massachusetts. A copy of the Notice

of Removal so filed, without exhibits, is attached hereto as <u>Exhibit A</u>. The Notice of Removal and

all exhibits were served on all counsel of record.  Furthermore, pursuant to 28 U.S.C. § 1446(d),

this matter shall proceed no further unless and until the case is remanded to this Court by the

United States District Court.

JN

Date Filed 9/21/2022 11:57 AM
Superior Court - Middlesex
Docket Number 2081CV02957

The Defendants,
TRUE NORTH HOTEL GROUP and JENNIFER
BROOKS,
By Their Attorneys,

MORRISON MAHONEY LLP

*/s/ Amy B. Yarbro*

Amy B. Yarbro, BBO # 686665
ayarbro@morrisonmahoney.com
Gabriela Archilla, BBO#706925
garchilla@morrisonmahoney.com
250 Summer Street
Boston, MA  02210
(617) 439-7500

2

Date Filed 9/21/2022 11:57 AM
Superior Court - Middlesex
Docket Number 2081CV02957

<u>CERTIFICATE OF SERVICE</u>

I, Amy Yarbro, hereby certify that I have this day served the foregoing to all counsel of record in this action by serving same via email to:

| | |
|---|---|
| Natalie Anderson<br>679 Washington Street, Suite #8-206<br>Attleboro, Massachusetts 02703 | Lewis Weins on behalf of Residence Inn Nashua d/b/a Nashua TS Lodging Group LLC<br>True North Hotel Group<br>7300 West 110th Street, Suite 990<br>Overland Park, Kansas 66210<br>lwiens@truenorthhotels.com |
| Margaret Dakan<br>Marriott International, Inc.<br>7750 Wisconsin Ave.<br>Bethesda, Maryland 20814<br>margaret.dakan@marriott.com | |

Dated:   September 21, 2022          Attorney:        /s/ Amy B. Yarbro
                                                        Amy B. Yarbro

3

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 1 of 53



Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U.S. District Court
District of Massachusetts
By: _____
Deputy Clerk
Date: 9/21/2022

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NATALIE ANDERSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARRIOT INTERNATIONAL, INC.; | ) | DOCKET NO: |
| RESIDENCE INN NASHUA (formally | ) | |
| known as RESIDENCE INN BY | ) | |
| MARRIOT located in NASHUA and is also | ) | |
| the DBA of NASHUA TS LODGING | ) | |
| LLC); TRUE NORTH HOTEL GROUP; | ) | |
| JENNIFER BROOKS | | |
| Defendants. | | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants, True North Hotel Group, and

Jennifer Brooks (collectively, the "Defendants") by and through their attorneys, hereby remove to

this Court the action filed in the Middlesex County Superior Court and described below, on the

basis of diversity of citizenship jurisdiction and federal question jurisdiction. In support of this

notice, the Defendants state as follows:

1.       On or about December 7, 2020, Plaintiff, Natalie Anderson (hereinafter "Plaintiff"),

filed an action in the Middlesex Superior Court in Middlesex County, Massachusetts, styled and

captioned as above and assigned Civil Action No. 2081CV02957 (the *Anderson Action"*). This

complaint was not served. (A copy of the Plaintiff's Complaint is attached as **Exhibit A**.)

2.     The *Anderson Action* was dismissed by the Hon. Joshua Wall on November 16, 2021, due to the plaintiff's failure to serve any party by the deadline. (A copy of the *Anderson Action* Docket is attached as **Exhibit B**.)

3.     The Plaintiff filed a motion to vacate the dismissal on November 26, 2021, and a motion to recuse Judge Wall, and change venue on December 16, 2021. **Exhibit B**.

4.     On April 29, 2022, Judge Wall allowed the Plaintiff's motion to vacate the dismissal, and ordered that she may, "(a) file an amended complaint and (b) has ninety days to serve the defendants with the summons and amended complaint (on or before July 27, 2022)". **Exhibit B**. (A Copy of Judge Wall's motion is attached as **Exhibit C**.)

5.     On April 29, 2022, the plaintiff filed her Amended Complaint. **Exhibit B**. (A Copy of the Plaintiff's Amended Complaint is attached as **Exhibit D**.)

6.     On June 3, 2022, four summonses were forwarded to the Plaintiff. **Exhibit B.**

7.     On July 27, 2022, the Plaintiff filed an affidavit of indigency and request for waiver substation of state payment of fees and costs filed without Supplemental affidavit. **Exhibit B**.

8.     On August 9, 2022, Judge Wall found indigency and approved the costs for service by mail/return receipt, allowed the Plaintiff's motion to extend time writing "service by mail must be made no later than August 31, 2022 and the returns no later than September 30, 2022." **Exhibit B**.

9.     The *Anderson Action* is a suit of a wholly civil nature brought in the Superior Court of the Commonwealth of Massachusetts, in and for Middlesex County.  The United States District Court for the District of Massachusetts is therefore the proper forum and venue to which this action may be removed under the provisions of 28 U.S.C. §§ 101 and 1441(a).

10.     This Court has original jurisdiction to entertain this action because parties to this case are citizens of different states and because the Plaintiffs claim their damages are likely to exceed $75,000.000. 28 U.S.C., §§ 1332(a)(1), 1441(a). Further, this Court has original jurisdiction because the Plaintiff's civil action involves a claim arising under the Constitution, laws, or treaties of the United States. 28 U.S.C., § 1441(b). Removal of this action is not prohibited by 28 U.S.C. § 1445.

11.     With respect to diversity of citizenship, the Plaintiff is an individual who resides in Massachusetts.

12.     Defendant True North Hotel Group, Inc. is a foreign corporation organized under the laws of the state of Kansas and registered to do business in Massachusetts, with a principal office in Overland Park, Kansas.

13.     Defendant Jennifer Brooks is an individual who resides in Nashua, New Hampshire.

14.     With respect to the federal law claims, the Plaintiff alleges that the Defendants have violated 42 U.S.C. § 1981.

15.     This Notice of Removal is timely as it is being within 30 days after receipt by the Defendants, through purported service, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. Further, all defendants consent to the removal of the action. 28 U.S.C. § 1446(b)(1), 28 U.S.C. § 1446(b)(2)(A).

16.     Pursuant to 28 U.S.C. § 1446(d), the Defendants have filed a notice of the filing of this Notice of Removal, attached herewith as **Exhibit E**, with the Clerk of the Superior Court of the Commonwealth of Massachusetts, in and for Middlesex County.

17.     Counsel for the Defendants is duly admitted to practice before this Court and signs this Notice of Removal in accordance with the requirements of Fed. R. Civ. P. 11.

18.     Pursuant to 28 U.S.C. § 1446(a), a copy of the Summons, Complaint, and the other documents received by the Defendants are being filed with this Notice. See **Exhibit F**.

19.     All Defendants, who have been received the Summons and Complaint, consent to the removal of this action.

20.     Written notice of this pleading will be given to all parties promptly after the filing of this pleading.

21.     Defendants will file a notice of the filing of this Notice of Removal and a copy of this Notice of Removal with the Clerk of the Middlesex Superior Court in Middlesex County, Massachusetts.

22.     Pursuant to Local Rule 81.1(A), the Defendants shall request of the Clerk of the Middlesex Superior Court in Middlesex County, Massachusetts, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein, and shall file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

**WHEREFORE**, for the foregoing reasons, the Defendants, True North Hotel Group, Inc., and Jennifer Brooks, respectfully request that the above-captioned matter pending in the Middlesex Superior Court in Middlesex County, Massachusetts, be removed and that this Court take jurisdiction for trial and determination. All defendants in this matter consent to removal to federal court.

The Defendants,
TRUE NORTH HOTEL GROUP, INC. and
JENNIFER BROOKS,
By Their Attorneys,

MORRISON MAHONEY LLP

*/s/ Amy B. Yarbro*

Amy B. Yarbro, BBO # 686665
ayarbro@morrisonmahoney.com
Gabriela Archilla, BBO#706925
garchilla@morrisonmahoney.com
250 Summer Street
Boston, MA  02210
(617) 439-7500

5

CERTIFICATE OF SERVICE

I, Amy Yarbro, hereby certify that I have this day served the foregoing to all counsel of record in this action by serving same via email to:

| | |
|---|---|
| Natalie Anderson<br>679 Washington Street, Suite #8-206<br>Attleboro, Massachusetts 02703 | Lewis Weins on behalf of Residence Inn Nashua d/b/a Nashua TS Lodging Group LLC<br>True North Hotel Group<br>7300 West 110th Street, Suite 990<br>Overland Park, Kansas 66210<br>lwiens@truenorthhotels.com |
| Margaret Dakan<br>Marriott International, Inc.<br>7750 Wisconsin Ave.<br>Bethesda, Maryland 20814<br>margaret.dakan@marriott.com | |

Dated:   September 21, 2022          Attorney:          /s/ Amy B. Yarbro
                                                                                        Amy B. Yarbro

6

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 7 of 53

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| NATALIE ANDERSON; <br>     Plaintiffs, <br><br> v. <br><br> RESIDENCE INN NASHUA; <br> JTNNIFER BROOKS; <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    CIVIL ACTION NO.: 20-2957 |

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 0 7 2020

CLERK

### COMPLAINT AND DEMAND FOR JURY TRIAL

1. The plaintiff in the above captioned case hereby submits this complaint against the Defendants for invasion of privacy, breach of contract, retaliation in violation of state and federal anti-discrimination laws in public accommodations, among other claims as outlined below. Plaintiff demands a jury trial.

### INTRODUCTION

2. The plaintiffs bring a claim of invasion of privacy, breach of contract, breach of the covenant of good faith and fair dealing, interference with contract and business advantage, unfair treatment based on having made complaints about discrimination based on race (including violations of Title II, and Section 1981, and other state regulations, etc.), unfair and deceptive practices, infliction of emotional distress, consumer protection violations, and other wrongs, on the part of the defendants. All of which have caused the plaintiffs injury and substantial damages as outlined in this complaint.

### PARTIES

3. Plaintiff Natalie Anderson is an individual who resides in Massachusetts.

4. Defendant Marriott International (hereinafter "Marriott") engages in the operation, management, and franchising of hotels, including the Residence Inn line of franchises. Marriott owns, operates, manages, or franchises multiple hotels in the New England area, including Massachusetts and New Hampshire. Marriott operates, manages or franchises the Residence Inn Nashua hotel property.

5.  Defendant Residence Inn of Nashua ("Residence Inn Nashua") is a franchisee of Marriott and is managed by a operations company that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire.

6.  Defendant Jennifer Brooks is the general manager of Residence Inn Nashua.

## JURISDICTION AND VENUE

7.  The Massachusetts Superior Court has jurisdiction over this action pursuant to its laws and the amount in controversy exceeds $50,000, exclusive of interest and costs, in an amount to be determined at trial.

## INVASION OF PRIVACY

8.  The defendants violated the plaintiff's privacy by divulging to a hostile third party certain sensitive private and personal information about the plaintiff and about its agreement with plaintiff and about plaintiff's stay at Defendants' hotel. This invasion of privacy was wanton and reckless and without regard to the plaintiff's rights, and resulted in damages.

### Plaintiff Had Privacy and Contractual Rights

9.  Marriott hotels, including Residence Inn Nashua, generally has a privacy and confidentiality agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at the hotel and, in this case, when the plaintiff stayed at defendants' hotel in 2017.

10. Additionally, the defendants had a specific agreement with the plaintiff, that was entered into between the plaintiff and the Residence Inn specifically in November 2017, to keep information about their stay private and confidential and to not release any information to anyone without their consent. This agreement was triggered specifically because of the harassing anonymous phone-calls that were made/directed to plaintiff at the end of November 2017.

11. Hence, in addition to the expectation of privacy that attaches generally to any hotel guest when they stay at a Marriott hotel, as a matter of privacy law and constitutional law, there is an additional expectation of privacy that attaches to a guest that stays at a Marriott hotel given Marriott's publicly announced policies and promises, upon which customers rely on to their detriment. And beyond even that, the plaintiff had an even greater or additional expectation of privacy based on the specific agreement that was entered by defendants to protect and safeguard the information of the Plaintiff for safety and privacy reasons.

12. The plaintiff therefore had a strong privacy interest and a contractual interest in keeping this information private and confidential. Such information also contains credit card

information used, and other personal and private information including but not limited to rewards card information, rewards and loyalty patterns, purchase habits, other private financial data, data regarding personal preferences and requests.

13. Courts across the nation have enforced the privacy rights of hotel guests. See Erin Andrews v. Marriott International, Inc., 2016 IL App (1st) 122731, where the plaintiff was awarded approximately $55 million for the violations of the privacy rights of a hotel guest.

### More on Privacy Rights

14. All hotels also have an interest in protecting the privacy of their hotel guests. See City of Los Angeles v. Patel (US Supreme Court 2015).

15. If hotel guests are made to believe that their information will not be protected, hotels will lose customers and market share. This is especially true for larger global brands, who rely heavily on their reputational assets for global market share.

16. Because defendants had a specific agreement with the plaintiff to keep information about their stay private and confidential and to not release any information to anyone without their consent, then the defendants also had a contractual obligation towards the plaintiff.

17. This obligation should not have been interrupted because of a third party wanted to go on a fishing expedition and obtain private information about the plaintiff

18. The defendants know better and they know that Marriott hotels have privacy agreements concerning their guest information. The fact that the defendants were so cavalier with divulging plaintiff's private information to a third party shows a wanton disregard for plaintiff's privacy rights.

### Breach of Implied Contract

19. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiffs.

20. Marriott, including Residence Inn line of business, have a contractual agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at their hotels and, in this case, when the plaintiffs stayed at Residence Inn Nashua.

21. Plaintiffs relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail themselves of all of the benefits, access, resources and protections available to them as promised by Defendants.

22. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive and disparate manner and by retaliating against plaintiff when defendants learned she had raised concerns in a court complaint about how she was treated by a neighboring hotel.

23. As a result of those actions, plaintiff has suffered and will continue to suffer damages.

24. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

25. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

26. Plaintiff had a reasonable expectation that defendants would adhere to the terms of such contract.

27. Plaintiffs further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and other federal and state regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation.

28. Moreover, the defendants allowed itself be influenced by the third party interference.

29. Similarly, the complaint of discrimination against a neighboring hotel, did cause conflict between the plaintiff and the defendants, where the defendants allows that complaint against a neighboring hotel to influence how it treated the plaintiff, which is a form of associational discrimination. It was only after the defendants became aware that plaintiff had previously made a discrimination claim against a neighboring hotel, did the defendants then suddenly began to shift its dealing and treatment of the plaintiff, resulting subtle and constructive attempts at breaching the agreement with plaintiff.

## RETALIATION

30. The defendants sought to constructively break plaintiff's rental agreement for reasons related to plaintiff raising concerns that a neighboring hotel (not the defendants' hotel) had engaged in racial discrimination and retaliation for raising concerns about discrimination, against the plaintiff.

31. Defendants then, suddenly and without explanation, began to treat the plaintiffs differently and less favorably, and thus engaged in intentional conduct in violation of laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiffs' protected rights.

32. Defendants sought to breach the agreement with plaintiff in retaliation because she raised concerns about racial discrimination by another neighboring hotel.

33. The defendants engaged in conduct adverse to the plaintiff within weeks of them finding out about the discrimination complaints against the neighboring hotel.

34. There is a temporal proximity and a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e. defendants took adverse action because plaintiff engaged in protected activity.

## DISCRIMINATION

35. Defendants thus have also violated 42 U.S.C. § 1981. Section 1981 provides: *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to* **make and enforce contracts**, *to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).* The statute also states that *"[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."* 42 U.S.C. § 1981(b).

36. The Defendants denied plaintiff the use and enjoyment of the benefits, privileges, terms and conditions that they extend to all other similarly situated guests, residents and invitees. The Defendants breached their contract with plaintiff and discriminated against plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the state code.

37. To state a *prima facie* case of discrimination, the plaintiff is to show that: (1) they belonged to a protected class; (2) they sought to make a contract for services ordinarily provided by the defendant; and (3) they were denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory. *Id.* at 872. In our case, we have clearly met this burden for a prima facie case of discrimination, as follows:

38. The plaintiff is African-American and belong to a protected class. This is undisputable.

39. Plaintiff sought to make and enforce a contract for services ordinarily provided by the defendants. This is undisputable.

40. Plaintiff was denied the right to enter/enforce a contract for such services while similarly situated persons outside the protected class were not and plaintiff was treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 13 of 53

41. By not completing the contract, Defendants have interfered with the making and enforcement of a contract.

42. Defendant's actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

**VIOLATION OF FEDERAL CIVIL RIGHTS STATUTE 42 U.S.C. § 1981**

43. By the above acts, Defendants violated 42 U.S.C § 1981 by discriminating against plaintiff because of their race as African American [black].

44. Section 1981 guarantees freedom from racial discrimination in the making, enforcement performance, modification, and termination of contracts.

45. Section 1981 also guarantees enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

46. Plaintiff's use of the Defendant's hotel and services falls under section 1981 protection.

47. Defendant has (1) intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, because of Plaintiff's race; and (2) limited and classified Plaintiff's in ways that adversely affected their status as customers, because of their race; all in violation of Title II of the Civil Rights Act of 1964. As a direct and proximate result of Defendant's intentional, deliberate and willful discriminatory acts and omissions, Plaintiff has suffered damages.

48. Discrimination in hotel accommodations include refusals to provide African Americans service, or the harassment of African-American customers, or providing inferior service to African Americans. This country has had a dark history throughout the country, including throughout the south where the Civil Rights Movement of the 1960s was symbolized by challenges to segregation in places of public accommodations and gaining equal access to hotels, restaurants, lunch counters, and stores for African Americans.

49. The right of African-American customers to be free from discrimination in hotel accommodations have been upheld in landmark cases such as: Gilliam v. HBE Corp. (d/b/a Adam's

50. Mark Hotel), a challenge to discriminatory treatment of African-American guests at the Adam's Mark Hotel during the 1999 Black College Reunion in Daytona Beach that settled for $2.1 million; and the series of cases challenging the pervasive discrimination against African-Americans during the annual Black Bike Week in Myrtle Beach, South Carolina.

51. Moreover, retaliation for opposing discrimination is against public policy because it creates a chilling effect on the society's goal of encouraging citizens to oppose, report and speak up about discriminatory practices wherever they occur.

52. The above raises an important question of federal law as it implicates federal concerns pertaining to the eradication or prevention of race discrimination in public accommodations. It also implicates the issue of the right to make and enforce contracts as an equal protection/constitutional right (as well as certain rights under Title VIII and/or Title II of the Civil Rights Act).

### PLAINTIFF'S FURTHER CONTRACT CLAIMS

53. Where there is an agreement between a hotel and a customer to rent a unit for a specified time, the hotel has a duty to the customer, who has confirmed this arrangement, to honor its end of the bargain by providing the customer with the service which they both agreed upon.

54. In Kellogg v. Commodore Hotel, 187 Misc. 319, 64 N.Y.S.2d 131 (Sup. Ct. 1960), the parties entered into a written contract for accommodations. The defendant hotel for value received promised to provide the plaintiff with a room for four days. Upon defendant's refusal to honor the contract, made two weeks in advance, the plaintiff recovered $5000 for the extra expenses caused by the defendant's cancellation of the contract.

55. In Thomas v. Pick Hotels Corporation, 224 F.2d 664 (10th circuit, 1955), the plaintiffs in that case, who were black, were refused accommodations because of their race. The defendant hotel had previously agreed in writing and later by telephone to provide the plaintiffs lodging on a specified date. The court held that Plaintiffs' complaint based on such facts, stated a claim on an express written contract. The Plaintiffs' reservations were held to constitute a contractual obligation. By refusing to honor this reservation, the hotel breached that contract. The Thomas court stated that there was no statutory, common-law, or public policy barrier preventing the parties from entering into a valid and enforceable contract for hotel accommodations.

56. By seeking to breach or facilitate the breach of our agreement, the defendants also sought to interfere with our contractual relations with the Defendants.

### BREACH OF CONTRACT AND IMPLIED CONTRACT

57. Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

58. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiff.

59. Plaintiff relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail himself of all of the benefits, access, resources and protections available to his as promised by Defendants.

60.

61. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive and disparate manner and by retaliating against plaintiffs when they raised concerns about how they were being treated or about their adherence to their own policies.

62. As a result of those actions, plaintiff have suffered and will continue to suffer damages.

63. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

64. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

65. Plaintiff had a reasonable expectation that the defendants would adhere to the terms of such contract.

66. Plaintiff further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and federal regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation. If plaintiff had known upfront that the defendants would have engaged in such discriminatory and retaliatory practices, plaintiff would likely have elected to stay elsewhere, investing their resources, equity and time other than at Residence Inn Nashua.

67. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

68. Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

69. Defendants owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiff to receive the fruits of the contract.

70. Through its actions and inactions, Defendants breached its duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests.

71. By the conduct alleged herein, the defendants have breached the implied covenant of good faith and fair dealing and caused harm to plaintiff.

72. As a result, Plaintiff has suffered damages.

## INTERFERENCE WITH ADVANTAGEOUS RELATIONSCONTRACTUAL RELATIONS

73. Plaintiff hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

74. Plaintiff possessed an advantageous relation with Marriott and thereby all Marriott franchises.

75. As a result of these employee defendants' misconduct, Plaintiff's advantageous relations/contractual relations may be irretrievably damaged. Plaintiff has suffered and will continue to suffer substantial and irreparable harm.

76. Plaintiff anticipated further advantageous relations with Marriott and Residence Inn Nashua in the future.

77. By its above described conduct, *inter alia,* these certain defendants have knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with Plaintiff's actual and potential advantageous relations and contractual relations.

78. As a result of these certain Defendants' intentional interference, plaintiff has suffered and continue to suffer damages.

## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiff hereby reallege and incorporate by reference each of the preceding paragraphs of this as if fully stated herein.

80. Defendants have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

81. Defendants caused or created emotional distress for Plaintiff.

82. Defendants knew that discriminating/retaliating/threatening/harassing Plaintiff would cause emotional distress.

83. Defendants intentionally inflicted emotional distress on Plaintiff when as a direct and proximate result of Defendants actions and inactions Plaintiff were caused to suffer severe

emotional distress as the result of which a reasonable person in Plaintiff's position would have suffered similar emotional distress under like circumstances.

84. Plaintiff sustained damages as a result of Defendants intentional infliction of emotional distress on them.

85. Intentional infliction of emotional distress requires "extreme and outrageous conduct intentionally or recklessly cause[d] severe distress to another."

86. Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

WHEREFORE, I respectfully pray that the Court grant the following relief:

(1) Enter judgment in Plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief and such other and further relief as Plaintiff may be entitled to by bringing this action.

(2) Award damages within the jurisdictional limits of this court and enhanced damages as appropriate.

(3) Award reasonable attorneys' fees and costs including service and filing fees.

(4) Order such other relief as this Court deems just and equitable.

(5) Enter an order, enjoining the defendants from : i) destroying, altering, deleting relevant information or any other act that would impede or hinder their obligation to preserve any relevant information, including electronically stored materials such as email communications, hotel video footage, etc., relating in any way to the subject matter of this dispute.

Respectfully Submitted,

Natalie Anderson
679 Washington Street, #8-206
(617) 710-7093

Dated: December 7, 2020

# EXHIBIT B

## 2081CV02957 Anderson, Natalie vs. Residence Inn Nashua Doing Business as Nashua TS Lodging LLC et al

- Case Type:
- Torts
- Case Status:
- Re-Opened
- File Date
- 12/08/2020
- DCM Track:
- A - Average
- Initiating Action:
- Other Tortious Action
- Status Date:
- 04/29/2022
- Case Judge:
- 
- Next Event:
- 

| All Information | Party | Event | Tickler | Docket | Disposition |
|---|---|---|---|---|---|

### Party Information

**Anderson, Natalie**
- Plaintiff

| Alias | **Party Attorney** |
|---|---|
| | • Attorney |
| | • Pro Se |
| | • Bar Code |
| | • PROPER |
| | • Address |
| | • Phone Number |
| | • |

More Party Information

**Residence Inn Nashua**
- Defendant

| Alias | Party Attorney |
|---|---|

More Party Information

**Brooks, Jennifer**
- Defendant

| Alias | Party Attorney |
|---|---|

More Party Information

**Marriott, International, Inc.**
- Defendant

| Alias | Party Attorney |
|---|---|

More Party Information

**True North Hotel Group**
- Defendant

| Alias | Party Attorney |
|---|---|

More Party Information

### Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 03/28/2022 02:00 PM | Civil L1 CR15 | | Motion Hearing | Doolin, Hon. Michael | Rescheduled |
| 04/28/2022 02:00 PM | Civil L1 CR15 | | Motion Hearing | Wall, Hon. Joshua | Held via Video/Teleconference |

Date Filed 9/21/2022 4:46 PM
Superior Court - Middlesex
Docket Number 2081CV02957

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 20 of 53

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---------|-----------|----------|----------|----------------|
| Service | 12/08/2020 | 03/08/2021 | 90 | 11/16/2021 |
| Answer | 12/08/2020 | 04/07/2021 | 120 | 11/16/2021 |
| Rule 12/19/20 Served By | 12/08/2020 | 04/07/2021 | 120 | 10/28/2021 |
| Rule 12/19/20 Filed By | 12/08/2020 | 05/07/2021 | 150 | 10/28/2021 |
| Rule 12/19/20 Heard By | 12/08/2020 | 06/07/2021 | 181 | 10/28/2021 |
| Rule 15 Served By | 12/08/2020 | 02/01/2022 | 420 | 10/28/2021 |
| Rule 15 Filed By | 12/08/2020 | 03/03/2022 | 450 | 10/28/2021 |
| Rule 15 Heard By | 12/08/2020 | 03/03/2022 | 450 | 10/28/2021 |
| Discovery | 12/08/2020 | 11/28/2022 | 720 | 10/28/2021 |
| Rule 56 Served By | 12/08/2020 | 12/28/2022 | 750 | 10/28/2021 |
| Rule 56 Filed By | 12/08/2020 | 01/27/2023 | 780 | 10/28/2021 |
| Final Pre-Trial Conference | 12/08/2020 | 05/29/2023 | 902 | 10/28/2021 |
| Judgment | 12/08/2020 | 12/08/2023 | 1095 | 10/28/2021 |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr | Image Avail. |
|-------------|-------------|--------------|--------------|
| 12/07/2020 | Attorney appearance<br>On this date Pro Se added for Plaintiff Natalie Anderson | | |
| 12/07/2020 | Original civil complaint filed. | 1 | Image |
| 12/07/2020 | Civil action cover sheet filed. | 2 | Image |
| 12/07/2020 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit | 3 | |
| 12/08/2020 | Case assigned to:<br>DCM Track A - Average was added on 12/08/2020 | | |
| 03/09/2021 | Plaintiff Natalie Anderson's Motion for extension of time to serve process on defendants due to health reasons/covid-19 | 4 | Image |
| 03/15/2021 | Endorsement on Motion to (#4.0): ALLOWED<br><br>Judge: Barrett, Hon. C. William | | Image |
| 06/03/2021 | Plaintiff Natalie Anderson's Motion for Extension of Time To Serve Process on Defendants Due To Health Reasons/Covid-19 | 5 | Image |
| 08/03/2021 | Endorsement on Motion for extension of Time to Serve Process on Defendants Due to Health Reasons/COVID-19 (#5.0): ALLOWED<br><br>Judge: Wall, Hon. Joshua | | Image |
| 09/07/2021 | Plaintiff Natalie Anderson's Motion for Extension of Time to Serve Process on Defendants Due to Health Reasons/ COVID-19 | 6 | Image |
| 09/21/2021 | Endorsement on Motion for Extension of Time to Serve Process (#6.0): ALLOWED<br>Tolling of time requirements ended. Plaintiff needs to complete service. The motion is Allowed, but for extension to October 22, 2021 only. Service must be made on or before October 22, 2021.<br>So Ordered.<br><br>Judge: Wall, Hon. Joshua | | Image |
| 10/22/2021 | Plaintiff Natalie Anderson's EMERGENCY Motion to Extend Time to Serve Process on Defendants | 7 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 10/28/2021 | Endorsement on Motion to Extend time for service (#7.0): DENIED  The fifth motion to extend time to serve is DENIED.  Plaintiff filed the complaint in December 2020 and has received four extensions to serve.  In granting the fourth extension, the Court ordered service no later than October 22, 2021.  The fifth motion cites a change of address, but waiting ten months to discover a change of address is not good cause.  Under Rule 4(j), the Court DISMISSES the complaint,  SO ORDERED  Judge: Wall, Hon. Joshua | | |
| 10/28/2021 | Affidavit of Natalie Anderson (Plaintiff) | 8 | Image |
| 11/15/2021 | Pleading titled, Return of Service, filed with the court on 11/12/2021, returned to Pro Se Natalie Anderson Court dismissed the case on 10/28/21 | | Image |
| 11/15/2021 | Pleading titled, Amended complaint, filed with the court on 11/15/2021, returned to Pro Se Natalie Anderson Court dismissed the case on 10/28/21 | | Image |
| 11/16/2021 | Plaintiff Natalie Anderson's Submission of Notice/Letter to Clerk of Courts of Irregularity | 9 | Image |
| 11/16/2021 | JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any party by deadline review,  Judge: Wall, Hon. Joshua | 10 | |
| 11/16/2021 | Document: A Judgment of Dismissal 1-88 was generated and sent to: Plaintiff:  Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824 Defendant:  Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 Defendant:  Jennifer Brooks No addresses available | | |
| 11/16/2021 | Document:  Judgment of Dismissal 1-88 Sent On:  11/16/2021 09:50:24 Notice Sent To:  Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824 Notice Sent To:  Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062 Notice Sent To:  Jennifer Brooks No addresses available | | |
| 11/16/2021 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed with Supplemental affidavit | 11 | |
| 11/26/2021 | Plaintiff Natalie Anderson's Motion to Vacate 1-88 Dismissal  (Second Motion) | 12 | Image |
| 12/16/2021 | Plaintiff Natalie Anderson's EMERGENCY Motion and Affidavit for Recusal of Judge Joshua Wall | 13 | Image |
| 12/16/2021 | Plaintiff Natalie Anderson's EMERGENCY Motion to change venue | 14 | Image |
| 12/16/2021 | NOTICE OF APPEAL: of the decision/judgment entered on 11-16-21 by judge Joshua Wall of the Middlesex Superior Court of Massachusetts ("Trial Court") 11/16/2021 JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any party by deadline review, Judge: Wall, Hon, Joshua, Paper #10  Applies To: Anderson, Natalie (Plaintiff) | 15 | Image |
| 12/17/2021 | Docket Note: PLEADING #'S 13 & 14 EMAILED TO J. WALL | | |
| 12/28/2021 | Self-Represented Plaintiff Natalie Anderson's EMERGENCY Motion to correct the record | 16 | Image |
| 12/28/2021 | Self-Represented Plaintiff Natalie Anderson's EMERGENCY Request and notice for Court to rule on outstanding motions before escalating to SJC (final request) | 17 | Image |
| 01/18/2022 | Notice of assembly of record sent to Counsel | 18 | Image |
| 01/18/2022 | Notice to Clerk of the Appeals Court of Assembly of Record | 19 | Image |
| 01/18/2022 | Appeal: Statement of the Case on Appeal (Cover Sheet). | 20 | Image |
| 02/01/2022 | Endorsement on Submission of Emergency Motion and Affidavit for Recusal of Judge Joshua Wall (#13.0): DENIED I have no personal connection to the parties or the events in question. I have interest in the case and no opinions of the parties or the events. Because no reason for recusal exists, the motion is DENIED.  Judge: Wall, Hon. Joshua | | Image |
| 02/01/2022 | Endorsement on Submission for [Emergency] Motion to correct the record (#16.0): DENIED | | Image |

Date Filed 9/21/2022 4:46 PM
Superior Court - Middlesex
Docket Number 2081CV02957

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 02/01/2022 | Endorsement on Submission for [Emergency] Motion to Change Venue (#14.0): DENIED | | Image |
| 02/01/2022 | Endorsement on Submission of Final [emergency] request and notice for court to rule on outstanding motions before escalation to SJC (#17.0): No Action Taken | | Image |
| 02/09/2022 | Plaintiff Natalie Anderson's EMERGENCY Motion to Compel Clerk to Docket Emergency Motion to Compel Court to Act/Rule on Outstanding Motions and Motion to Stop Judicial Misconduct | 21 | Image |
| 02/09/2022 | Plaintiff Natalie Anderson's EMERGENCY Motion to Compel Court to Act on/ Rule on Outstanding Motions and Motion to Stop Judicial Misconduct | 22 | Image |
| 03/01/2022 | Notice of docket entry received from Appeals Court NOTICE OF DOCKET ENTRY:  Please take note that, with respect to the Motion of Appellant to stay appellate proceedings filed by Anderson, (Paper #6), on February 28, 2022, the following order was entered on the docket: RE#6: Appellate proceedings are stayed to 03/24/2022 by when the plaintiff shall file a status report regarding the disposition of the post dismissal motions pending in the trial court. | 23 | Image |
| 03/15/2022 | The following form was generated: Notice to Appear Sent On:  03/15/2022 14:06:42 ON NOTICE: THIS WILL BE A ZOOM HEARING. ZOOM INFORMATION: Topic: L1 Hearing Room Zoom Join Zoom Meeting https://us02web.zoom.us/j/89115464618?pwd=SmRDTE8yMTYvWDZWcGJmS1JSVkRtdz09 Meeting ID: 891 1546 4618 Passcode: Lone Dial by your location     +1 929 436 2866 US (New York) Meeting ID: 891 1546 4618 Passcode: 804907 Any problems getting onto the Zoom, please call 978.656.7800. | | |
| 03/23/2022 | Plaintiff Natalie Anderson's EMERGENCY Motion to Continue Hearing | 24 | Image |
| 03/24/2022 | The following form was generated: Notice to Appear Sent On:  03/24/2022 12:19:09 THIS WILL BE A ZOOM HEARING. ZOOM INFORMATION: L1 Zoom Information: Meeting ID: 891 1546 4618 Password: Lone Join Zoom Meeting https://us02web.zoom.us/j/89115464618?pwd=SmRDTE8yMTYvWDZWcGJmS1JSVkRtdz09 | | |
| 03/24/2022 | Event Result:: Motion Hearing scheduled on:     03/28/2022 02:00 PM Has been: Rescheduled     For the following reason: Request of Plaintiff Hon. Michael Doolin, Presiding Staff:     Amanda Rowan, Assistant Clerk Magistrate | | |
| 03/24/2022 | Endorsement on Motion to continue hearing (#24.0): ALLOWED Motion to continue is ALLOWED. Judge: Doolin, Hon. Michael | | Image |
| 03/28/2022 | Notice of docket entry received from Appeals Court NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Status Report filed by Natalie Anderson, (Paper #7), on March 28, 2022, the following order was entered on the docket: RE#7: A review of the status report and the current trial court docket indicates that the motions currently pending in the trial court were filed after the notice of assembly issued to this court. | 25 | Image |
| 03/28/2022 | Notice of docket entry received from Appeals Court NOTICE OF DOCKET ENTRY: Please take note that on March 28, 2022, the following entry was made on the docket of the above of the above-referenced case: ORDER: This appeal will be paired with the appeals in 22-P-11 and 22-P-235 for consideration by a panel. | 26 | Image |

Date Filed 9/21/2022 4:46 PM
Superior Court - Middlesex
Docket Number 2081CV02957

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 23 of 53

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 04/22/2022 | Notice of docket entry received from Appeals Court<br>NOTICE OF DOCKET ENTRY: Please take note that, with respect to the Status Report Filed by Natalie Anderson. (Paper #8), on April 22, 2022, the following order was entered on the docket: RE#8: Appellate proceedings stayed to 5/16/22. Status report due then regarding the 4/28/22 hearing on any outstanding Motion. | 27 | Image |
| 04/28/2022 | Event Result:: Motion Hearing scheduled on:<br>04/28/2022 02:00 PM<br>Has been: Held via Video/Teleconference<br>Hon. Joshua Wall, Presiding<br>Appeared:<br>    Plaintiff    Natalie Anderson, appearing via telephone<br>                Pro Se,<br>Staff:<br>    Amanda Rowan, Assistant Clerk Magistrate<br>    FTR, Monitor | | |
| 04/29/2022 | ORDER: Re Paper #12- Plaintiff's Motion to Vacate Dismissal and order re filing of amended complaint and service of summons and amended complaint | 28 | Image |
| 04/29/2022 | Amended: amended complaint filed by Natalie Anderson<br>adding True North Hotel Group and Marriott International, Inc., and DBA of Residence Inn | 29 | Image |
| 04/29/2022 | Endorsement on Request for Fee waiver (#11.0): ALLOWED | | |
| 06/03/2022 | Docket Note: 4 summonses forwarded to plaintiff | | |
| 06/27/2022 | Notice of docket entry received from Appeals Court<br>Please take note that, with respect to the Motion for voluntary dismissal of appeal based on resolution of lower court case filed by Natalie Anderson. (Paper #11), on June 27, 2022, the following order was entered on the docket: RE# 11: The stay of appellate proceedings is vacated. Appeal dismissed with prejudice and without an award of costs or fees to any party, pursuant to M.R.A.P. 29(b). | 30 | Image |
| 07/26/2022 | Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit<br>(IMPOUNDED) | 31 | |
| 08/09/2022 | Endorsement on Application<br><br>(P#31 - Affidavit of Indigency) - 1.  The Court finds indigency and approves costs for service by mail / return receipt; contact Clerk for details of the mail payment process.<br>2.    The Court ALLOWS the motion to extend time and service by mail must be made no later than August 31, 2022 and the returns no later than September 30, 2022.<br>3.    The Court will consider the request for transfer after return of service. So Ordered.<br>Dated 8/8/22. Notice mailed 8/9/22.<br><br>Judge: Wall, Hon. Joshua | | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Active | | |

# EXHIBIT C

5

#2

/

C. A. No. 2081CV02957
Paper 12
Plaintiff's Motion to Vacate Dismissal

The Court held a hearing on Natalie Anderson's pending motions, including Paper 12. Ms. Anderson did not appear in person or by Zoom, but she did participate by telephone (audio only). This was my first opportunity to speak with Ms. Anderson. The clerk administered an oath to Ms. Anderson, and I was able to ask her several questions about this case and her other cases filed in Middlesex County and New Hampshire.

Ms. Anderson clarified the correct spelling of her surname. She described Andre Bissasor as "my spouse." When I told her that she and Mr. Bissasor did not need to file separate but nearly identical lawsuits, Ms. Anderson stated that they preferred to file separate lawsuits.

Ms. Anderson reported that her other case in Lowell is "settled." That case is 1981CV03514, and concerns events at Homewood Suites in Nashua. She said that the appeal in that case is no longer necessary because it "settled."

This case, Ms. Anderson explained, concerns events at a different hotel in Nashua – Residence Inn. When I pointed out that the named defendant Residence inn Nashua may not be a legal entity that can be served and sued, Ms. Anderson said she has learned the identity of the corporate owner and she is prepared to file an amended complaint naming the corporate owner. When I pointed out that the complaint does not specifically allege any conduct by the co-defendant Jennifer Brooks, Ms. Anderson said that it is "implied" in the complaint and suggested that Jennifer Brooks, although unnamed, is the person who committed some of the alleged acts.

In preparing for the hearing, I saw Paper 8 for the first time. Paper 8 does not describe valid service, but it does show that Ms. Anderson made an effort to serve on October 22, 2021. I explained to Ms. Anderson that Mass. R. Civ. P. 5 does not describe procedures for serving a summons and complaint and that Rule 4 sets forth the requirements. Rule 4 (d) concerns personal service within the Commonwealth and Rule 4 (e) concerns personal service outside the Commonwealth.

I told Ms. Anderson at the hearing that the court will give her another opportunity to serve the defendants. Service must comply with Rule 4 and return of service must comply with Rule 4 (f). As I explained at the hearing, the court is unlikely to extend the time for service. Settlement negotiations will not be grounds for an extension. If settlement negotiations are occurring, the amended complaint should still be served. As I also explained at the hearing, temporary illness is not a likely ground for an extension because Ms. Anderson is currently in good health and has been given ninety days.

Given that Ms. Anderson did provide relevant information in the hearing and that she did make an attempt to serve the complaint on October 22, 2021, the court vacates the dismissal and **ORDERS** that Ms. Anderson (a) may file an amended complaint and (b) she has ninety days to serve the defendants with the summons and amended complaint (on or before July 27, 2022).

April 29, 2022

Joshua Wall
Joshua Wall
Justice of the Superior Court

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 26 of 53

# EXHIBIT D

L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                  SUPERIOR COURT DEPARTMENT

CIVIL ACTION NO.: 2081CV02957

NATALIE ANDERSON; Plaintiff
v.
MARRIOTT INTERNATIONAL, INC.;
RESIDENCE INN NASHUA (formally known as RESIDENCE INN BY MARRIOTT located in
NASHUA and is also the DBA of NASHUA TS LODGING LLC);
TRUE NORTH HOTEL GROUP;
JENNIFER BROOKS;
Defendants.

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. The plaintiff in the above captioned case hereby submits this amended[1] complaint against the Defendants for invasion of privacy, breach of contract, breach of implied contract, breach of the covenant of good faith & fair dealing, unjust enrichment, retaliation/discrimination for opposing discrimination (in violation of state and federal anti-discrimination laws in public accommodations), unfair and deceptive practices and acts, negligence, among other claims as outlined below. Plaintiff demands a jury trial.

### I. INTRODUCTION

2. The plaintiff brings a claim of invasion of privacy, breach of contract, breach of the covenant of good faith and fair dealing, interference with contract and business advantage, unfair treatment based on having made complaints about discrimination based on race (including violations of Title II, and Section 1981, and other state regulations, etc.), unfair and deceptive practices, infliction of emotional distress, consumer protection violations, negligence, and other wrongs, on the part of the defendants. All of which have caused the plaintiff injury and substantial damages as outlined in this complaint.

### II. PARTIES

3. Plaintiff Natalie Anderson is an individual who resides in Massachusetts. She, an African American female, is a natural person and citizen of the Commonwealth of Massachusetts.

4. Defendant Marriott International, Inc. (hereinafter "Marriott") is a Delaware corporation with its headquarters located at 10400 Fernwood Road, Bethesda, Maryland 20817. Marriott is a multinational hospitality company[2] that owns, manages, and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad. Marriott conducts business throughout the State of Massachusetts, and the United States. Marriott owns, operates, manages, or franchises multiple hotels in the New England area, including Massachusetts and New Hampshire. Marriott engages in the operation,

---

[1] According to the Massachusetts Rules of Procedure 15 (a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading.

[2] NB: Starwood Hotels & Resorts Worldwide, LLC is a wholly owned subsidiary of Marriott International, Inc.

1

management, and franchising of hotels, including the Residence Inn by Marriott line of franchises. Marriott operates, manages, or franchises the Residence Inn by Marriott Nashua hotel property. Marriott has, at all relevant times, engaged in trade or commerce in Massachusetts by advertising and offering hotel lodging to Massachusetts consumers.

5. Defendant Residence Inn by Marriott of Nashua ("Residence Inn Nashua") is a franchise of Marriott and is managed by an operations management company, named True North Hotel Group, that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire. Residence Inn by Marriott of Nashua or Residence Inn Nashua is owned and/or managed by True North Hotel Group. The True North Hotel Group has apparently setup a limited liability company named Nashua TS Lodging LLC, for the purpose of doing business (DBA) as Residence Inn by Marriott of Nashua or simply Residence Inn Nashua as a sort of tradename. The real purpose of this elaborate structure or setup is unclear. However, Marriott provides general oversight, brand management and operations management, and revenue management oversight over Residence Inn by Marriott of Nashua. Defendant Residence Inn by Marriott of Nashua also goes by the name of "Residence Inn Nashua."

6. Defendant True North Hotel Group is an operations management company that manages Residence Inn by Marriott of Nashua and that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire. Defendant True North Hotel Group does business in and owns or operates multiple hotel properties in Massachusetts and New Hampshire. The True North Hotel Group provides management services for the Residence Inn by Marriott of Nashua hotel property.

7. Defendant Jennifer Brooks is the general manager of Residence Inn Nashua. She was the general manager of the Residence Inn Nashua at all times relevant to this case.

8. NB: These defendants have setup an elaborate scheme in terms of the various entities that they have setup. However, it should be noted that each of the defendants share equally in the decisions and acts described herein. To the extent that any act or acts may have been done or implemented by any one defendant, then all defendants also share in that responsibility under the principal-agent theory and/or the vicarious liability doctrine.

### III. JURISDICTION AND VENUE

9. The Massachusetts Superior Court has jurisdiction over this action pursuant to its laws and the amount in controversy exceeds $50,000, exclusive of interest and costs, in an amount to be determined at trial.

10. This court has both general and specific personal jurisdiction over the Defendants because the Defendants have conducted and continues to conduct substantial business in the State of Massachusetts.

11. Marriott International, Inc and/or Residence Inn By Marriott are registered with the Massachusetts Secretary of State.

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 29 of 53

12. This court has specific personal jurisdiction arising from Defendants' decision to conduct business in Massachusetts. The Defendants have sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State to render the exercise of jurisdiction by this court reasonable. NB: It should also be noted that the plaintiff has been the target and recipient of Marriot's numerous direct mail campaigns and email/internet marketing campaigns while she was a citizen of Massachusetts.

13. Venue is proper in this court because Defendants conduct business within this state as outlined above.

### IV. FACTUAL ALLEGATIONS

#### A. An Overview of Marriott

14. Marriott is a leading hotel and hospitality company with more than 6,700 properties across 130 countries and territories, reporting revenues of more than $22 billion in fiscal year 2017.[3]

15. Marriott owns about 30 hotel brands including Marriott Vacation Club, Renaissance Hotels, The Ritz-Carlton, Moxy Hotels, and AC Hotels, among others. Marriott has grown exponentially over the last few years by acquiring other hotel chains. Most notably, Marriott acquired Starwood Hotels and Resorts in 2016 for $13.6 billion, bringing Starwood's Sheraton, Westin, W Hotels, and St. Regis properties under the Marriott umbrella. Since the Starwood acquisition, Marriott has become the world's largest hotel chain and now accounts for 1 out of every 15 hotel rooms around the globe.[4]

16. Marriott is a hotel and lodging corporation with its headquarters in Bethesda, Maryland.

17. Marriott owns, franchises, and manages hotels throughout the United States, including numerous hotel properties located in Massachusetts.

18. Marriott conducts its hotel business through various corporate entities operating under numerous trade names. Marriott hotels operate under at least the following trade names" Starwood, St. Regis, The Luxury Collection, W, Westin, Le Méridien, Sheraton, Tribute Portfolio, Four Points by Sheraton, Aloft, Element, The Ritz-Carlton, Design Hotels, Bvlgari Hotels & Resorts, Edition, JW Marriott, Autograph Collection Hotels, Renaissance Hotels, Marriott Hotels, Delta Hotels and Resorts, Gaylord Hotels, AC Hotels by Marriott, Courtyard by Marriott, Residence Inn by Marriott, Springhill Suites by Marriott, Fairfield Inn & Suites, TownePlace Suites by Marriott, and Moxy Hotels.

19. It offers lodging at its hotels to Massachusetts residents, including through its online reservation website and through the websites hosted by third party entities, such as Priceline and Expedia. These websites allow consumers to obtain information about Marriott's hotel rooms and allow consumers to compare Marriott's hotel room prices to that of other hotels as well as make hotel reservations. It also engages in

---

[3] About Marriott Hotels | Marriott Corporate Business Information, Marriott, https://www.marriott.com/marriott/aboutmarriott.mi (as of December 2018).

[4] Marriott Closes $13-Billion Purchase of Starwood to Become World's Largest Hotel Chain, Los Angeles Times, https://www.latimes.com/business/la-fi-marriott-starwood20160923-snap-story.html (last visited Dec. 6, 2018).

direct marketing campaigns to current or potential customers using both direct mail as well as email, social media, and other internet marketing methods.

### B. Marriott Collects Highly Sensitive Information From its Customers.

20. In order to stay at a Marriott property, guests must first make a reservation and provide Marriott their full names, mailing addresses, email addresses, telephone numbers, credit or debit card numbers, travel itinerary, and often times other sensitive information.

21. According to the Privacy Statement posted on its website, Marriott also collects other "Personal Data" (which it defines as "data that identif[ies] you as an individual or relate to an identifiable individual") about its guests during the course of their visits, including their:

- Name
- Gender
- Postal address
- Telephone number
- Email Address
- Credit and debit card number or other payment data
- Financial information in limited circumstances
- Language preference
- Data and place of birth
- Nationality, passport, visa, or other government-issued identification data
- Important dates, such as birthdays, anniversaries, and special occasions
- Membership or loyalty program data (including co-branded payment cards, travel partner program affiliations)
- Employer details
- Travel itinerary, tour group or activity data
- Prior guest stays or interactions, goods and services purchased, special service and amenity requests
- Geolocation information
- Social media account ID, profile photo and other data publicly available, or data made available by linking your social media and loyalty accounts

In more limited circumstances, Marriott also collects:
- Data about family members and companions, such as names and ages of children
- Biometric data, such as digital images
- Images and video and audio data via: (a) security cameras located in public areas, such as hallways and lobbies, in our properties; and (b) body-worn cameras carried by our loss prevention officers and other security personnel
- Guest preferences and personalized data ("Personal Preferences"), such as your interests, activities, hobbies, food and beverage choices, services, and amenities of which you advise us or which we learn about during your visit Marriott stores this incredibly sensitive trove of data and uses this information for its own commercial purposes.

22. In fact, Marriott collects and uses such detailed and sensitive consumer data that it enlisted a leading data analytics company to use that wealth of data to identify, attract, and retain the most profitable customers. In other words, Marriott uses all of the data it collects to help predict and influence its customers' future behaviors (i.e., convincing them to stay at their properties).

23. According to the analytics company, that's because there's no lack of available data here. Together, they have access to household profiles, including number of kids, type of jobs held by family members, their salaries, where and how they spend their money, and even the type of jeans they buy. The level and granularity of data Marriott and this analytics company collects is frightening. They can even identify when a guest leaves a hotel, where they go, and when they're at home and in bed for the night (by tracking their cell phone's location and activity).

24. Consumers place value in data privacy and security, and they consider it when making decisions on hotel room purchases. Marriott recognizes this and also the sensitivity of the information it collects and, in light of that, promises to use reasonable measures protect and keep it secure.

25. In fact, it is widely accepted that consumers are willing to pay higher prices to do business with merchants that better protect their privacy and information. A number of studies have found that U.S. consider security when purchasing goods and services, and that over 50% of consumers would consider paying more to work with a company with better security.

26. Likewise, studies have shown that over 70% of U.S. consumers will provide less personally identifiable information to organizations that suffer a data breach.

27. Consumer technology markets have likewise demonstrated that consumers value their privacy and security and incorporate data security practices into their purchases. Because of the value consumers place on data privacy and security, services with better security practices command higher prices than those without. Indeed, if consumers did not value their data security and privacy, profit-seeking corporations (like Marriott) would have no reason to tout their privacy and security credentials to current and prospective customers.

28. These value propositions reflect the fact that consumers view companies that promise to adequately secure customer data as being far more useful—and valuable—than those with substandard protections.

29. As a result, a hotel service with substandard data security and privacy protections is less useful and valuable than a product or service using adequate security protocols, and is, in reality, a different service entirely.

30. Had Plaintiff knew Marriott would not adequately protect her private sensitive information, she would not have stayed there.

### C. Plaintiffs' Privacy and Contractual Rights

31. Plaintiffs is a Marriott customer who has stayed at and purchased hotel rooms at a variety of Marriott properties over many years.

32. Plaintiff is a "Titanium" member of Marriott's rewards programs which is the highest level of loyalty-rewards elite membership attainable for Marriott customers.

33. Each time Plaintiff reserved and purchased a room at a Marriott hotel, she was required to provide her personal information, including her name, home address, email address, telephone number, travel information, and payment information, among other things.

34. Because she purchased her rooms from a well-known, supposedly reputable hotel chain, Plaintiff believed that Marriott would use reasonable and accepted security methods to secure her personal and sensitive information, and Marriott confirmed that belief in its Privacy Statements.

35. Accordingly, when Plaintiff stayed at Marriott properties and paid for her rooms, she paid for a service and also data privacy and security measures, whereby Marriott promised to take reasonable measures to protect her sensitive and private information.

36. Such data security was a material part of her purchases. Thus, without adequate and reasonable privacy and security protections that Marriott promised, and that Plaintiff justifiably believed she would receive as part of her purchase, the purchased services as a whole were substantially less useful and valuable to her.

37. Had Marriott adequately disclosed that it would not actually implement adequate privacy and security protocols, Plaintiff would—through reading Marriott's privacy statements or learning through the media—know to be wary of Marriott's privacy and data security practices.

38. Accordingly, had Marriott adequately disclosed its lax privacy and security practices prior to her purchases, plaintiff would not have stayed at Marriott properties in the first place including the Residence Inn Nashua.

**D. Defendants Breached Plaintiffs' Privacy and Contractual Rights**

39. The defendants violated the plaintiff's privacy by divulging to hostile third party strangers certain sensitive private and personal information about the plaintiff and about its agreement with plaintiff and about plaintiff's stay at Defendants' hotel. This invasion of privacy was wanton and reckless and without regard to the plaintiff's rights and resulted in damages.

40. In or around December 2018, the defendants knowingly and intentionally divulged and disclosed to outside third parties/outsiders/unauthorized persons, private customer information/data about the plaintiffs including the personal and hotel occupancy records and details of the plaintiff's stay at the Residence Inn Nashua.

41. In particular, Defendant Jennifer Brooks, general manager of Residence Inn Nashua, specifically gave the plaintiff's private customer information to at least two strangers/outsiders (who did not work for Marriott or who did not work for any of the defendants nor were employees, contractors, or agents of any of the defendants). These two strangers posed as "private investigators", and solicited from Ms. Brooks, information about the plaintiff, by simply walking into the Defendants' hotel and asking to speak with the general manager.

Date Filed 9/21/2022 4:46 PM
Superior Court,- Middlesex
Docket Number 2081CV02957 Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 33 of 53

42. Without seeking the consent of the plaintiff, Defendant Brooks recklessly and carelessly, without hesitation or caution or due diligence, vomited out wholesale private customer information about the plaintiff to these third party outsiders/strangers who walked-in from the street, by looking up plaintiff's information in Defendant hotel's computer system and directly divulging plaintiff's private customer information to these two strangers who simply walked off the street into hotel and began asking questions about the plaintiff. There was no subpoena presented to Ms. Brooks nor was there any basis in law or company policy to breach the data privacy of the plaintiff.

43. This was a gross direction of duty by Ms. Brooks to protect and safeguard the privacy and security of the plaintiff's customer information contained within Marriott's computer system.

44. The defendants' conduct impermissibly invaded and intruded upon the plaintiff's privacy and contract rights.

45. Marriott hotels, including Residence Inn Nashua, generally have a privacy and confidentiality agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at a Marriott hotel and, in this case, when the plaintiff stayed at defendants' hotel in 2017.

46. In addition, the defendants in this case (above and beyond Marriott's privacy policies) had or entered into a specific agreement with the plaintiff, that was entered into between the plaintiff and the Residence Inn Nashua, to keep information about her stay private and confidential and to not release any information to anyone without her consent. This agreement was, in part, triggered specifically because of certain harassing anonymous phone-calls that were made/directed to plaintiff's room, which the defendants wrongly allowed to be transferred to her unit more than once, causing her emotional distress and terror.

47. Hence, in addition to the expectation of privacy that attaches generally to any hotel guest when they stay at hotel, as a matter of privacy law and constitutional law (an expectation of privacy, or rights thereof, that have been recognized by the US supreme court and the Massachusetts supreme court), there is an additional expectation of privacy that attaches to a guest that stays at a Marriott hotel given that Marriott publicly announced policies and promises, upon which customers rely on to their detriment. And beyond even that, the plaintiff had an even greater or additional expectation of privacy based on the specific agreement that was entered into by the defendants to protect and safeguard the information of the plaintiff for safety, security, and privacy reasons.

48. The plaintiff therefore had a strong privacy interest and a contractual interest in keeping her information private and confidential. Such information also contains credit card information used, and other personal and private information including but not limited to rewards card information, rewards and loyalty patterns, purchase habits, other private financial data, data regarding personal preferences and requests.

49. Also, the plaintiff had a right to privacy regarding any future reservations that they make with Marriott hotels.

50. But the defendants ignored these obligations, promises and contractual duty in order to wantonly divulge information about the plaintiff's information including but not limited to details about certain of plaintiff's lodging arrangements in the past and for the future as well as private hotel records pertaining to the plaintiff. This was a complete breach of privacy.

51. Moreover, courts have recognized a hotel guest's right to privacy as it relates to their occupancy at a hotel ("we have stated that the privacy interest in a hotel room is comparable to that of the home." See State v. Tarasuik, 160 N.H. 323, 328 (2010) at 328.).

52. Similarly, courts across the nation have enforced the privacy rights of hotel guests. See also Erin Andrews v. Marriott International, Inc., 2016 IL App (1st) 122731, where the plaintiff was awarded approximately $55 million for the violations of the privacy rights of a hotel guest.

53. Moreover, all hotels also have an interest in protecting the privacy of their hotel guests. See City of Los Angeles v. Patel (US Supreme Court 2015).

54. If hotel guests are made to believe that their information will not be protected, hotels will lose customers and market share. This is especially true for larger global brands, like Marriott, who rely heavily on their reputational assets for global market share.

55. Because Marriott had a specific agreement with the plaintiff to keep information about their stay private and confidential and to not release any information to anyone without their consent, then Marriott also had a further specific contractual obligation towards the plaintiff.

56. This obligation should not have been interrupted and plaintiff's private information should not have been disclosed to third parties/outsiders/unauthorized persons, simply because a third party wanted to intrude to obtain private information about the plaintiff.

57. Additionally, Plaintiff took (and continues to take) considerable precautions to protect the unauthorized dissemination of her personal and sensitive information to unauthorized persons or third parties that she has not consented to. Unfortunately, as a result of Marriott's failure to implement its promised and paid-for security practices, Plaintiff's personal and sensitive information was disseminated without her consent.

58. As a result, Plaintiff has suffered damages.

59. Additionally, as a result of Marriott's breach and failure to adequately protect plaintiff's information, Plaintiff is at risk that unauthorized third parties will or could further misuse her sensitive and personal information[5].

---

[5] NB: In fact, Plaintiff has suffered the fraudulent use of her personal and financial data by unknown parties, resulting in her having to close her credit card that was on file with Residence Inn Nashua and issue a fraud alert on her card account. Plaintiff does not

60. The defendants, as a Marriot hotel, know better (or should have known better) than to disclose such private customer information to outsiders/strangers/unauthorized persons. The defendants know that Marriott hotels have privacy agreements concerning their guest information. The fact that the defendants were so cavalier with divulging plaintiff's private information to third parties shows a wanton disregard for plaintiff's privacy rights.

61. Defendants must have known that disclosing private customer information to third parties would lead to harm and damage.

62. The defendants' conduct was foreseeable to create or cause havoc to the plaintiff and thus was done intentionally without regard for the plaintiff's rights.

63. NB: The defendants willfully divulged plaintiff's information to strangers/outsiders/unauthorized persons, even after there was an incident of multiple harassing anonymous calls transferred[6] by the hotel front desk to the plaintiff's room (which involved silent heavy breathing and then hanging up more than once) for which the plaintiff felt threatened, harassed and stalked and for which the plaintiff complained to the hotel/the defendants, and requested that the hotel not transfer anyone to her room or divulge any information to anyone whatsoever based on safety concerns (to which the defendants agreed).

64. The defendants committed a serious and significant violation of the plaintiff's right to privacy in subsequently divulging her private customer information to strangers/outsiders/unauthorized persons. And this was no low-level error of a low-level employee. This was done by the general manager who definitely should have known better. To this day, it is unclear what motivated the general manager to commit such an egregious violative act.

65. Yet, to add insult to injury, even after the defendants breached plaintiff's privacy, they still did not inform the plaintiff that there was a breach. The defendants had a duty to inform the plaintiff that the defendants had disclosed her information to a third party. The plaintiff only discovered the breach from another

know for certain if the defendants' unauthorized breach of plaintiff's privacy may have led to any fraud or breach of her credit cards. Discovery, however, will tell or confirm this information in terms of the full extent of the breach of privacy that occurred.

[6] This itself is another example of a breach of privacy and security as well, by defendants' hotel. The anonymous person who called, who the front desk later stated was a male, asked if there was a Natalie Anderson staying there and the hotel front desk staff immediately confirmed this and then transferred the person to her room without first checking with the plaintiff. The anonymous person did not know the room number of the plaintiff or the extension to her room, nor did the person know if the plaintiff was a resident/occupant of the hotel. This exemplifies the lax privacy and security of Defendants' hotel. Moreover, when the person called a second time, the front desk person recognized the voice and for the first time asked who it is, and the person stated he was a "business associate" and refused to give his name, but still the hotel desk staff transferred his call again to plaintiff's room where he again breathed into phone saying nothing while the plaintiff answered the phone and kept saying "hello", but to no avail until the anonymous caller hung up without saying anything. This occurred more than once. Yet, it did not occur to the hotel front desk staff that if the anonymous male caller (who refused to give his name) was a business associate, why did he not know her room number in the first place or her extension or have her cellphone or know for certain if she was an occupant. The bottom line is that the hotel front desk should not have disclosed to the anonymous caller any information about the plaintiff, nor should he have transferred him to her room more than once without getting this basic information from him or without first checking with the plaintiff, which on information and belief accords with Marriott policies and best practices.

source not related to the defendants. The defendants never informed the plaintiff that two strangers had been asking questions about the plaintiff and were seeking to obtain information about plaintiff's stay and related private and sensitive information. The defendants also never informed the plaintiff that Ms. Brooks divulged private information about the plaintiff to these two strangers/outsiders/unauthorized persons. Instead, the defendants covered it up and hid this from the plaintiff. The defendants left the plaintiff there as a "sitting duck" while she was a resident at Defendants' hotel. These strangers could have been stalkers or worked on behalf of a stalker or someone capable of violence against women. It is totally outrageous for the defendants to have engaged in such blatant flagrant violative conduct.

## V. COUNTS

66. The plaintiff alleges the following violations of law by the defendants: breach of privacy; breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, interference with business or contractual relations; retaliation/discrimination based on race (associational retaliation/discrimination); unfair and deceptive practices/acts (93A violations); negligence; intentional infliction of emotional distress, unfair and deceptive practices.

## COUNT I: BREACH OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)
### (All Defendants)

67. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

68. The plaintiff alleges invasion of her right of privacy under G.L. c. 214, § 1B, which states: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."" See also Nelson v. Salem State College, 446 Mass. 525, 536 (2006) ("To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious."). See also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-518 (1991) (Schlesinger).

69. The statute allows recovery for the public disclosure of private facts. See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 n. 16 (2005); Schlesinger, supra at 517 & n. 4, 519-521; Amato v. District Attorney for the Cape & Islands Dist., 80 Mass.App.Ct. 230, 240 (2011).

70. "The right which the plaintiffs claim was infringed upon is their right to be left alone." Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 637 (1996) (Ellis). See Schlesinger, supra at 517.

71. "Nowhere are expectations of privacy greater than in the home, and '[i]n the home ... all details are intimate details....' " Commonwealth v. Balicki, 436 Mass. 1, 12 n. 14 (2002), quoting Kyllo v. United States, 533 U.S. 27, 37 (2001).

72. Massachusetts recognizes a legal claim for publication of private facts based on Mass. Gen. Laws ch. 214, § 1B, which proscribes "unreasonable, substantial or serious interference" with one's privacy.

73. The Massachusetts privacy statute allows remedies for "breaches" of private information or "invasions" of information privacy.

74. Under Massachusetts law, a publication of private facts claim involves publication of facts of a "highly personal or intimate nature" which are "of no business of the public."

75. The disclosure need not be made to the public at large and a disclosure to two people has been found sufficient to warrant relief under § 1B.

76. Offensiveness to a reasonable person is not one of the statutory criteria under § 1B but Massachusetts courts consider publication of private information "of no business to the public" to be "offensive." See Cefalu v. Globe Newspaper Co., 391 N.E.2d 935, 939 (Mass. App. Ct. 1979).

77. The plaintiff has been aggrieved by an unauthorized disclosure of confidential information, which is a breach of privacy under the state right of privacy statute:  Massachusetts General Laws, chapter 214, section 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy.").

78. The acquisition, access, use or disclosure of protected private information concerning the plaintiff to unauthorized persons is a "breach" giving rise to significant financial, reputational or other harm to the plaintiff, especially when intentionally done by a hotel.

79. The plaintiff thus alleges harm from the privacy breach and the plaintiff has suffered damages including mental distress and harm to her interest in privacy arising from the information being made accessible to third parties.

## COUNT II: BREACH OF CONTRACT
### (All Defendants)

80. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

81. The defendants violated their contract by impermissibly disclosing the plaintiff's private information to third party strangers/ outsiders/ unauthorized persons, posing as private investigators, and, as a result of that disclosure, plaintiff was harmed.

82. The defendants have engaged in a breach of contract resulting in a violation of plaintiff's right to privacy, Mass. Gen. Laws ch. 214, §1B.

83. There existed a contract with defendant and plaintiff. The defendants breached the contract it had with the plaintiff and her spouse. The defendants breached their obligation not to disclose his information or data without proper cause or legal compulsion.

84. The defendants breached the contract with plaintiff by providing private third parties with her private information, and as a result of that contract breach the plaintiff suffered harm.

85. Where there is an agreement between a hotel and a customer to rent a unit for a specified time, the hotel has a duty to the customer, who has confirmed this arrangement, to honor its end of the bargain by providing the customer with the service which they both agreed upon. By entering this agreement, the hotel's promises including those concerning privacy are further ratified.

86. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiffs.

87. Marriott, including Residence Inn line of business, have a contractual agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at their hotels and, in this case, when the plaintiffs stayed at Residence Inn Nashua.

88. Plaintiffs relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail themselves of all of the benefits, access, resources, and protections available to them as promised by Defendants.

89. Defendants breached this contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive, and disparate manner and by retaliating against plaintiff when defendants learned she had raised concerns in a court complaint about how she was treated by a neighboring hotel.

90. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

91. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

92. Plaintiff had a reasonable expectation that the defendants would adhere to the terms of such contract.

93. Plaintiff further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and federal regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation. If plaintiff had known upfront that the defendants would have engaged in such discriminatory and retaliatory practices, plaintiff would likely have elected to stay elsewhere, investing their resources, equity, and time other than at Residence Inn Nashua.

94. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

95. Moreover, the defendants allowed itself to be influenced by the third-party interference.

96. Similarly, upon learning of a complaint of race discrimination against a neighboring hotel, the defendants allowed that complaint against a neighboring hotel to influence how it treated the plaintiff, which is a form of associational discrimination. It was only after the defendants became aware that

plaintiff had previously made a discrimination claim against a neighboring hotel, did the defendants then suddenly began to shift its dealing and treatment of the plaintiff, resulting subtle and constructive attempts at breaching the agreement with plaintiff.

97. Plaintiff thus further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and other federal and state regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation.

98. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

99. As a result of those actions, plaintiff has suffered and will continue to suffer damages.

## COUNT III: BREACH OF IMPLIED CONTRACT

### (All Defendants)

100. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

101. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

102. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

103. Plaintiff had a reasonable expectation that defendants would adhere to the terms of such contract.

104. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiff.

105. Plaintiff relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail himself of all of the benefits, access, resources, and protections available to his as promised by Defendants.

106. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive, and disparate manner and by retaliating against plaintiffs when they raised concerns about how they were being treated or about their adherence to their own policies.

107. As a result of those actions, plaintiff have suffered and will continue to suffer damages.

108. Defendants solicited and invited Plaintiff to share personal information such as dates of birth, passport numbers, credit and debit card numbers and other payment data, employer details, geolocation information, and other personal and confidential information as described herein, when they booked a room.

109. When Plaintiff provided their personal and confidential information to Defendants when they booked a room, they entered into implied contracts with the Defendants, pursuant to which Defendants agreed to

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 40 of 53

safeguard to protect their information, and to timely and accurately notify Plaintiff if their data had been breached or compromised.

110.  Plaintiff would not have provided and entrusted their personal and confidential information to Defendants in connection with booking a room in the absence of the implied contract between them.

111.  Defendants breached the implied contracts it made with Plaintiff by failing to safeguard and protect the personal and confidential information of Plaintiff and by failing to provide timely and accurate notice to them that their information was compromised or disclosed to unauthorized persons.

112.  As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff has suffered damages.

## COUNT IV: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (All Defendants)

113.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

114.  Defendants owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiff to receive the fruits of the contract.

115.  Through its actions and inactions, Defendants breached its duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests.

116.  By the conduct alleged herein, the defendants have breached the implied covenant of good faith and fair dealing and caused harm to plaintiff.

117.  As a result, Plaintiff has suffered damages.

118.  The defendants violated the implied covenant of good faith and fair dealing when the defendants breached the terms of the contract by impermissibly disclosing the plaintiff's information to third party outsiders.

119.  In Massachusetts, every contract "imposes an obligation of good faith and fair dealing in its performance and enforcement," and this covenant is that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Lechoslaw v. Bank of v. N.A., 575 F. Supp. 2d 286, 296–97 (D. Mass. 2008).

120.  This covenant is intended to ensure "that the parties remain faithful to the intended and agreed expectations of the contract" and that neither party will do anything that will prevent the other party from receiving the benefits of the contract. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008).

121.  There is a contract between the plaintiff and defendants that requires the defendants to protect the plaintiff's personal information by not disclosing it to third parties including private investigators without being compelled to do so.

122.    The plaintiff clearly has an expectation that her data would be kept confidential, and that expectation was violated when the defendants provided the records to third party outsiders claiming to be private investigators.

## COUNT V: UNJUST ENRICHMENT
### (All Defendants)

123.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

124.    In the alternative, plaintiffs also allege Unjust Enrichment.

125.    The defendants have received a substantial monetary benefit, in the form of several months of rent payment by Plaintiff.

126.    As set forth above, due to gross and numerous violations of its own procedures and its policies, plaintiffs have suffered prejudice and was subjected to mistreatment, disparate treatment, discrimination, retaliation, and unfair practices.

127.    Defendants have therefore been unjustly enriched by monies paid for services to the Defendants that have been inferior, sub-par, poor and markedly hostile.

128.    Plaintiffs are entitled to credits for room nights based on the Defendants' customer satisfaction guarantee.

129.    By its wrongful acts and omissions, Defendants have been unjustly enriched at Plaintiff's expense, and conversely Plaintiff has been unjustly deprived.

130.    As a result, plaintiff has been caused significant harm.

131.    For the reasons set forth herein, under the circumstances it would be inequitable for the defendants to retain all of the monies that they have received from plaintiff.

## COUNT VI: INTERFERENCE WITH ADVANTAGEOUS BUSINESS OR CONTRACTUAL RELATIONSHIPS
### (Defendant Jennifer Brooks)

132.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

133.    Plaintiff possessed an advantageous relation with Marriott and thereby all Marriott franchises.

134.    The plaintiff had a contractual or business relationship with Residence Inn Nashua, and the acts of Jennifer Brooks interfered with that contract or business relationship.

135.    Plaintiff anticipated further advantageous relations with Marriott and Residence Inn Nashua in the future.

136.    Defendant Brooks intentionally interfered with the plaintiff's advantageous or contractual relationship with Residence Inn Nashua when she disclosed plaintiff's information to private investigators and when, upon learning of plaintiff's discrimination lawsuit against another hotel, she sought to drive the plaintiff out of Defendants' hotel by various acts, including subtle and covert ones, intended to deprive

plaintiff of her contractual rights including unreasonably raising her rents to unaffordable amounts or by attempting to cancel or block her return reservations with Residence Inn Nashua. Similarly, the defendants unwound or sought to unwind promises and agreements that had been made with plaintiff regarding favorable rates for long-term stays. They effectively tried to do things to not welcome back the plaintiff at the hotel (after discovering the plaintiff's protected activity while the plaintiff went away for a Christmas trip and was scheduled to return thereafter to defendants' hotel).

137. As a result of Defendant Brooks' misconduct, Plaintiff's advantageous relations/contractual relations may be irretrievably damaged. Plaintiff has suffered and will continue to suffer substantial and irreparable harm.

138. By the above-described conduct, *inter alia,* Ms. Brooks knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with Plaintiff's actual and potential advantageous relations and contractual relations.

139. As a result of this intentional interference, plaintiff has suffered and continue to suffer damages.

## COUNT VII: RETALIATION/DISCRIMINATION BASED ON RACE (ASSOSCIATIONAL RETALIATION/DISCRIMINATION BASED ON PROTECTED ACTIVITY)

### (All Defendants)

140. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

141.    The defendants sought to constructively break plaintiff's rental agreement for reasons related to plaintiff raising concerns that a neighboring hotel (not the defendants' hotel) had engaged in racial discrimination and retaliation for raising concerns about discrimination, against the plaintiff.

142.    Defendants then, suddenly and without explanation, began to treat the plaintiffs differently and less favorably, and thus engaged in intentional conduct in violation of laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiffs' protected rights.

143.    Hence, Defendants sought to breach the agreement with plaintiff in retaliation because she raised concerns about racial discrimination by another neighboring hotel.

144.    The defendants engaged in conduct adverse to the plaintiff within weeks of them finding out about the discrimination complaints against the neighboring hotel.

145.    There is a temporal proximity and a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e., defendants took adverse action because plaintiff engaged in protected activity.

16

Date Filed 9/21/2022 4:46 PM
Superior Court - Middlesex
Docket Number 2081CV02957 Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 43 of 53

146.    [NB: There is a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e., defendants took adverse action because plaintiff engaged in protected activity. It is very rare that there will be direct evidence of retaliatory motive. Instead, most retaliation cases are proven by circumstantial evidence of the retaliatory motive. However, in this case, there is both direct as well as circumstantial evidence of retaliation].

147.    Furthermore, the pattern of discrimination and retaliation also occurred relative to how plaintiff was treated in general as a guest, including having plaintiff's rent increased shortly after her protected activity was discovered.

148.    Defendants thus have also violated 42 U.S.C. § 1981. Section 1981 provides: *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to* **make and enforce contracts**, *to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).* The statute also states that *"[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."* 42 U.S.C. § 1981(b).

149.    The Defendants denied plaintiff the use and enjoyment of the benefits, privileges, terms, and conditions that they extend to all other similarly situated guests, residents, and invitees. The Defendants breached their contract with plaintiff and retaliated/discriminated against plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the state code.

150.    To state a *prima facie* case of discrimination, the plaintiff is to show that: (1) they belonged to a protected class; (2) they sought to make a contract for services ordinarily provided by the defendant; and (3) they were denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

151.    In this case, the plaintiff has clearly met this burden for a prima facie case of discrimination, as follows:

    a.  The plaintiff is African American and belong to a protected class. This is undisputable.

    b.  Plaintiff sought to make and enforce a contract for services ordinarily provided by the defendants. This is undisputable.

    c.  Plaintiff was denied the right to enter/enforce a contract for such services simply because she opposed discrimination at a neighboring hotel. Plaintiff was treated in a manner that was unfavorable compared to other guests outside the protected class, only because the defendants

Date Filed 9/21/2022 4:46 PM
Superior Court - Middlesex
Docket Number 2081CV02957    Case 1:22-cv-11553-LTS    Document 1    Filed 09/21/22    Page 44 of 53

discovered plaintiff's protected activity, and the plaintiff was treated in such a hostile manner that a reasonable person would find it objectively retaliatory/discriminatory.

152.    By seeking to unwind the contract it had with plaintiff, the Defendants interfered with the making and enforcement of a contract.

153.    Defendants' actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

154.    The plaintiff has suffered damages as a result of the foregoing.

## COUNT VII: VIOLATION OF FEDERAL CIVIL RIGHTS STATUTE 42 U.S.C. § 1981
### (All Defendants)

155.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

156.    By the above acts, Defendants violated 42 U.S.C § 1981 by discriminating against plaintiff because of her race as African American [black].

157.    Section 1981 guarantees freedom from racial discrimination in the making, enforcement performance, modification, and termination of contracts.

158.    Section 1981 also guarantees enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

159.    Plaintiff's use of the Defendant's hotel and services falls under section 1981 protection.

160.    Defendants have (1) intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, because of Plaintiff's race; and (2) limited and classified or stereotyped Plaintiff in ways that adversely affected her status as a customer, because of her race; all in violation of Title II of the Civil Rights Act of 1964. As a direct and proximate result of Defendant's intentional, deliberate, and willful discriminatory acts and omissions, Plaintiff has suffered damages.

161.    Discrimination in hotel accommodations include refusals to provide African Americans service, or the harassment of African American customers, or providing inferior service to African Americans. This country has had a dark history throughout the country, including throughout the south where the Civil Rights Movement of the 1960s was symbolized by challenges to segregation in places of public accommodations and gaining equal access to hotels, restaurants, lunch counters, and stores for African Americans.

162.    The right of African American customers to be free from discrimination in hotel accommodations have been upheld in landmark cases such as: Gilliam v. HBE Corp. (d/b/a Adam's

163.    Mark Hotel), a challenge to discriminatory treatment of African American guests at the Adam's Mark Hotel during the 1999 Black College Reunion in Daytona Beach that settled for $2.1 million; and the

series of cases challenging the pervasive discrimination against African Americans during the annual Black Bike Week in Myrtle Beach, South Carolina.

164.     Moreover, retaliation for opposing discrimination is against public policy because it creates a chilling effect on the society's goal of encouraging citizens to oppose, report and speak up about discriminatory practices wherever they occur.

165.     The above raises an important question of federal law as it implicates federal concerns pertaining to the eradication or prevention of race discrimination in public accommodations. It also implicates the issue of the right to make and enforce contracts as an equal protection/constitutional right (as well as certain rights under Title VIII and/or Title II of the Civil Rights Act).

166.     NB: Marriott needs to ensure that its franchisee hotels do not retaliate/discriminate against their black customers who have engaged in protected activity in opposing discrimination from other hotels and they cannot simply wash their hands of any responsibility to eradicate race discrimination from public accommodations simply because it entered into a franchising relationship with a franchisee of its Marriott brand.

## COUNT VIII: UNFAIR AND/OR DECEPTIVE PRACTICES AND/OR ACTS
## ("93A" VIOLATIONS)
### (All Defendants)

167.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

168.     The defendants' disclosure of plaintiffs' private information violated Massachusetts General Laws Chapter 93A, Section 9.

169.     Chapter 93A provides a cause of action to any person who has been harmed by another's use or employment of any unfair or deceptive method, act, or practice.  Mass. Gen. Laws ch. 93A, § 9.

170.     [NB: Plaintiff has also sent a 93A demand letter sent to the defendants but has not received an answer as yet. The plaintiff intends seek leave to amend her complaint if and/or when she receives a response to her 93A demand letter].

171.     The defendants violated their contract by impermissibly disclosing the plaintiff's private information to private investigators, and, as a result of that disclosure, plaintiff was harmed.

172.     Massachusetts courts have consistently required unfair or deceptive practices to be more than a "mere breach of contract, but rather must show misconduct rising to the level of commercial extortion or a similar degree of culpable conduct." See Lam v. PNC Mortg., 130 F. Supp.3d 429, 435–36 (D. Mass. 2015) (quoting Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000).

Date Filed 9/21/2022 4:46 PM
Superior Court - Middlesex
Docket Number 2081CV02957

173.   The defendants have engaged in a breach of contract resulting in a violation of plaintiff's right to privacy, Mass. Gen. Laws ch. 214, §1B.

174.   The Massachusetts 93A (consumer protection) statute protects both consumers by promoting fair competition in commercial markets for goods and services. It prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

175.   93A applies to Defendants' actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

176.   The Defendants are each a "person" as defined under the statute. Defendants' conduct as alleged herein relates to "sales." Plaintiff is a "consumer" as defined under the statute.

177.   Defendants advertise, offer, and sell "consumer goods" or "consumer services" as defined by the statute.

178.   Defendants advertise, offer, or sell or services in Massachusetts and engage in trade or commerce directly or indirectly affecting the people of Massachusetts.

179.   Defendants engaged in unfair and deceptive practices, in violation of 93A by

- Making false or misleading oral and written representations with the capacity or tendency, or effect of deceiving or misleading consumers.

- Failing to state a material fact where the failure deceives or intends to deceive.

- Advertising or offering consumer goods or services without intent to sell them as advertised or offered; and

- Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer relies on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement.

180.   Specifically, Defendants engaged in these unfair and deceptive trade practices in connection with the sale or selling of consumer goods or services, in violation of 93A, by:

- Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's personal information, which was a direct and proximate cause of the breach of plaintiff's privacy.

- Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous incidents.

- Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's' personal information, which was a direct and proximate cause of the breach of privacy.

- Misrepresenting it would protect Plaintiff's' personal information.

20

- Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' personal information.

181.  Defendants were aware or should have been aware that they were not implementing proper or adequate privacy and security protections as outlined above.

182.  Defendants acted intentionally, knowingly, and maliciously to violate 93A as it was on notice of the possibility of an attempt by outsiders or unauthorized third parties to breach the plaintiff's private customer information.

183.  Defendants intended to mislead Plaintiff and induce her to rely on their misrepresentations and omissions.

184.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data privacy/security and ability to protect the confidentiality of consumers' personal and confidential information.

185.  Had Defendants not engaged in the deceptive omission of material facts described above, Plaintiff would have been presented with an informed choice as to whether or not to book a room at their hotel.

186.  Plaintiff was injured by Defendants' unfair and deceptive acts, and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

187.  Had Defendants disclosed their true privacy and security practices, Plaintiff either would not have booked at Defendants' hotels or would have paid substantially less to do so (i.e., the value of a hotel stay without adequate privacy and security protections is worth substantially less than the value of a hotel stay with adequate protection).

188.  As a direct and proximate result of Defendants' violation of chapter 93A, Plaintiff have suffered harm in the form of monies paid for Defendants' products and/or services.

189.  Plaintiff also seeks an order requiring Defendants to cease the unfair practices described herein.

## COUNT IX: NEGLIGENCE

### (All Defendants)

190.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

191.  Plaintiff pleads this negligence count as an additional or alternative count.

192.  As a custodian of important and sensitive personal information, Defendants owed a duty of reasonable care to Plaintiff in safeguarding those records from theft or unauthorized access.

193.  Defendants knew, acknowledged, and agreed the information was private and confidential and would be protected as private and confidential.

194.  Defendants breached that duty by employing substandard methods of data security, and failing to adequately protect and safeguard plaintiff's personal, confidential, and sensitive information by knowingly

Case 1:22-cv-11553-LTS   Document 1   Filed 09/21/22   Page 48 of 53

disregarding standard privacy and security principles, despite obvious risks, and by allowing unauthorized access to Plaintiff's' personal information. Furthering its dilatory practices, Defendants failed to provide adequate oversight of the personal information to which it was entrusted, resulting in a serious breach of the personal and confidential information of the plaintiff.

195.    Moreover, the law imposes an affirmative duty on Defendants to timely disclose the unauthorized access of personal and confidential information to Plaintiff so Plaintiff could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their information.

196.    Defendants breached their duty to notify Plaintiff of the unauthorized access by failing to notify them of the breach of privacy. To date, the Defendants have not provided sufficient information to Plaintiff regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff.

197.    As a direct result of Defendants' negligent conduct, Plaintiff suffered harm.

198.    But for Defendants' failure to secure this data, Plaintiff would not have suffered this harm.

199.    It is reasonably foreseeable that Defendants' practices would harm the plaintiff.

200.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages.

## COUNT X: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL
## DISTRESS
### (All Defendants)

201.    Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

202.    Defendants have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

203.    Defendants caused or created emotional distress for Plaintiff.

204.    Defendants knew that their breach of privacy and their retaliation/discrimination against Plaintiff would cause emotional distress.

205.    The emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

206.    Defendant brooks undertook these actions against the plaintiffs in order to cause them distress and drive them out of the hotel; that her conduct did cause the plaintiffs "extreme discomfort and distress"; and that "the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it."

207.    Defendants intentionally inflicted emotional distress on Plaintiff when as a direct and proximate result of Defendants actions and inactions Plaintiff were caused to suffer severe emotional distress as the result of which a reasonable person in Plaintiff's position would have suffered similar emotional distress under like circumstances.

208. Plaintiff sustained damages as a result of Defendants intentional infliction of emotional distress on them.

209. Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

## VI. CONCLUSION

210.    As a result of the above-described acts, the plaintiffs suffered, continue to suffer, and will in the future suffer emotional distress, embarrassment, frustration, anger, and feelings of racial stigmatization, all to her economic and noneconomic damages in an amount to be determined by a jury at trial.

211.    Plaintiff is also entitled to reasonable attorney fees pursuant to statute.

WHEREFORE, I respectfully pray that the Court grant the following relief:

(1) Enter judgment in Plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief, and such other and further relief as Plaintiffs may be entitled to by bringing this action.

(2) Award damages within the jurisdictional limits of this court and enhanced damages as appropriate.

(3) Award reasonable attorneys' fees and costs including service and filing fees.

(4) Grant a pro se liberal construction to this pleading.

(5) Order such other relief as this Court deems just and equitable.

Respectfully submitted by,
Plaintiff Natalie Anderson

679 Washington Street, Suite # 8-206
Attleboro, MA 02703

Dated: November 12, 2021

# EXHIBIT E

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

MIDDLESEX, ss.                                    CIVIL ACTION NO. 2081CV02957

NATALIE ANDERSON,

      Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,
RESIDENCE INN NASHUA (formerly
known as RESIDENCE INN BY
MARRIOTT located in NASHUA and is
also the DBA of NASHUA TS LODGING,
LLC); TRUE NORTH HOTEL GROUP
AND JENNIFER BROOKS,

      Defendants.

## <u>NOTICE OF REMOVAL FROM SUPERIOR COURT</u>

NOTICE IS HEREBY GIVEN that on September 21, 2022, Defendants, True North Hotel

Group, Inc. and Jennifer Brooks (collectively, the "Defendants"), filed Notice of Removal of this

action in the United States District Court for the District of Massachusetts. A copy of the Notice

of Removal so filed, without exhibits, is attached hereto as <u>Exhibit A</u>. The Notice of Removal and

all exhibits were served on all counsel of record.  Furthermore, pursuant to 28 U.S.C. § 1446(d),

this matter shall proceed no further unless and until the case is remanded to this Court by the

United States District Court.

1

The Defendants,
TRUE NORTH HOTEL GROUP and JENNIFER
BROOKS,
By Their Attorneys,

MORRISON MAHONEY LLP

*/s/ Amy B. Yarbro*

Amy B. Yarbro, BBO # 686665
ayarbro@morrisonmahoney.com
Gabriela Archilla, BBO#706925
garchilla@morrisonmahoney.com
250 Summer Street
Boston, MA  02210
(617) 439-7500

CERTIFICATE OF SERVICE

    I, Amy Yarbro, hereby certify that I have this day served the foregoing to all counsel of record in this action by serving same via email to:

| | |
|---|---|
| Natalie Anderson<br>679 Washington Street, Suite #8-206<br>Attleboro, Massachusetts 02703 | Lewis Weins on behalf of Residence Inn<br>Nashua d/b/a Nashua TS Lodging Group LLC<br>True North Hotel Group<br>7300 West 110th Street, Suite 990<br>Overland Park, Kansas 66210<br>lwiens@truenorthhotels.com |
| Margaret Dakan<br>Marriott International, Inc.<br>7750 Wisconsin Ave.<br>Bethesda, Maryland 20814<br>margaret.dakan@marriott.com | |

Dated:    September 21, 2022      Attorney:      */s/ Amy B. Yarbro*
                                               Amy B. Yarbro

Date Filed 7/26/2022 4:07 PM
Superior Court - Middlesex
Docket Number 2081CV02957

31

L1

Commonwealth of Massachusetts

# AFFIDAVIT OF INDIGENCY

AND REQUEST FOR WAIVER, SUBSTITUTION
OR STATE PAYMENT OF FEES & COSTS

**RECEIVED**
7/26/2022

*(Note: If you are **currently confined in a prison or jail** and are not seeking immediate release under G.L. c. 248 §1, but you are suing correctional staff and wish to request court payment of "normal" fees (for initial filing and service), **do not use this form**. Obtain separate forms from the clerk.)*

**Middlesex Superior**          Natalie Anderson v. Residence Inn, et. al | Case# 2081CV02957
_____       _____
Court                            Case Name and Number (if known)

Name of applicant: **Natalie Anderson**

Address:  **679 Washington Street, #8-206**      **Attleboro**        MA 02703
_____
(Street and number)                    (City or town)              (State and Zip)

SECTION 1:    Under the provisions of General Laws, Chapter 261, Sections 27A-27G, I swear (or affirm) as follows:
              **I AM INDIGENT** in that *(check only one )*:

■(A)  I receive public assistance under *(check form of public assistance received)*:
      ☐ Transitional Aid to Families with Dependent Children (TAFDC)     ■ Medicaid (MassHealth)
      ☐ Emergency Aid to Elderly, Disabled or Children (EAEDC)           ☐ Supplemental Security Income (SSI)
      ☐ Massachusetts Veterans Benefits Programs; **or**

☐(B)  My income, less taxes deducted from my pay, is $ _____ per ☐week ☐biweekly ☐month ☐year
      *(check the period that applies)*  for a household of _____ persons, consisting of myself and _____ dependents;
      which income is at or below the court system's poverty level; *(Note: The court system's poverty levels for households of various sizes must be posted in this courthouse. If you cannot find it, ask the clerk or check online at: https://www.mass.gov/doc/poverty-threshold-guidelines/download. The court system's poverty level is updated each year.)*(List any other available household income for the checked period on this line: $ _____ ); **or**

☐(C)  I am unable to pay the fees and costs of this proceeding, or I am unable to do so without depriving myself
      or my dependents of the necessities of life, including food, shelter and clothing.

IF YOU CHECKED (C), YOU MUST ALSO COMPLETE THE SUPPLEMENT TO THE AFFIDAVIT OF
INDIGENCY.

Date Filed 7/26/2022 4:07 PM
Superior Court - Middlesex
Docket Number 2081CV02957

<u>SECTION 2</u>:     *(Note: In completing this form, please be as specific as possible as to fees and costs known at the time of filing this request. A supplementary request may be filed at a later time, if necessary.)*

I request that the following **NORMAL FEES AND COSTS** be waived (not charged) by the court, or paid by the state, or that the court order that a document, service or object be substituted at no cost (or a lower cost, paid for by the state): *(Check all that apply and, in any "$___" blank, indicate your best guess as to the cost,* ***if known.****)*

☐ Filing fee and any surcharge. $ _____

☐ Filing fee and any surcharge for appeal. $ _____

☒ Fees or costs for serving court summons, witness subpoenas or other court papers. $ See attached

☒ Other fees or costs of $ _____ for *(specify)*: **See attached sheet**

_____

☐ Substitution *(specify)*: _____

_____

<u>SECTION 3</u>:     I request that the following **EXTRA FEES AND COSTS** either be waived (not charged), substituted or paid for by the state:

☐ Cost, $ _____, of expert services for testing, examination, testimony or other assistance *(specify)*:

_____

☐ Cost, $ _____, of taking and/or transcribing a deposition of *(specify name of person)*:

_____

☐ Cassette copies of tape recording of trial or other proceeding, needed to prepare appeal for applicant **not** represented by Committee for Public Counsel Services (CPCS-public defender).

☐ Appeal bond

☐ Cost, $ _____, of preparing written transcript of trial or other proceeding

☐ Other fees and costs, $ _____, for *(specify)*: _____

_____

☐ Substitution *(specify)* _____

| Date signed | Signed under the penalties of perjury |
|---|---|
| 7-26-22 | x /s/ natalie anderson |

**By order of the Supreme Judicial Court, all information in this affidavit is CONFIDENTIAL. Except by special order of a court, it shall not be disclosed to anyone other than authorized court personnel, the applicant, applicant's counsel or anyone authorized in writing by the applicant.**

This form prescribed by the Chief Justice of the SJC pursuant to G.L. c. 261, § 27B. Promulgated March  , 2003. Fillable PDF created August 2013.

Date Filed 7/26/2022 4:07 PM
Superior Court - Middlesex
Docket Number 2081CV02957

**Continuation of Request for Waiver of Costs/Affidavit of Indigency**
**[NB: This is an attachment to the Request for Waiver of Costs/Affidavit of Indigency. Do not separate. This is to be impounded by operation of statute and by order of the SJC.]**
**By Natalie Anderson**

1. I am requesting relief from this court by way of the following.
2. I filed an affidavit of indigency/request for waiver for summons and service of process in this case. This court allowed my affidavit of indigency/request for waiver of cost, for summons and service of process.
3. I am seeking an adjustment, accommodation or substitution to the approved waiver of costs for me to serve process and to prosecute the case as follows..
   a. First, I am seeking to consolidate my case with my spouse's case (with the same facts and the same defendants).
      i. Consolidation would result in judicial economy. This will also save on costs for the case(s), including the costs for service of process, for both me and my spouse.
      ii. Initially, I and my spouse filed separate lawsuits (one in this court and one in the Bristol superior court) but with the same facts and same defendants, thinking that this would best preserve our rights individually, among other things, under the circumstances. However, having been informed of the two separate but identical lawsuits, this court explained to me (in the 4-28-22 hearing) that it was not necessary for me and my spouse to file separate but nearly identical lawsuits, and that I could choose to proceed together with my spouse's case (with the same defendants), instead of proceeding separately (or something to that effect).
      iii. I spoke to the clerk's office at the Bristol superior court where my spouse has the same case with the same defendants and they said that the proper procedure is to transfer my case to that court, in order to consolidate my case with my spouse's same case there. However, they said that a motion to transfer and consolidate should be filed there in that court and then that court will communicate with this court regarding the transfer.
      iv. I contacted the session clerk for my case in this court, asking her whether I should also file something in this court for my case to let this court know about this motion to transfer and consolidate or if I should simply wait for the other court to communicate with this court.
      v. She answered saying that I should file something to let the court know what I am looking for, etc. Hence, I am filing this as a result.
   b. Similarly, further grounds for the transfer of this case to the Bristol superior court are as follows:
      i. After e-filing of this case, I had a change of address which I notified this court of to: **679 Washington St, #8-206, Attleboro, MA 02703.**).

1

Date Filed 7/26/2022 4:07 PM
Superior Court - Middlesex
Docket Number 2081CV02957

    ii.   The distance from the above address to this court is too far and is not convenient, accessible, and is cost prohibitive. NB: The distance is about 160 miles both ways and is over 2hrs (or more) drive round trip.

    iii.   A transfer to Bristol superior court would solve the convenience /accessibility problem, and be a cost-effective solution for me. NB: Bristol superior court is the superior court that covers Attleboro MA.

    iv.   I am thus requesting a transfer to Bristol county superior court as part of an adjustment under a request for waiver/substitution, so that the case be transferred to a court that is more convenient/accessible to me,

c.  Furthermore, as a result **I am requesting an extension of time to serve process on the defendants** in order to allow for transfer and consolidation.

    i.   I believe at least 30 to 45 days would be needed to allow this to be completed (or any time the court deems needed).

    ii.   [NB: Also, given that the deadline to serve process is July 27, 2022, I request an extension of time to serve process, or a stay of the deadline the serve process, until after a hearing takes place if a hearing is needed (i.e., the deadline to serve has to (logically/reasonably) be extended, or stayed, pending decision after hearing).]

d.  Lastly, this case involves out-of-state defendants. I request instruction on how to apply a waiver of cost concerning service to out of state defendants.

    i.   I am not clear on how **the waiver of costs gets applied in such situations where there are out of state defendants**

    ii.   There is no court rule that addresses this issue (i.e., how the court intends to have a litigant apply a cost waiver for service of process to out of state defendants).

    iii.   If this case involved local MA defendants, then I understand that the local MA sheriff would be involved (and that the litigant is automatically provided a determination of costs document from this court to give to the local MA sheriff). But for out of state defendants, the local MA sheriff cannot be used.

    iv.   Thus, I am not clear on how to get the cost of service of process (to out of state defendants) covered by this court.

    v.   Thus, I need clarification on how to get the court's waiver applied to serving process in this instance.

    vi.   **Without this clarification or instruction from this court, it will be impeded in my ability to complete service of process.**

e.  In the alternative, I request **waiver of costs for using an out of state process server to serve process to out-of-state defendants**. [NB: This process server would be in the same state as the location of the defendants.].

4.  Please grant the request made herein.

Respectfully Submitted,

/s/ natalie anderson

NATALIE ANDERSON

Dated: July 26, 2022

30

## C. Andrew Johnson

| | |
|---|---|
| **From:** | Mary G Stewart |
| **Sent:** | Monday, June 27, 2022 4:23 PM |
| **To:** | C. Andrew Johnson |
| **Subject:** | FW: 2022-P-0087 - Notice of Order |

-----Original Message-----
From: Appeals Court Clerk's Office <AppealsCtClerk@appct.state.ma.us>
Sent: Monday, June 27, 2022 1:00 PM
To: Middlesex Clerks Office <middlesex.clerksoffice@jud.state.ma.us>
Subject: 2022-P-0087 - Notice of Order

-COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE

Dated: June 27, 2022

RE:     No. 2022-P-0087
Lower Court No: 2081CV02957

NATALIE ANDERSON vs. RESIDENCE INN-NASHUA & another

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the Motion for voluntary dismissal of appeal based on resolution of lower court case filed by Natalie Anderson. (Paper #11), on June 27, 2022, the following order was entered on the docket:

RE#11: The stay of appellate proceedings is vacated. Appeal dismissed with prejudice and without an award of costs or fees to any party, pursuant to M.R.A.P. 29(b). *Notice/Attest.

IMPORTANT INFORMATION ABOUT ELECTRONICALLY FILING IN THE APPEALS COURT

Every attorney with an appeal pending in the Appeals Court must have an account with eFileMA.com. Registration with eFileMA.com constitutes consent to receive electronic notification from the Appeals Court and e-service of documents. Self-represented litigants are encouraged, but not required, to register for electronic filing.

All documents may, and some must, be electronically filed with the Appeals Court using eFileMA.com. No paper original or copy of any e-filed document is required.

E-filing impounded documents or e-filing by self-represented litigants is voluntary.

Additional information is located on our Electronic Filing web page: http://www.mass.gov/courts/court-info/appealscourt/efiling-appeals-faq-gen.html

Very truly yours,
Joseph F. Stanton, Clerk

To: Natalie Anderson, Residence Inn-Nashua, Middlesex Superior Court Dept.

---------------------------------------------------------------------

If you have any questions, or wish to communicate with the Clerk's Office about this case, please contact the Clerk's Office at 617-725-8106. Thank you.

#29

L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT DEPARTMENT

CIVIL ACTION NO.: 2081CV02957

NATALIE ANDERSON; Plaintiff
v.
MARRIOTT INTERNATIONAL, INC.;
RESIDENCE INN NASHUA (formally known as RESIDENCE INN BY MARRIOTT located in
NASHUA and is also the DBA of NASHUA TS LODGING LLC);
TRUE NORTH HOTEL GROUP;
JENNIFER BROOKS;
Defendants.

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. The plaintiff in the above captioned case hereby submits this amended[1] complaint against the Defendants for invasion of privacy, breach of contract, breach of implied contract, breach of the covenant of good faith & fair dealing, unjust enrichment, retaliation/discrimination for opposing discrimination (in violation of state and federal anti-discrimination laws in public accommodations), unfair and deceptive practices and acts, negligence, among other claims as outlined below. Plaintiff demands a jury trial.

## I. INTRODUCTION

2. The plaintiff brings a claim of invasion of privacy, breach of contract, breach of the covenant of good faith and fair dealing, interference with contract and business advantage, unfair treatment based on having made complaints about discrimination based on race (including violations of Title II, and Section 1981, and other state regulations, etc.), unfair and deceptive practices, infliction of emotional distress, consumer protection violations, negligence, and other wrongs, on the part of the defendants. All of which have caused the plaintiff injury and substantial damages as outlined in this complaint.

## II. PARTIES

3. Plaintiff Natalie Anderson is an individual who resides in Massachusetts. She, an African American female, is a natural person and citizen of the Commonwealth of Massachusetts.

4. Defendant Marriott International, Inc. (hereinafter "Marriott") is a Delaware corporation with its headquarters located at 10400 Fernwood Road, Bethesda, Maryland 20817. Marriott is a multinational hospitality company[2] that owns, manages, and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad. Marriott conducts business throughout the State of Massachusetts, and the United States. Marriott owns, operates, manages, or franchises multiple hotels in the New England area, including Massachusetts and New Hampshire. Marriott engages in the operation,

---

[1] According to the Massachusetts Rules of Procedure 15 (a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading.

[2] NB: Starwood Hotels & Resorts Worldwide, LLC is a wholly owned subsidiary of Marriott International, Inc.

management, and franchising of hotels, including the Residence Inn by Marriott line of franchises. Marriott operates, manages, or franchises the Residence Inn by Marriott Nashua hotel property. Marriott has, at all relevant times, engaged in trade or commerce in Massachusetts by advertising and offering hotel lodging to Massachusetts consumers.

5. Defendant Residence Inn by Marriott of Nashua ("Residence Inn Nashua") is a franchise of Marriott and is managed by an operations management company, named True North Hotel Group, that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire. Residence Inn by Marriott of Nashua or Residence Inn Nashua is owned and/or managed by True North Hotel Group. The True North Hotel Group has apparently setup a limited liability company named Nashua TS Lodging LLC, for the purpose of doing business (DBA) as Residence Inn by Marriott of Nashua or simply Residence Inn Nashua as a sort of tradename. The real purpose of this elaborate structure or setup is unclear. However, Marriott provides general oversight, brand management and operations management, and revenue management oversight over Residence Inn by Marriott of Nashua. Defendant Residence Inn by Marriott of Nashua also goes by the name of "Residence Inn Nashua."

6. Defendant True North Hotel Group is an operations management company that manages Residence Inn by Marriott of Nashua and that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire. Defendant True North Hotel Group does business in and owns or operates multiple hotel properties in Massachusetts and New Hampshire. The True North Hotel Group provides management services for the Residence Inn by Marriott of Nashua hotel property.

7. Defendant Jennifer Brooks is the general manager of Residence Inn Nashua. She was the general manager of the Residence Inn Nashua at all times relevant to this case.

8. NB: These defendants have setup an elaborate scheme in terms of the various entities that they have setup. However, it should be noted that each of the defendants share equally in the decisions and acts described herein. To the extent that any act or acts may have been done or implemented by any one defendant, then all defendants also share in that responsibility under the principal-agent theory and/or the vicarious liability doctrine.

### III. JURISDICTION AND VENUE

9. The Massachusetts Superior Court has jurisdiction over this action pursuant to its laws and the amount in controversy exceeds $50,000, exclusive of interest and costs, in an amount to be determined at trial.

10. This court has both general and specific personal jurisdiction over the Defendants because the Defendants have conducted and continues to conduct substantial business in the State of Massachusetts.

11. Marriott International, Inc and/or Residence Inn By Marriott are registered with the Massachusetts Secretary of State.

12. This court has specific personal jurisdiction arising from Defendants' decision to conduct business in Massachusetts. The Defendants have sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State to render the exercise of jurisdiction by this court reasonable. NB: It should also be noted that the plaintiff has been the target and recipient of Marriot's numerous direct mail campaigns and email/internet marketing campaigns while she was a citizen of Massachusetts.

13. Venue is proper in this court because Defendants conduct business within this state as outlined above.

## IV. FACTUAL ALLEGATIONS

### A. An Overview of Marriott

14. Marriott is a leading hotel and hospitality company with more than 6,700 properties across 130 countries and territories, reporting revenues of more than $22 billion in fiscal year 2017.[3]

15. Marriott owns about 30 hotel brands including Marriott Vacation Club, Renaissance Hotels, The Ritz-Carlton, Moxy Hotels, and AC Hotels, among others. Marriott has grown exponentially over the last few years by acquiring other hotel chains. Most notably, Marriott acquired Starwood Hotels and Resorts in 2016 for $13.6 billion, bringing Starwood's Sheraton, Westin, W Hotels, and St. Regis properties under the Marriott umbrella. Since the Starwood acquisition, Marriott has become the world's largest hotel chain and now accounts for 1 out of every 15 hotel rooms around the globe.[4]

16. Marriott is a hotel and lodging corporation with its headquarters in Bethesda, Maryland.

17. Marriott owns, franchises, and manages hotels throughout the United States, including numerous hotel properties located in Massachusetts.

18. Marriott conducts its hotel business through various corporate entities operating under numerous trade names. Marriott hotels operate under at least the following trade names" Starwood, St. Regis, The Luxury Collection, W, Westin, Le Méridien, Sheraton, Tribute Portfolio, Four Points by Sheraton, Aloft, Element, The Ritz-Carlton, Design Hotels, Bvlgari Hotels & Resorts, Edition, JW Marriott, Autograph Collection Hotels, Renaissance Hotels, Marriott Hotels, Delta Hotels and Resorts, Gaylord Hotels, AC Hotels by Marriott, Courtyard by Marriott, Residence Inn by Marriott, Springhill Suites by Marriott, Fairfield Inn & Suites, TownePlace Suites by Marriott, and Moxy Hotels.

19. It offers lodging at its hotels to Massachusetts residents, including through its online reservation website and through the websites hosted by third party entities, such as Priceline and Expedia. These websites allow consumers to obtain information about Marriott's hotel rooms and allow consumers to compare Marriott's hotel room prices to that of other hotels as well as make hotel reservations. It also engages in

---

[3] About Marriott Hotels | Marriott Corporate Business Information, Marriott, https://www.marriott.com/marriott/aboutmarriott.mi (as of December 2018).

[4] Marriott Closes $13-Billion Purchase of Starwood to Become World's Largest Hotel Chain, Los Angeles Times, https://www.latimes.com/business/la-fi-marriott-starwood20160923-snap-story.html (last visited Dec. 6, 2018).

direct marketing campaigns to current or potential customers using both direct mail as well as email, social media, and other internet marketing methods.

**B. Marriott Collects Highly Sensitive Information From its Customers.**

20. In order to stay at a Marriott property, guests must first make a reservation and provide Marriott their full names, mailing addresses, email addresses, telephone numbers, credit or debit card numbers, travel itinerary, and often times other sensitive information.

21. According to the Privacy Statement posted on its website, Marriott also collects other "Personal Data" (which it defines as "data that identif[ies] you as an individual or relate to an identifiable individual") about its guests during the course of their visits, including their:

- Name
- Gender
- Postal address
- Telephone number
- Email Address
- Credit and debit card number or other payment data
- Financial information in limited circumstances
- Language preference
- Data and place of birth
- Nationality, passport, visa, or other government-issued identification data
- Important dates, such as birthdays, anniversaries, and special occasions
- Membership or loyalty program data (including co-branded payment cards, travel partner program affiliations)
- Employer details
- Travel itinerary, tour group or activity data
- Prior guest stays or interactions, goods and services purchased, special service and amenity requests
- Geolocation information
- Social media account ID, profile photo and other data publicly available, or data made available by linking your social media and loyalty accounts

In more limited circumstances, Marriott also collects:
- Data about family members and companions, such as names and ages of children
- Biometric data, such as digital images
- Images and video and audio data via: (a) security cameras located in public areas, such as hallways and lobbies, in our properties; and (b) body-worn cameras carried by our loss prevention officers and other security personnel
- Guest preferences and personalized data ("Personal Preferences"), such as your interests, activities, hobbies, food and beverage choices, services, and amenities of which you advise us or which we learn about during your visit Marriott stores this incredibly sensitive trove of data and uses this information for its own commercial purposes.

22. In fact, Marriott collects and uses such detailed and sensitive consumer data that it enlisted a leading data analytics company to use that wealth of data to identify, attract, and retain the most profitable customers. In other words, Marriott uses all of the data it collects to help predict and influence its customers' future behaviors (i.e., convincing them to stay at their properties).

4

23. According to the analytics company, that's because there's no lack of available data here. Together, they have access to household profiles, including number of kids, type of jobs held by family members, their salaries, where and how they spend their money, and even the type of jeans they buy. The level and granularity of data Marriott and this analytics company collects is frightening. They can even identify when a guest leaves a hotel, where they go, and when they're at home and in bed for the night (by tracking their cell phone's location and activity).

24. Consumers place value in data privacy and security, and they consider it when making decisions on hotel room purchases. Marriott recognizes this and also the sensitivity of the information it collects and, in light of that, promises to use reasonable measures protect and keep it secure.

25. In fact, it is widely accepted that consumers are willing to pay higher prices to do business with merchants that better protect their privacy and information. A number of studies have found that U.S. consider security when purchasing goods and services, and that over 50% of consumers would consider paying more to work with a company with better security.

26. Likewise, studies have shown that over 70% of U.S. consumers will provide less personally identifiable information to organizations that suffer a data breach.

27. Consumer technology markets have likewise demonstrated that consumers value their privacy and security and incorporate data security practices into their purchases. Because of the value consumers place on data privacy and security, services with better security practices command higher prices than those without. Indeed, if consumers did not value their data security and privacy, profit-seeking corporations (like Marriott) would have no reason to tout their privacy and security credentials to current and prospective customers.

28. These value propositions reflect the fact that consumers view companies that promise to adequately secure customer data as being far more useful—and valuable—than those with substandard protections.

29. As a result, a hotel service with substandard data security and privacy protections is less useful and valuable than a product or service using adequate security protocols, and is, in reality, a different service entirely.

30. Had Plaintiff knew Marriott would not adequately protect her private sensitive information, she would not have stayed there.

### C. Plaintiffs' Privacy and Contractual Rights

31. Plaintiffs is a Marriott customer who has stayed at and purchased hotel rooms at a variety of Marriott properties over many years.

32. Plaintiff is a "Titanium" member of Marriott's rewards programs which is the highest level of loyalty-rewards elite membership attainable for Marriott customers.

33. Each time Plaintiff reserved and purchased a room at a Marriott hotel, she was required to provide her personal information, including her name, home address, email address, telephone number, travel information, and payment information, among other things.

34. Because she purchased her rooms from a well-known, supposedly reputable hotel chain, Plaintiff believed that Marriott would use reasonable and accepted security methods to secure her personal and sensitive information, and Marriott confirmed that belief in its Privacy Statements.

35. Accordingly, when Plaintiff stayed at Marriott properties and paid for her rooms, she paid for a service and also data privacy and security measures, whereby Marriott promised to take reasonable measures to protect her sensitive and private information.

36. Such data security was a material part of her purchases. Thus, without adequate and reasonable privacy and security protections that Marriott promised, and that Plaintiff justifiably believed she would receive as part of her purchase, the purchased services as a whole were substantially less useful and valuable to her.

37. Had Marriott adequately disclosed that it would not actually implement adequate privacy and security protocols, Plaintiff would—through reading Marriott's privacy statements or learning through the media—know to be wary of Marriott's privacy and data security practices.

38. Accordingly, had Marriott adequately disclosed its lax privacy and security practices prior to her purchases, plaintiff would not have stayed at Marriott properties in the first place including the Residence Inn Nashua.

### D. Defendants Breached Plaintiffs' Privacy and Contractual Rights

39. The defendants violated the plaintiff's privacy by divulging to hostile third party strangers certain sensitive private and personal information about the plaintiff and about its agreement with plaintiff and about plaintiff's stay at Defendants' hotel. This invasion of privacy was wanton and reckless and without regard to the plaintiff's rights and resulted in damages.

40. In or around December 2018, the defendants knowingly and intentionally divulged and disclosed to outside third parties/outsiders/unauthorized persons, private customer information/data about the plaintiffs including the personal and hotel occupancy records and details of the plaintiff's stay at the Residence Inn Nashua.

41. In particular, Defendant Jennifer Brooks, general manager of Residence Inn Nashua, specifically gave the plaintiff's private customer information to at least two strangers/outsiders (who did not work for Marriott or who did not work for any of the defendants nor were employees, contractors, or agents of any of the defendants). These two strangers posed as "private investigators", and solicited from Ms. Brooks, information about the plaintiff, by simply walking into the Defendants' hotel and asking to speak with the general manager.

42. Without seeking the consent of the plaintiff, Defendant Brooks recklessly and carelessly, without hesitation or caution or due diligence, vomited out wholesale private customer information about the plaintiff to these third party outsiders/strangers who walked-in from the street, by looking up plaintiff's information in Defendant hotel's computer system and directly divulging plaintiff's private customer information to these two strangers who simply walked off the street into hotel and began asking questions about the plaintiff. There was no subpoena presented to Ms. Brooks nor was there any basis in law or company policy to breach the data privacy of the plaintiff.

43. This was a gross direction of duty by Ms. Brooks to protect and safeguard the privacy and security of the plaintiff's customer information contained within Marriott's computer system.

44. The defendants' conduct impermissibly invaded and intruded upon the plaintiff's privacy and contract rights.

45. Marriott hotels, including Residence Inn Nashua, generally have a privacy and confidentiality agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at a Marriott hotel and, in this case, when the plaintiff stayed at defendants' hotel in 2017.

46. In addition, the defendants in this case (above and beyond Marriott's privacy policies) had or entered into a specific agreement with the plaintiff, that was entered into between the plaintiff and the Residence Inn Nashua, to keep information about her stay private and confidential and to not release any information to anyone without her consent. This agreement was, in part, triggered specifically because of certain harassing anonymous phone-calls that were made/directed to plaintiff's room, which the defendants wrongly allowed to be transferred to her unit more than once, causing her emotional distress and terror.

47. Hence, in addition to the expectation of privacy that attaches generally to any hotel guest when they stay at hotel, as a matter of privacy law and constitutional law (an expectation of privacy, or rights thereof, that have been recognized by the US supreme court and the Massachusetts supreme court), there is an additional expectation of privacy that attaches to a guest that stays at a Marriott hotel given that Marriott publicly announced policies and promises, upon which customers rely on to their detriment. And beyond even that, the plaintiff had an even greater or additional expectation of privacy based on the specific agreement that was entered into by the defendants to protect and safeguard the information of the plaintiff for safety, security, and privacy reasons.

48. The plaintiff therefore had a strong privacy interest and a contractual interest in keeping her information private and confidential. Such information also contains credit card information used, and other personal and private information including but not limited to rewards card information, rewards and loyalty patterns, purchase habits, other private financial data, data regarding personal preferences and requests.

49. Also, the plaintiff had a right to privacy regarding any future reservations that they make with Marriott hotels.

50. But the defendants ignored these obligations, promises and contractual duty in order to wantonly divulge information about the plaintiff's information including but not limited to details about certain of plaintiff's lodging arrangements in the past and for the future as well as private hotel records pertaining to the plaintiff. This was a complete breach of privacy.

51. Moreover, courts have recognized a hotel guest's right to privacy as it relates to their occupancy at a hotel ("we have stated that the privacy interest in a hotel room is comparable to that of the home." See State v. Tarasuik, 160 N.H. 323, 328 (2010) at 328.).

52. Similarly, courts across the nation have enforced the privacy rights of hotel guests. See also Erin Andrews v. Marriott International, Inc., 2016 IL App (1st) 122731, where the plaintiff was awarded approximately $55 million for the violations of the privacy rights of a hotel guest.

53. Moreover, all hotels also have an interest in protecting the privacy of their hotel guests. See City of Los Angeles v. Patel (US Supreme Court 2015).

54. If hotel guests are made to believe that their information will not be protected, hotels will lose customers and market share. This is especially true for larger global brands, like Marriott, who rely heavily on their reputational assets for global market share.

55. Because Marriott had a specific agreement with the plaintiff to keep information about their stay private and confidential and to not release any information to anyone without their consent, then Marriott also had a further specific contractual obligation towards the plaintiff.

56. This obligation should not have been interrupted and plaintiff's private information should not have been disclosed to third parties/outsiders/unauthorized persons, simply because a third party wanted to intrude to obtain private information about the plaintiff.

57. Additionally, Plaintiff took (and continues to take) considerable precautions to protect the unauthorized dissemination of her personal and sensitive information to unauthorized persons or third parties that she has not consented to. Unfortunately, as a result of Marriott's failure to implement its promised and paid-for security practices, Plaintiff's personal and sensitive information was disseminated without her consent.

58. As a result, Plaintiff has suffered damages.

59. Additionally, as a result of Marriott's breach and failure to adequately protect plaintiff's information, Plaintiff is at risk that unauthorized third parties will or could further misuse her sensitive and personal information[5].

---

[5] NB: In fact, Plaintiff has suffered the fraudulent use of her personal and financial data by unknown parties, resulting in her having to close her credit card that was on file with Residence Inn Nashua and issue a fraud alert on her card account. Plaintiff does not

60. The defendants, as a Marriot hotel, know better (or should have known better) than to disclose such private customer information to outsiders/strangers/unauthorized persons. The defendants know that Marriott hotels have privacy agreements concerning their guest information. The fact that the defendants were so cavalier with divulging plaintiff's private information to third parties shows a wanton disregard for plaintiff's privacy rights.

61. Defendants must have known that disclosing private customer information to third parties would lead to harm and damage.

62. The defendants' conduct was foreseeable to create or cause havoc to the plaintiff and thus was done intentionally without regard for the plaintiff's rights.

63. NB: The defendants willfully divulged plaintiff's information to strangers/outsiders/unauthorized persons, even after there was an incident of multiple harassing anonymous calls transferred[6] by the hotel front desk to the plaintiff's room (which involved silent heavy breathing and then hanging up more than once) for which the plaintiff felt threatened, harassed and stalked and for which the plaintiff complained to the hotel/the defendants, and requested that the hotel not transfer anyone to her room or divulge any information to anyone whatsoever based on safety concerns (to which the defendants agreed).

64. The defendants committed a serious and significant violation of the plaintiff's right to privacy in subsequently divulging her private customer information to strangers/outsiders/unauthorized persons. And this was no low-level error of a low-level employee. This was done by the general manager who definitely should have known better. To this day, it is unclear what motivated the general manager to commit such an egregious violative act.

65. Yet, to add insult to injury, even after the defendants breached plaintiff's privacy, they still did not inform the plaintiff that there was a breach. The defendants had a duty to inform the plaintiff that the defendants had disclosed her information to a third party. The plaintiff only discovered the breach from another

---

know for certain if the defendants' unauthorized breach of plaintiff's privacy may have led to any fraud or breach of her credit cards. Discovery, however, will tell or confirm this information in terms of the full extent of the breach of privacy that occurred.

[6] This itself is another example of a breach of privacy and security as well, by defendants' hotel. The anonymous person who called, who the front desk later stated was a male, asked if there was a Natalie Anderson staying there and the hotel front desk staff immediately confirmed this and then transferred the person to her room without first checking with the plaintiff. The anonymous person did not know the room number of the plaintiff or the extension to her room, nor did the person know if the plaintiff was a resident/occupant of the hotel. This exemplifies the lax privacy and security of Defendants' hotel. Moreover, when the person called a second time, the front desk person recognized the voice and for the first time asked who it is, and the person stated he was a "business associate" and refused to give his name, but still the hotel desk staff transferred his call again to plaintiff's room where he again breathed into phone saying nothing while the plaintiff answered the phone and kept saying "hello", but to no avail until the anonymous caller hung up without saying anything. This occurred more than once. Yet, it did not occur to the hotel front desk staff that if the anonymous male caller (who refused to give his name) was a business associate, why did he not know her room number in the first place or her extension or have her cellphone or know for certain if she was an occupant. The bottom line is that the hotel front desk should not have disclosed to the anonymous caller any information about the plaintiff, nor should he have transferred him to her room more than once without getting this basic information from him or without first checking with the plaintiff, which on information and belief accords with Marriott policies and best practices.

source not related to the defendants. The defendants never informed the plaintiff that two strangers had been asking questions about the plaintiff and were seeking to obtain information about plaintiff's stay and related private and sensitive information. The defendants also never informed the plaintiff that Ms. Brooks divulged private information about the plaintiff to these two strangers/outsiders/unauthorized persons. Instead, the defendants covered it up and hid this from the plaintiff. The defendants left the plaintiff there as a "sitting duck" while she was a resident at Defendants' hotel. These strangers could have been stalkers or worked on behalf of a stalker or someone capable of violence against women. It is totally outrageous for the defendants to have engaged in such blatant flagrant violative conduct.

## V. COUNTS

66. The plaintiff alleges the following violations of law by the defendants: breach of privacy; breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, interference with business or contractual relations; retaliation/discrimination based on race (associational retaliation/discrimination); unfair and deceptive practices/acts (93A violations); negligence; intentional infliction of emotional distress, unfair and deceptive practices.

## COUNT I: BREACH OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)
## (All Defendants)

67. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

68. The plaintiff alleges invasion of her right of privacy under G.L. c. 214, § 1B, which states: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."" See also Nelson v. Salem State College, 446 Mass. 525, 536 (2006) ("To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious."). See also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-518 (1991) (Schlesinger).

69. The statute allows recovery for the public disclosure of private facts. See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 382 n. 16 (2005); Schlesinger, supra at 517 & n. 4, 519-521; Amato v. District Attorney for the Cape & Islands Dist., 80 Mass.App.Ct. 230, 240 (2011).

70. "The right which the plaintiffs claim was infringed upon is their right to be left alone." Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 637 (1996) (Ellis). See Schlesinger, supra at 517.

71. "Nowhere are expectations of privacy greater than in the home, and '[i]n the home ... all details are intimate details....' " Commonwealth v. Balicki, 436 Mass. 1, 12 n. 14 (2002), quoting Kyllo v. United States, 533 U.S. 27, 37 (2001).

72. Massachusetts recognizes a legal claim for publication of private facts based on Mass. Gen. Laws ch. 214, § 1B, which proscribes "unreasonable, substantial or serious interference" with one's privacy.

73. The Massachusetts privacy statute allows remedies for "breaches" of private information or "invasions" of information privacy.

74. Under Massachusetts law, a publication of private facts claim involves publication of facts of a "highly personal or intimate nature" which are "of no business of the public."

75. The disclosure need not be made to the public at large and a disclosure to two people has been found sufficient to warrant relief under § 1B.

76. Offensiveness to a reasonable person is not one of the statutory criteria under § 1B but Massachusetts courts consider publication of private information "of no business to the public" to be "offensive." See Cefalu v. Globe Newspaper Co., 391 N.E.2d 935, 939 (Mass. App. Ct. 1979).

77. The plaintiff has been aggrieved by an unauthorized disclosure of confidential information, which is a breach of privacy under the state right of privacy statute:  Massachusetts General Laws, chapter 214, section 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy.").

78. The acquisition, access, use or disclosure of protected private information concerning the plaintiff to unauthorized persons is a "breach" giving rise to significant financial, reputational or other harm to the plaintiff, especially when intentionally done by a hotel.

79. The plaintiff thus alleges harm from the privacy breach and the plaintiff has suffered damages including mental distress and harm to her interest in privacy arising from the information being made accessible to third parties.

## COUNT II: BREACH OF CONTRACT

### (All Defendants)

80. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

81. The defendants violated their contract by impermissibly disclosing the plaintiff's private information to third party strangers/ outsiders/ unauthorized persons, posing as private investigators, and, as a result of that disclosure, plaintiff was harmed.

82. The defendants have engaged in a breach of contract resulting in a violation of plaintiff's right to privacy, Mass. Gen. Laws ch. 214, §1B.

83. There existed a contract with defendant and plaintiff. The defendants breached the contract it had with the plaintiff and her spouse. The defendants breached their obligation not to disclose his information or data without proper cause or legal compulsion.

84. The defendants breached the contract with plaintiff by providing private third parties with her private information, and as a result of that contract breach the plaintiff suffered harm.

11

85. Where there is an agreement between a hotel and a customer to rent a unit for a specified time, the hotel has a duty to the customer, who has confirmed this arrangement, to honor its end of the bargain by providing the customer with the service which they both agreed upon. By entering this agreement, the hotel's promises including those concerning privacy are further ratified.

86. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiffs.

87. Marriott, including Residence Inn line of business, have a contractual agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at their hotels and, in this case, when the plaintiffs stayed at Residence Inn Nashua.

88. Plaintiffs relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail themselves of all of the benefits, access, resources, and protections available to them as promised by Defendants.

89. Defendants breached this contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive, and disparate manner and by retaliating against plaintiff when defendants learned she had raised concerns in a court complaint about how she was treated by a neighboring hotel.

90. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

91. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

92. Plaintiff had a reasonable expectation that the defendants would adhere to the terms of such contract.

93. Plaintiff further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and federal regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation. If plaintiff had known upfront that the defendants would have engaged in such discriminatory and retaliatory practices, plaintiff would likely have elected to stay elsewhere, investing their resources, equity, and time other than at Residence Inn Nashua.

94. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

95. Moreover, the defendants allowed itself to be influenced by the third-party interference.

96. Similarly, upon learning of a complaint of race discrimination against a neighboring hotel, the defendants allowed that complaint against a neighboring hotel to influence how it treated the plaintiff, which is a form of associational discrimination. It was only after the defendants became aware that

plaintiff had previously made a discrimination claim against a neighboring hotel, did the defendants then suddenly began to shift its dealing and treatment of the plaintiff, resulting subtle and constructive attempts at breaching the agreement with plaintiff.

97. Plaintiff thus further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and other federal and state regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation.

98. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

99. As a result of those actions, plaintiff has suffered and will continue to suffer damages.

## COUNT III: BREACH OF IMPLIED CONTRACT
### (All Defendants)

100. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

101. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

102. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

103. Plaintiff had a reasonable expectation that defendants would adhere to the terms of such contract.

104. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiff.

105. Plaintiff relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail himself of all of the benefits, access, resources, and protections available to his as promised by Defendants.

106. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive, and disparate manner and by retaliating against plaintiffs when they raised concerns about how they were being treated or about their adherence to their own policies.

107. As a result of those actions, plaintiff have suffered and will continue to suffer damages.

108. Defendants solicited and invited Plaintiff to share personal information such as dates of birth, passport numbers, credit and debit card numbers and other payment data, employer details, geolocation information, and other personal and confidential information as described herein, when they booked a room.

109. When Plaintiff provided their personal and confidential information to Defendants when they booked a room, they entered into implied contracts with the Defendants, pursuant to which Defendants agreed to

safeguard to protect their information, and to timely and accurately notify Plaintiff if their data had been breached or compromised.

110. Plaintiff would not have provided and entrusted their personal and confidential information to Defendants in connection with booking a room in the absence of the implied contract between them.

111. Defendants breached the implied contracts it made with Plaintiff by failing to safeguard and protect the personal and confidential information of Plaintiff and by failing to provide timely and accurate notice to them that their information was compromised or disclosed to unauthorized persons.

112. As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff has suffered damages.

## COUNT IV: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (All Defendants)

113. Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

114. Defendants owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiff to receive the fruits of the contract.

115. Through its actions and inactions, Defendants breached its duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests.

116. By the conduct alleged herein, the defendants have breached the implied covenant of good faith and fair dealing and caused harm to plaintiff.

117. As a result, Plaintiff has suffered damages.

118. The defendants violated the implied covenant of good faith and fair dealing when the defendants breached the terms of the contract by impermissibly disclosing the plaintiff's information to third party outsiders.

119. In Massachusetts, every contract "imposes an obligation of good faith and fair dealing in its performance and enforcement," and this covenant is that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other to receive the fruits of the contract." Lechoslaw v. Bank of v. N.A., 575 F. Supp. 2d 286, 296–97 (D. Mass. 2008).

120. This covenant is intended to ensure "that the parties remain faithful to the intended and agreed expectations of the contract" and that neither party will do anything that will prevent the other party from receiving the benefits of the contract. See Liss v. Studeny, 879 N.E.2d 676, 680 (Mass. 2008).

121. There is a contract between the plaintiff and defendants that requires the defendants to protect the plaintiff's personal information by not disclosing it to third parties including private investigators without being compelled to do so.

14

122.   The plaintiff clearly has an expectation that her data would be kept confidential, and that expectation was violated when the defendants provided the records to third party outsiders claiming to be private investigators.

## COUNT V: UNJUST ENRICHMENT

### (All Defendants)

123.   Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

124.   In the alternative, plaintiffs also allege Unjust Enrichment.

125.   The defendants have received a substantial monetary benefit, in the form of several months of rent payment by Plaintiff.

126.   As set forth above, due to gross and numerous violations of its own procedures and its policies, plaintiffs have suffered prejudice and was subjected to mistreatment, disparate treatment, discrimination, retaliation, and unfair practices.

127.   Defendants have therefore been unjustly enriched by monies paid for services to the Defendants that have been inferior, sub-par, poor and markedly hostile.

128.   Plaintiffs are entitled to credits for room nights based on the Defendants' customer satisfaction guarantee.

129.   By its wrongful acts and omissions, Defendants have been unjustly enriched at Plaintiff's expense, and conversely Plaintiff has been unjustly deprived.

130.   As a result, plaintiff has been caused significant harm.

131.   For the reasons set forth herein, under the circumstances it would be inequitable for the defendants to retain all of the monies that they have received from plaintiff.

## COUNT VI: INTERFERENCE WITH ADVANTAGEOUS BUSINESS OR CONTRACTUAL RELATIONSHIPS
### (Defendant Jennifer Brooks)

132.   Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

133.   Plaintiff possessed an advantageous relation with Marriott and thereby all Marriott franchises.

134.   The plaintiff had a contractual or business relationship with Residence Inn Nashua, and the acts of Jennifer Brooks interfered with that contract or business relationship.

135.   Plaintiff anticipated further advantageous relations with Marriott and Residence Inn Nashua in the future.

136.   Defendant Brooks intentionally interfered with the plaintiff's advantageous or contractual relationship with Residence Inn Nashua when she disclosed plaintiff's information to private investigators and when, upon learning of plaintiff's discrimination lawsuit against another hotel, she sought to drive the plaintiff out of Defendants' hotel by various acts, including subtle and covert ones, intended to deprive

plaintiff of her contractual rights including unreasonably raising her rents to unaffordable amounts or by attempting to cancel or block her return reservations with Residence Inn Nashua. Similarly, the defendants unwound or sought to unwind promises and agreements that had been made with plaintiff regarding favorable rates for long-term stays. They effectively tried to do things to not welcome back the plaintiff at the hotel (after discovering the plaintiff's protected activity while the plaintiff went away for a Christmas trip and was scheduled to return thereafter to defendants' hotel).

137.  As a result of Defendant Brooks' misconduct, Plaintiff's advantageous relations/contractual relations may be irretrievably damaged. Plaintiff has suffered and will continue to suffer substantial and irreparable harm.

138.  By the above-described conduct, *inter alia,* Ms. Brooks knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with Plaintiff's actual and potential advantageous relations and contractual relations.

139.  As a result of this intentional interference, plaintiff has suffered and continue to suffer damages.

## COUNT VII: RETALIATION/DISCRIMINATION BASED ON RACE (ASSOSCIATIONAL RETALIATION/DISCRIMINATION BASED ON PROTECTED ACTIVITY)

### (All Defendants)

140.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

141.  The defendants sought to constructively break plaintiff's rental agreement for reasons related to plaintiff raising concerns that a neighboring hotel (not the defendants' hotel) had engaged in racial discrimination and retaliation for raising concerns about discrimination, against the plaintiff.

142.  Defendants then, suddenly and without explanation, began to treat the plaintiffs differently and less favorably, and thus engaged in intentional conduct in violation of laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiffs' protected rights.

143.  Hence, Defendants sought to breach the agreement with plaintiff in retaliation because she raised concerns about racial discrimination by another neighboring hotel.

144.  The defendants engaged in conduct adverse to the plaintiff within weeks of them finding out about the discrimination complaints against the neighboring hotel.

145.  There is a temporal proximity and a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e., defendants took adverse action because plaintiff engaged in protected activity.

146.    [NB: There is a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e., defendants took adverse action because plaintiff engaged in protected activity. It is very rare that there will be direct evidence of retaliatory motive. Instead, most retaliation cases are proven by circumstantial evidence of the retaliatory motive. However, in this case, there is both direct as well as circumstantial evidence of retaliation].

147.    Furthermore, the pattern of discrimination and retaliation also occurred relative to how plaintiff was treated in general as a guest, including having plaintiff's rent increased shortly after her protected activity was discovered.

148.    Defendants thus have also violated 42 U.S.C. § 1981. Section 1981 provides: *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to* **make and enforce contracts**, *to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).* The statute also states that *"[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."* 42 U.S.C. § 1981(b).

149.    The Defendants denied plaintiff the use and enjoyment of the benefits, privileges, terms, and conditions that they extend to all other similarly situated guests, residents, and invitees. The Defendants breached their contract with plaintiff and retaliated/discriminated against plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the state code.

150.    To state a *prima facie* case of discrimination, the plaintiff is to show that: (1) they belonged to a protected class; (2) they sought to make a contract for services ordinarily provided by the defendant; and (3) they were denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

151.    In this case, the plaintiff has clearly met this burden for a prima facie case of discrimination, as follows:

   a.  The plaintiff is African American and belong to a protected class. This is undisputable.

   b.  Plaintiff sought to make and enforce a contract for services ordinarily provided by the defendants. This is undisputable.

   c.  Plaintiff was denied the right to enter/enforce a contract for such services simply because she opposed discrimination at a neighboring hotel. Plaintiff was treated in a manner that was unfavorable compared to other guests outside the protected class, only because the defendants

discovered plaintiff's protected activity, and the plaintiff was treated in such a hostile manner that a reasonable person would find it objectively retaliatory/discriminatory.

152.    By seeking to unwind the contract it had with plaintiff, the Defendants interfered with the making and enforcement of a contract.

153.    Defendants' actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

154.    The plaintiff has suffered damages as a result of the foregoing.

### COUNT VII: VIOLATION OF FEDERAL CIVIL RIGHTS STATUTE 42 U.S.C. § 1981
### (All Defendants)

155.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

156.    By the above acts, Defendants violated 42 U.S.C § 1981 by discriminating against plaintiff because of her race as African American [black].

157.    Section 1981 guarantees freedom from racial discrimination in the making, enforcement performance, modification, and termination of contracts.

158.    Section 1981 also guarantees enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

159.    Plaintiff's use of the Defendant's hotel and services falls under section 1981 protection.

160.    Defendants have (1) intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, because of Plaintiff's race; and (2) limited and classified or stereotyped Plaintiff in ways that adversely affected her status as a customer, because of her race; all in violation of Title II of the Civil Rights Act of 1964. As a direct and proximate result of Defendant's intentional, deliberate, and willful discriminatory acts and omissions, Plaintiff has suffered damages.

161.    Discrimination in hotel accommodations include refusals to provide African Americans service, or the harassment of African American customers, or providing inferior service to African Americans. This country has had a dark history throughout the country, including throughout the south where the Civil Rights Movement of the 1960s was symbolized by challenges to segregation in places of public accommodations and gaining equal access to hotels, restaurants, lunch counters, and stores for African Americans.

162.    The right of African American customers to be free from discrimination in hotel accommodations have been upheld in landmark cases such as: Gilliam v. HBE Corp. (d/b/a Adam's

163.    Mark Hotel), a challenge to discriminatory treatment of African American guests at the Adam's Mark Hotel during the 1999 Black College Reunion in Daytona Beach that settled for $2.1 million; and the

18

series of cases challenging the pervasive discrimination against African Americans during the annual Black Bike Week in Myrtle Beach, South Carolina.

164.     Moreover, retaliation for opposing discrimination is against public policy because it creates a chilling effect on the society's goal of encouraging citizens to oppose, report and speak up about discriminatory practices wherever they occur.

165.     The above raises an important question of federal law as it implicates federal concerns pertaining to the eradication or prevention of race discrimination in public accommodations. It also implicates the issue of the right to make and enforce contracts as an equal protection/constitutional right (as well as certain rights under Title VIII and/or Title II of the Civil Rights Act).

166.     NB: Marriott needs to ensure that its franchisee hotels do not retaliate/discriminate against their black customers who have engaged in protected activity in opposing discrimination from other hotels and they cannot simply wash their hands of any responsibility to eradicate race discrimination from public accommodations simply because it entered into a franchising relationship with a franchisee of its Marriott brand.

## COUNT VIII: UNFAIR AND/OR DECEPTIVE PRACTICES AND/OR ACTS
## ("93A" VIOLATIONS)
### (All Defendants)

167.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

168.   The defendants' disclosure of plaintiffs' private information violated Massachusetts General Laws Chapter 93A, Section 9.

169.   Chapter 93A provides a cause of action to any person who has been harmed by another's use or employment of any unfair or deceptive method, act, or practice. Mass. Gen. Laws ch. 93A, § 9.

170.   [NB: Plaintiff has also sent a 93A demand letter sent to the defendants but has not received an answer as yet. The plaintiff intends seek leave to amend her complaint if and/or when she receives a response to her 93A demand letter].

171.   The defendants violated their contract by impermissibly disclosing the plaintiff's private information to private investigators, and, as a result of that disclosure, plaintiff was harmed.

172.   Massachusetts courts have consistently required unfair or deceptive practices to be more than a "mere breach of contract, but rather must show misconduct rising to the level of commercial extortion or a similar degree of culpable conduct." See Lam v. PNC Mortg., 130 F. Supp.3d 429, 435–36 (D. Mass. 2015) (quoting Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000).

19

173.   The defendants have engaged in a breach of contract resulting in a violation of plaintiff's right to privacy, Mass. Gen. Laws ch. 214, §1B.

174.   The Massachusetts 93A (consumer protection) statute protects both consumers by promoting fair competition in commercial markets for goods and services. It prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

175.   93A applies to Defendants' actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

176.   The Defendants are each a "person" as defined under the statute. Defendants' conduct as alleged herein relates to "sales." Plaintiff is a "consumer" as defined under the statute.

177.   Defendants advertise, offer, and sell "consumer goods" or "consumer services" as defined by the statute.

178.   Defendants advertise, offer, or sell or services in Massachusetts and engage in trade or commerce directly or indirectly affecting the people of Massachusetts.

179.   Defendants engaged in unfair and deceptive practices, in violation of 93A by

- Making false or misleading oral and written representations with the capacity or tendency, or effect of deceiving or misleading consumers.

- Failing to state a material fact where the failure deceives or intends to deceive.

- Advertising or offering consumer goods or services without intent to sell them as advertised or offered; and

- Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer relies on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement.

180.   Specifically, Defendants engaged in these unfair and deceptive trade practices in connection with the sale or selling of consumer goods or services, in violation of 93A, by:

- Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's personal information, which was a direct and proximate cause of the breach of plaintiff's privacy.

- Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous incidents.

- Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's' personal information, which was a direct and proximate cause of the breach of privacy.

- Misrepresenting it would protect Plaintiff's' personal information.

- Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's' personal information.

181.  Defendants were aware or should have been aware that they were not implementing proper or adequate privacy and security protections as outlined above.

182.  Defendants acted intentionally, knowingly, and maliciously to violate 93A as it was on notice of the possibility of an attempt by outsiders or unauthorized third parties to breach the plaintiff's private customer information.

183.  Defendants intended to mislead Plaintiff and induce her to rely on their misrepresentations and omissions.

184.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data privacy/security and ability to protect the confidentiality of consumers' personal and confidential information.

185.  Had Defendants not engaged in the deceptive omission of material facts described above, Plaintiff would have been presented with an informed choice as to whether or not to book a room at their hotel.

186.  Plaintiff was injured by Defendants' unfair and deceptive acts, and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

187.  Had Defendants disclosed their true privacy and security practices, Plaintiff either would not have booked at Defendants' hotels or would have paid substantially less to do so (i.e., the value of a hotel stay without adequate privacy and security protections is worth substantially less than the value of a hotel stay with adequate protection).

188.  As a direct and proximate result of Defendants' violation of chapter 93A, Plaintiff have suffered harm in the form of monies paid for Defendants' products and/or services.

189.  Plaintiff also seeks an order requiring Defendants to cease the unfair practices described herein.

## COUNT IX: NEGLIGENCE

### (All Defendants)

190.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

191.  Plaintiff pleads this negligence count as an additional or alternative count.

192.  As a custodian of important and sensitive personal information, Defendants owed a duty of reasonable care to Plaintiff in safeguarding those records from theft or unauthorized access.

193.  Defendants knew, acknowledged, and agreed the information was private and confidential and would be protected as private and confidential.

194.  Defendants breached that duty by employing substandard methods of data security, and failing to adequately protect and safeguard plaintiff's personal, confidential, and sensitive information by knowingly

disregarding standard privacy and security principles, despite obvious risks, and by allowing unauthorized access to Plaintiffs' personal information. Furthering its dilatory practices, Defendants failed to provide adequate oversight of the personal information to which it was entrusted, resulting in a serious breach of the personal and confidential information of the plaintiff.

195.    Moreover, the law imposes an affirmative duty on Defendants to timely disclose the unauthorized access of personal and confidential information to Plaintiff so Plaintiff could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their information.

196.    Defendants breached their duty to notify Plaintiff of the unauthorized access by failing to notify them of the breach of privacy. To date, the Defendants have not provided sufficient information to Plaintiff regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff.

197.    As a direct result of Defendants' negligent conduct, Plaintiff suffered harm.

198.    But for Defendants' failure to secure this data, Plaintiff would not have suffered this harm.

199.    It is reasonably foreseeable that Defendants' practices would harm the plaintiff.

200.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages.

## COUNT X: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (All Defendants)

201.  Plaintiff re-alleges and incorporates all paragraphs above as if fully set forth herein.

202.  Defendants have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

203.  Defendants caused or created emotional distress for Plaintiff.

204.  Defendants knew that their breach of privacy and their retaliation/discrimination against Plaintiff would cause emotional distress.

205.  The emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

206.    Defendant brooks undertook these actions against the plaintiffs in order to cause them distress and drive them out of the hotel; that her conduct did cause the plaintiffs "extreme discomfort and distress"; and that "the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it."

207.  Defendants intentionally inflicted emotional distress on Plaintiff when as a direct and proximate result of Defendants actions and inactions Plaintiff were caused to suffer severe emotional distress as the result of which a reasonable person in Plaintiff's position would have suffered similar emotional distress under like circumstances.

208. Plaintiff sustained damages as a result of Defendants intentional infliction of emotional distress on them.

209. Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

## VI. CONCLUSION

210. As a result of the above-described acts, the plaintiffs suffered, continue to suffer, and will in the future suffer emotional distress, embarrassment, frustration, anger, and feelings of racial stigmatization, all to her economic and noneconomic damages in an amount to be determined by a jury at trial.

211. Plaintiff is also entitled to reasonable attorney fees pursuant to statute.

WHEREFORE, I respectfully pray that the Court grant the following relief:

(1) Enter judgment in Plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief, and such other and further relief as Plaintiffs may be entitled to by bringing this action.

(2) Award damages within the jurisdictional limits of this court and enhanced damages as appropriate.

(3) Award reasonable attorneys' fees and costs including service and filing fees.

(4) Grant a pro se liberal construction to this pleading.

(5) Order such other relief as this Court deems just and equitable.

Respectfully submitted by,
Plaintiff Natalie Anderson

_Neblie A. L_

679 Washington Street, Suite # 8-206
Attleboro, MA 02703

Dated: November 12, 2021

MIDDLESEX, SS.   *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set by hand and affix the seal of said Superior Court this 22nd DAY OF OCTOBER, 2022

_Riches_

Deputy Assistant Clerk

C. A. No. 2081CV02957
Paper 12
Plaintiff's Motion to Vacate Dismissal

The Court held a hearing on Natalie Anderson's pending motions, including Paper 12. Ms. Anderson did not appear in person or by Zoom, but she did participate by telephone (audio only). This was my first opportunity to speak with Ms. Anderson. The clerk administered an oath to Ms. Anderson, and I was able to ask her several questions about this case and her other cases filed in Middlesex County and New Hampshire.

Ms. Anderson clarified the correct spelling of her surname. She described Andre Bissasor as "my spouse." When I told her that she and Mr. Bissasor did not need to file separate but nearly identical lawsuits, Ms. Anderson stated that they preferred to file separate lawsuits.

Ms. Anderson reported that her other case in Lowell is "settled." That case is 1981CV03514, and concerns events at Homewood Suites in Nashua. She said that the appeal in that case is no longer necessary because it "settled."

This case, Ms. Anderson explained, concerns events at a different hotel in Nashua – Residence Inn. When I pointed out that the named defendant Residence inn Nashua may not be a legal entity that can be served and sued, Ms. Anderson said she has learned the identity of the corporate owner and she is prepared to file an amended complaint naming the corporate owner. When I pointed out that the complaint does not specifically allege any conduct by the co-defendant Jennifer Brooks, Ms. Anderson said that it is "implied" in the complaint and suggested that Jennifer Brooks, although unnamed, is the person who committed some of the alleged acts.

In preparing for the hearing, I saw Paper 8 for the first time. Paper 8 does not describe valid service, but it does show that Ms. Anderson made an effort to serve on October 22, 2021. I explained to Ms. Anderson that Mass. R. Civ. P. 5 does not describe procedures for serving a summons and complaint and that Rule 4 sets forth the requirements. Rule 4 (d) concerns personal service within the Commonwealth and Rule 4 (e) concerns personal service outside the Commonwealth.

I told Ms. Anderson at the hearing that the court will give her another opportunity to serve the defendants. Service must comply with Rule 4 and return of service must comply with Rule 4 (f). As I explained at the hearing, the court is unlikely to extend the time for service. Settlement negotiations will not be grounds for an extension. If settlement negotiations are occurring, the amended complaint should still be served. As I also explained at the hearing, temporary illness is not a likely ground for an extension because Ms. Anderson is currently in good health and has been given ninety days.

Given that Ms. Anderson did provide relevant information in the hearing and that she did make an attempt to serve the complaint on October 22, 2021, the court vacates the dismissal and **ORDERS** that Ms. Anderson (a) may file an amended complaint and (b) she has ninety days to serve the defendants with the summons and amended complaint (on or before July 27, 2022).

April 29, 2022

Joshua Wall
Justice of the Superior Court



## C. Andrew Johnson

**From:** Mary G Stewart
**Sent:** Friday, April 22, 2022 4:15 PM
**To:** C. Andrew Johnson
**Subject:** FW: 2022-P-0087 - Notice of Order

-----Original Message-----
From: middlesex.clerksoffice@jud.state.ma.us <middlesex.clerksoffice@jud.state.ma.us> On Behalf Of Appeals Court Clerk's Office
Sent: Friday, April 22, 2022 4:00 PM
To: Middlesex.clerksoffice@jud.state.ma.us
Subject: 2022-P-0087 - Notice of Order

-COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE

Dated: April 22, 2022

RE:    No. 2022-P-0087
Lower Court No: 2081CV02957

NATALIE ANDERSON vs. RESIDENCE INN-NASHUA & another

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the Status Report filed by Natalie Anderson. (Paper #8), on April 22, 2022, the following order was entered on the docket:

RE#8: Appellate proceedings stayed to 5/16/22. Status report due then regarding the 4/28/22 hearing on any outstanding motions. Following the 4/28 hearing, to the extent necessary, appellant may prosecute any motions she asserts remain unresolved, but should anticipate that the stay of appellate proceedings will be vacated on the status date and no stay will be in place while she prosecutes any motions that may have preceded the filing of subsequent, related motions that the trial court has resolved. Notice

IMPORTANT INFORMATION ABOUT ELECTRONICALLY FILING IN THE APPEALS COURT

Every attorney with an appeal pending in the Appeals Court must have an account with eFileMA.com. Registration with eFileMA.com constitutes consent to receive electronic notification from the Appeals Court and e-service of documents. Self-represented litigants are encouraged, but not required, to register for electronic filing.

All documents may, and some must, be electronically filed with the Appeals Court using eFileMA.com. No paper original or copy of any e-filed document is required.

E-filing impounded documents or e-filing by self-represented litigants is voluntary.

Additional information is located on our Electronic Filing web page: http://www.mass.gov/courts/court-info/appealscourt/efiling-appeals-faq-gen.html

Very truly yours,
Joseph F. Stanton, Clerk

To: Natalie Anderson, Residence Inn-Nashua, Middlesex Superior Court Dept.

----------------------------------------------------------------

If you have any questions, or wish to communicate with the Clerk's Office about this case, please contact the Clerk's Office at 617-725-8106. Thank you.

----------------------------------------------------------------

Middlesex.Clerksoffice mailing list
Middlesex.Clerksoffice@jud.state.ma.us
http://mailman01.jud.state.ma.us/mailman/listinfo/middlesex.clerksoffice



## C. Andrew Johnson

| | |
|---|---|
| **From:** | Mary G Stewart |
| **Sent:** | Tuesday, March 29, 2022 9:00 AM |
| **To:** | C. Andrew Johnson |
| **Subject:** | FW: 2022-P-0087 - Notice of Docket Entry |

-----Original Message-----
From: middlesex.clerksoffice@jud.state.ma.us <middlesex.clerksoffice@jud.state.ma.us> On Behalf Of Appeals Court Clerk's Office
Sent: Monday, March 28, 2022 6:00 PM
To: Middlesex.clerksoffice@jud.state.ma.us
Subject: 2022-P-0087 - Notice of Docket Entry

-COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE

Dated: March 28, 2022

RE:      No. 2022-P-0087
Lower Court No.: 2081CV02957

NATALIE ANDERSON vs. RESIDENCE INN-NASHUA & another

NOTICE OF DOCKET ENTRY

Please take note that on March 28, 2022, the following entry was made on the docket of the above-referenced case:

ORDER: This appeal will be paired with the appeals in 22-P-11 and 22-P-235 for consideration by a panel. *Notice

IMPORTANT INFORMATION ABOUT ELECTRONICALLY FILING IN THE APPEALS COURT

Every attorney with an appeal pending in the Appeals Court must have an account with eFileMA.com. Registration with eFileMA.com constitutes consent to receive electronic notification from the Appeals Court and e-service of documents. Self-represented litigants are encouraged, but not required, to register for electronic filing.

All documents may, and some must, be electronically filed with the Appeals Court using eFileMA.com. No paper original or copy of any e-filed document is required.

E-filing impounded documents or e-filing by self-represented litigants is voluntary.

Additional information is located on our Electronic Filing webpage: http://www.mass.gov/courts/court-info/appealscourt/efiling-appeals-faq-gen.html

Very truly yours,
Joseph F. Stanton, Clerk

To: Natalie Anderson, Residence Inn-Nashua, Middlesex Superior Court Dept.

--------------------------------------------------------------------

If you have any questions, or wish to communicate with the Clerk's Office about this case, please contact the Clerk's Office at 617-725-8106. Thank you.

--------------------------------------------------

Middlesex.Clerksoffice mailing list
Middlesex.Clerksoffice@jud.state.ma.us
http://mailman01.jud.state.ma.us/mailman/listinfo/middlesex.clerksoffice



# C. Andrew Johnson

| | |
|---|---|
| **From:** | Mary G Stewart |
| **Sent:** | Tuesday, March 29, 2022 9:00 AM |
| **To:** | C. Andrew Johnson |
| **Subject:** | FW: 2022-P-0087 - Notice of Order |

-----Original Message-----
From: middlesex.clerksoffice@jud.state.ma.us <middlesex.clerksoffice@jud.state.ma.us> On Behalf Of Appeals Court Clerk's Office
Sent: Monday, March 28, 2022 6:00 PM
To: Middlesex.clerksoffice@jud.state.ma.us
Subject: 2022-P-0087 - Notice of Order

-COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE

Dated: March 28, 2022

RE:      No. 2022-P-0087
Lower Court No: 2081CV02957

NATALIE ANDERSON vs. RESIDENCE INN-NASHUA & another

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the Status Report filed by Natalie Anderson. (Paper #7), on March 28, 2022, the following order was entered on the docket:

RE#7: A review of the status report and the current trial court docket indicates that the motions currently pending in the trial court were filed after the notice of assembly issued to this court. Appellate proceedings remain stayed to 04/01/2022 by when appellant is to provide a status report identifying any motions filed prior to assembly of the record on appeal that have yet to be resolved. *Notice/attest

IMPORTANT INFORMATION ABOUT ELECTRONICALLY FILING IN THE APPEALS COURT

Every attorney with an appeal pending in the Appeals Court must have an account with eFileMA.com. Registration with eFileMA.com constitutes consent to receive electronic notification from the Appeals Court and e-service of documents. Self-represented litigants are encouraged, but not required, to register for electronic filing.

All documents may, and some must, be electronically filed with the Appeals Court using eFileMA.com. No paper original or copy of any e-filed document is required.

E-filing impounded documents or e-filing by self-represented litigants is voluntary.

Additional information is located on our Electronic Filing web page: http://www.mass.gov/courts/court-info/appealscourt/efiling-appeals-faq-gen.html

Very truly yours,
Joseph F. Stanton, Clerk

To: Natalie Anderson, Residence Inn-Nashua, Middlesex Superior Court Dept.

-----------------------------------------------------------------

If you have any questions, or wish to communicate with the Clerk's Office about this case, please contact the Clerk's Office at 617-725-8106. Thank you.

-----------------------------------------------------------------

Middlesex.Clerksoffice mailing list
Middlesex.Clerksoffice@jud.state.ma.us
http://mailman01.jud.state.ma.us/mailman/listinfo/middlesex.clerksoffice

24

L1

Commonwealth of Massachusetts
Middlesex Superior Court-Lowell

**RECEIVED**

3/23/2022

Case#: 2081CV02957
Anderson, Natalie vs. Residence Inn Nashua et al

### Emergency Motion to Continue Hearing

1. I hereby request a continuance of the hearing.
2. I just received notice of a hearing scheduled for 3-28-2022. NB: This effectively means about only 5 business days' notice before the hearing which is not adequate to prepare for the hearing.
3. I have a conflict, and will be unable to attend the hearing, due to a longstanding medical appointment at the same time as the hearing.
4. Therefore, I ask that the hearing be rescheduled. NB: If possible, any day during the last week of April 2022 (except April 25 or 26, 2022) would be ideal for a rescheduled date, in order to avoid other medical conflicts in April 2022.
5. Also, I ask that the court clarify what matters will be discussed at the hearing so that I may be able to adequately prepare for the hearing.
6. This is styled as an emergency because the hearing date is in 4 business days and I would like to hear back from the court in time before the date of the hearing. I ask that the court rule on the motion as soon as practicable this week.
7. Please grant the relief requested herein or any other relief deemed just, right or proper.

Respectfully submitted,
/s/ natalie anderson
Natalie Anderson

March 23, 2022

TK

**C. Andrew Johnson**                                    23

| | |
|---|---|
| **From:** | Mary G Stewart |
| **Sent:** | Monday, February 28, 2022 2:35 PM |
| **To:** | C. Andrew Johnson |
| **Subject:** | FW: 2022-P-0087 - Notice of Order |

-----Original Message-----
From: middlesex.clerksoffice@jud.state.ma.us <middlesex.clerksoffice@jud.state.ma.us> On Behalf Of Appeals Court Clerk's Office
Sent: Monday, February 28, 2022 1:00 PM
To: Middlesex.clerksoffice@jud.state.ma.us
Subject: 2022-P-0087 - Notice of Order

-COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE

Dated: February 28, 2022

RE:     No. 2022-P-0087
Lower Court No: 2081CV02957

NATALIE ANDERSON vs. RESIDENCE INN-NASHUA & another

NOTICE OF DOCKET ENTRY

Please take note that, with respect to the MOTION of Appellant to stay appellate proceedings filed by Natalie Anderson. (Paper #6), on February 28, 2022, the following order was entered on the docket:

RE#6: Appellate proceedings are stayed to 03/24/2022 by when the plaintiff shall file a status report regarding the disposition of the post dismissal motions pending in the trial court. *Notice/Attest/Wall, J.

IMPORTANT INFORMATION ABOUT ELECTRONICALLY FILING IN THE APPEALS COURT

Every attorney with an appeal pending in the Appeals Court must have an account with eFileMA.com. Registration with eFileMA.com constitutes consent to receive electronic notification from the Appeals Court and e-service of documents. Self-represented litigants are encouraged, but not required, to register for electronic filing.

All documents may, and some must, be electronically filed with the Appeals Court using eFileMA.com. No paper original or copy of any e-filed document is required.

E-filing impounded documents or e-filing by self-represented litigants is voluntary.

Additional information is located on our Electronic Filing web page: http://www.mass.gov/courts/court-info/appealscourt/efiling-appeals-faq-gen.html

Very truly yours,

Joseph F. Stanton, Clerk

To: Natalie Anderson, Residence Inn-Nashua, Middlesex Superior Court Dept.

---------------------------------------------------------------------------

If you have any questions, or wish to communicate with the Clerk's Office about this case, please contact the Clerk's Office at 617-725-8106. Thank you.

_____

Middlesex.Clerksoffice mailing list
Middlesex.Clerksoffice@jud.state.ma.us
http://mailman01.jud.state.ma.us/mailman/listinfo/middlesex.clerksoffice



L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                    SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,

v.

Residence Inn Nashua et al; Defendants.

CIVIL ACTION NO.: Case#: 2081CV02957

**RECEIVED**

2/9/2022

## [EMERGENCY] MOTION TO COMPEL COURT TO ACT/RULE ON OUTSTANDING MOTIONS AND MOTION TO STOP JUDICIAL MISCONDUCT

1. I hereby finally, in all exhausting all measures within my power, move the court to rule/act urgently on several of my motions that have been outstanding for months. I hereby also move the court to put a stop to intentional judicial misconduct as will be further elaborated upon below.

2. A motion to compel the court to act is an option of last resort when a court or court staff has flagrantly violated/abdicated its duty to act and has not acted despite numerous reminders/urgings by the plaintiff. It is my understanding that this is the final remaining option, that I as the plaintiff can take, in order to try to get the court to act on my motions. After this, it is my understanding that the only thing left to do is escalation to the SJC. However, in order to escalate to the SJC, it is my understanding that the SJC would like to see that I have tried to exhaust all avenues for relief before going to the SJC.

3. Towards that end, I am filing this motion to compel in order to go the extra mile to exhaust all avenues of relief and to err on the side of caution and measured action, to give this court one last opportunity to act on my motions. NB: I have brought this issue to the attention of the clerk of court, the chief justice of the trial court by way of emails and letters and to the court directly way of multiple reminders/motions but to no avail.

4. These motions that have not been ruled on include:

   - 10/28/2021 - Affidavit of Natalie Anderson (with request to not dismiss case b/c service was timely made) – Paper #8
   - 11/16/2021 - Plaintiff's Submission of Notice/Letter to Clerk of Courts of Irregularity of Clerk Staff Improperly Rejecting Plaintiff's Filings [with Request to Cease These Irregularities] and Motion to Court to Accept the Filings of 11-21-21 and 11-15-21 and/or in the alternative to Motion to Vacate 1-88 Dismissal – Paper #9
   - 11/16/2021 - Affidavit of Indigency and request for waiver of fees and costs – Paper #11
   - 11/26/2021 - Plaintiff's Motion to Vacate 1-88 Dismissal (Second Motion) – Paper #12

   NB: See also screenshot of docket below.

TK



5. The above shows that there are at least 4 motions that the court has failed to rule on, spanning a timeline of **about 90 days or more.**

6. As more time passes without ruling from the court, it results in more and more harm and prejudice to me as the plaintiff.

7. There seems to be a problem with the court refusing to rule on my motions.

8. This is now a pattern/practice of refusing to rule on my motions.

9. NB: During the above-noted period, I also sent email communications to the Lowell superior court clerk/clerk office about this issue but to no avail or with no response. Thus, there is also a pattern/practice of refusing to respond to emails attempting to get correction or relief to the issues outlined herein.

10. The court appears to be deliberately refusing to rule on these motions in order to retaliate against or punish me because of concerns raised about race discrimination by the Lowell superior court.

11. These concerns are buttressed by the highly irregular and unusual occurrences in this case. There is simply no rational explanation for these irregularities in this case, especially after notice and reminders from me alerting the court to this issue.

12. NB: Similarly, the court evidently went out of its way, on 2-1-22, to rule on/deny the previously pending motion to recuse, motion to change venue and motion to correct record, but **intentionally avoided ruling on the most 4 critical outstanding motions relating to affidavit of service of process/request to not**

2

dismiss, correction and acceptance of improperly/erroneously rejected filings and in the alternative to motion to vacate dismissal, a request for indigent waiver of costs and a second motion to vacate dismissal, as noted above (all of which were filed before the motion to recuse, motion to change venue and motion to correct record). Why would the court rule on the latter but not the former? **This clearly indicates game-playing and subterfuge and constitutes judicial misconduct. I hereby move the court to put a stop this intentional misconduct.**

13. In particular, the **court's intentional avoidance/refusal to rule on my request for waiver of costs (for almost 90 days) is particularly abusive and injurious to me as an indigent African American female plaintiff** in this case. There is simply no excuse for this. Judge Wall refuses to rule on my motion for funds because he knows that he cannot lawfully deny the motion. And I predict that if Judge Wall does rule on the motion for funds due to the pressure being brought via this motion to compel, he will not be able to constrain himself and his bias against me and he will deny my motion for funds **in violation of the law.**

14. Similarly, the court's intentional refusal to rule on my motion to vacate dismissal (also almost for 90 days) is also abusive and injurious to my rights. Judge Wall clearly has an axe to grind and is biased against me beyond repair. The above conduct proves some kind of animus towards me (which I have alleged to be based on retaliation for complaints made to the chief justice about the Lowell court, its judges and staff).

15. The following key points should also be noted:

    a. On 12/28/2021, I filed an **EMERGENCY Motion to correct the record**, docketed as paper #16. It was denied on 2-1-22 without explanation. This denial is irrational as I simply requested the court correctly title my filing that was docketed as paper#9, which had a mislabel/incorrect title. It does not hurt anything to correct the title. This shows the court will never grant any motion from me, no matter how benign or minor or basic. This Judge Wall will, in knee-jerk manner, deny any and everything that I request from the court, in what appears to be a fanatical or cultish devotion to his own animus, disregard, contempt and retaliation towards me.

    b. On 12/28/2021, I also filed an **EMERGENCY Request and notice for Court to rule on outstanding motions before escalating to SJC (final request)**, docketed as paper #17. Judge Wall stated "no action taken" on his endorsement on 2-1-22 [which, by the way was over 35 days that he took to rule on that]. This is effectively a denial of the motion, and the judge again is here playing games with his solemn duty and obligation as a judge to discharge his duty to timely rule on motions before the court. Moreover, in this particular motion, I specifically pointed out to the court that several motions had not been ruled on, including the ones I noted herein in paragraph 4 of this motion. Yet still even after I have gone to such lengths to bring these outstanding motions to the attention of Judge Wall, he still refused to rule on them, and instead ruled on only some of the other motions that are not

as critical as the ones he intentionally ignored (and has been ignoring for about 90 days). This is pure judicial misconduct.

16. By failing to rule on these outstanding motions, the court has violated my rights.

17. By failing to rule on these outstanding motions, the court is depriving me of an opportunity to timely seek reconsideration or appellate relief.

18. By failing to rule one these outstanding motions, the court is disregarding the law and its duty to act on motions.

19. By failing to rule on these outstanding motions, the court is failing to provide me a rightful opportunity to be heard.

20. By failing to rule on these outstanding motions, the court is dodging its responsibility to correct its errors and to do justice.

21. The collective impact of these acts/patterns/practices prevents me from obtaining a fair and impartial administration of justice in this case.

22. This is being filed as an **emergency** motion because time is of the essence and the court has wasted a lot of time already, allowing these motions to languish on the docket for almost 90 days without being acted upon, which has caused me severe prejudice.

23. Without immediate action on these motions, I will feel I have no choice but to escalate this matter to the SJC for proper relief as I have tried to obtain relief from every other possible avenue (including alerting the clerk, the chief justice, and the judge on more than one occasion) but evidently to no avail. Thus, I have now exhausted every possible avenue of relief and I have gone above and beyond to resolve this issue at the lower court level without going to the SJC for relief, leaving escalation to the SJC as the only avenue of relief remaining.

24. WHEREFORE, I respectfully request that this court grant this motion and rule on the outstanding motions forthwith.

Respectfully submitted by

Dated: February 9, 2022

Plaintiff Natalie Anderson

4

21

L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                    SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,                                    **RECEIVED**

v.

Residence Inn Nashua et al; Defendants.                  2/9/2022

CIVIL ACTION NO.: Case#: 2081CV02957

## [EMERGENCY] MOTION TO COMPEL CLERK TO DOCKET
## EMERGENCY MOTION COMPEL COURT TO ACT/RULE ON OUTSTANDING MOTIONS
## AND MOTION TO STOP JUDICIAL MISCONDUCT

1. I hereby move the court to **docket** the motion to compel court to act/rule on outstanding motions and motion to stop judicial misconduct.

2. On 2-9-22, I filed a motion to compel court to act/rule on outstanding motions and motion to stop judicial misconduct. See attached **Exhibit B**.

3. On 2-9-22, the filing was rejected by the clerk office stating: "*This case is dismissed for lack of service since 2021. A Motion to vacate dismissal MUST be filed before any other pleadings can be docketed.*" See attached **Exhibit A**.

4. First, there is no court rule that states the above reason offered by the clerk's office.

5. Second, even if there was such a court rule, I have in fact filed at least two motions to vacate dismissal, as follows.

   - 11/16/2021 - Plaintiff's Submission of Notice/Letter to Clerk of Courts of Irregularity of Clerk Staff Improperly Rejecting Plaintiff's Filings [with Request to Cease These Irregularities] and Motion to Court to Accept the Filings of 11-21-21 and 11-15-21 and/or in the alternative **Motion to Vacate 1-88 Dismissal** – Paper #9

   - 11/26/2021 - Plaintiff's **Motion to Vacate 1-88 Dismissal** (Second Motion) – Paper #12

6. NB: See also screenshot of docket below.



1

TK

7. These motions to vacate dismissal have not been acted upon. This is one of the reasons that I today filed my **motion to compel court to act/rule on outstanding motions and motion to stop judicial misconduct.**

8. Moreover, other pleadings have been docketed since dismissal.

9. There is no basis to reject the filing and to do so is a violation of the court rules.

10. This is not only highly irregular, but it is also improper.

11. According to the rules of the court, any filing made by a party is to be accepted by the clerk. See Massachusetts Rules of Procedure 79, which states: "*All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number.*"

12. The clerk cannot reject the filings of a party in this way.

13. My filings are legitimate filings for this case. It should have been accepted and docketed by the clerk and then presented to the judge. It is highly irregular and improper for the clerk to reject my filings for my own case.

14. This rejection of my filing is further misconduct by the court.

15. Furthermore, the court has no discretion to reject the docketing of my filing. If this continues or my filing is not docketed, I will escalate this to the chief justice or the SJC.

16. WHEREFORE, I respectfully request that this court grant this motion and rule on the outstanding motions forthwith.

Respectfully submitted by

Plaintiff Natalie Anderson

Dated: February 9, 2022

2

## COMMONWEALTH OF MASSACHUSETTS
## STATEMENT OF THE CASE
## APPELLATE COURT ENTRY STATEMENT

Court Department   MIDDLESEX SUPERIOR COURT

Trial Court Docket No(s): 2081CV02957

Case Name: Natalie Anderson vs. Residence Inn Nashua et al

### APPEARANCES

| Attorney Name for each Plaintiff/Petitioner and Either BBO Number OR Address and Telephone Number | Attorney Name for each Defendant/Respondent and Either BBO Number OR Address and Telephone Number |
|---|---|
| Natalie Anderson | Jennifer Brooks |
| 679 Washington Street #8-206 | |
| Attleboro, MA  02703 | |

Nature of the case (Select the most appropriate description): B99 Other Tortious Action

Date Petition, Complaint or Indictment Entered in Trial Court:   12/08/2020

Is the Case or Any Information Impounded?   No

If yes, attach a copy of the order of impoundment or provide the citation to the statute or rule pursuant to which the documents were impounded, and specify each impounded document (enter information then "tab" out to view). See S.J. C. Rule 1:15, § 2(a)

Date When Notice of Appeal Filed: Dec 16, 2021

Appeal By (specify each party listed in notice of appeal): Plaintiff

Identify the order or judgment being appealed (enter information then "tab" out to view):

November 16, 2021 / Judgment / Wall, J.

Date Transcripts Ordered:                                    Number of Transcript Volumes:

Enclosing CD(s) with PDF(s) of the Transcript:  ○ Yes  ◉ No

Dates of Transcribed Proceedings:

In Criminal Cases, has a Stay of Execution of Sentence Been Granted?  ○ Yes  ○ No

Date Notice of Assembly Issued:  Jan 18, 2022

Clerk , Clerk Magistrate, Register, or Recorder

To be filled in by the appellate court:

Date Entered in S.J.C. or Appeals Court:                      S.J.C. or Appeals Court Docket Number:

19

| NOTICE OF ASSEMBLY OF RECORD | DOCKET NUMBER<br>2081CV02957 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Natalie Anderson vs. Residence Inn Nashua et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO:<br>Joseph Stanton, Clerk<br>Appeals Court<br>John Adams Courthouse, Suite 1200<br>One Pemberton Square<br>Boston, MA  02108 | COURT NAME & ADDRESS<br>Middlesex Superior - Lowell<br>370 Jackson Street<br>Lowell, MA 01852 |
|---|---|

The record of the above-entitled case has been assembled, under Mass. R. A. P. 9(a).

Accompanying this notice are the following, as required by Mass. R. A. P. 9(e)(2):

*A completed appellate court entry statement

*A copy of the notice of assembly issued to the parties

*A copy of the notice(s) of appeal

*One copy of the docket entries (uncertified)

*A list of all exhibits

*If any material was impounded in the lower court, written notification specifying the material that was impounded below and either a copy of the impoundment order (if one issued) or reference to the authority for the impoundment

*If this is a direct appeal concerning a criminal case, any electronically-formatted transcript, if necessary to the appeal

☐ This is an appeal concerning a criminal case where:

*The crime(s) involved were something **other than** murder in the first degree, **and**

*The direct appeal has already been decided, **and**

*This appeal is from the denial of a motion for post-conviction relief.

Accordingly, the following accompanies this notice, under Mass. R. A. P. 9(d)(3):

☐ Transcripts of the lower-court proceedings, **or**

☐ A copy of the certification that the appellant filed in the lower court attesting that copies of the transcripts are already available in the appellate court.

| DATE<br>01/18/2022 | CLERK /ASSISTANT CLERK<br>**Amanda Rowan** | CLERK /ASSISTANT CLERK |
|---|---|---|

Date/Time Printed: 01-18-2022 12:30:27

SCV034_X/1.03/2018

18

| NOTICE OF ASSEMBLY OF RECORD<br>TO COUNSEL | DOCKET NUMBER<br><br>2081CV02957 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Natalie Anderson vs. Residence Inn Nashua et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO:<br><br>Natalie Anderson<br>679 Washington Street #8-206<br>Attleboro, MA 02703 | COURT NAME & ADDRESS<br><br>Middlesex Superior - Lowell<br>370 Jackson Street<br>Lowell, MA 01852 |
|---|---|

You are hereby notified that the record of the above-entitled case has been assembled, under Mass. R. A. P. 9(a).

The following documents were sent to the appellate court, as required by Mass. R. A. P. 9(e)(2):

*A completed appellate court entry statement

*A copy of the notice of assembly issued to the parties

*A copy of the notice(s) of appeal

*One copy of the docket entries (uncertified)

*A list of all exhibits

*If any material was impounded in the lower court, written notification specifying the material that was impounded below and either a copy of the impoundment order (if one issued) or reference to the authority for the impoundment

*For criminal cases, any electronically-formatted transcripts, if necessary to the appeal, or a copy of the certification that the appellant filed in the lower court attesting that copies of the transcripts are available in the appellate court, pursuant to Mass. R. A. P. 9(d)(3).

In civil cases, pursuant to Mass. R. A. P. 10(a)(1), each appellant must enter the case in the appellate court within 14 days of receipt of the notice of assembly of the record. This notice does not constitute entry in either Appeals Court or the Supreme Judicial Court.

| DATE<br><br>01/18/2022 | CLERK /ASSISTANT CLERK<br><br>**Amanda Rowan** | CLERK /ASSISTANT CLERK |
|---|---|---|

Date/Time Printed: 01-18-2022 12:28:08

SCV034_X2\ 04/2019



COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                    SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,

v.                                                                        **RECEIVED**

Residence Inn Nashua, et al; Defendants.

CIVIL ACTION NO.: 2081CV02957                                            **12/28/2021**

## <u>FINAL [EMERGENCY] REQUEST AND NOTICE FOR COURT TO RULE ON OUTSTANDING MOTIONS BEFORE ESCALATION TO SJC</u>

1. This filing is, again, to alert the court to the fact that the judge has not ruled on several of my motions and to request that the court rule/decide on these outstanding motions urgently.

2. These motions that have not been ruled on include:

   - 10/28/2021 - Affidavit of Natalie Anderson (with request to not dismiss case b/c service was timely made) – Paper #8
   - 11/16/2021 - Plaintiff's Submission of Notice/Letter to Clerk of Courts of Irregularity of Clerk Staff Improperly Rejecting Plaintiff's Filings [with Request to Cease These Irregularities] and Motion to Court to Accept the Filings of 11-21-21 and 11-15-21 and/or in the alternative to Motion to Vacate 1-88 Dismissal – Paper #9
   - 11/16/2021 - Affidavit of Indigency and request for waiver of fees and costs – Paper #11
   - 11/26/2021 - Plaintiff's Motion to Vacate 1-88 Dismissal (Second Motion) – Paper #12
   - 12/16/2021 - Plaintiff's EMERGENCY Motion/Affidavit for Recusal of Judge Joshua Wall – Paper #13
   - 12/16/2021 - Plaintiff's EMERGENCY Motion to change venue – Paper #14

   NB: See also screenshot of docket below.



RM

3. The above shows that there are about 6 motions that the court has failed to rule on, spanning a timeline of over 2 months.

4. As more time passes without ruling from the court, it results in more and more harm and prejudice to me as the plaintiff.

5. There seems to be a problem with the court refusing to rule on my motions.

6. This is now a pattern/practice of refusing to rule on my motions.

7. NB: During the above-noted 2-month period, I also sent email communications to the Lowell superior court clerk/clerk office about this issue but to no avail or with no response. Thus, there is also a pattern/practice of refusing to respond to emails attempting to get correction or relief to the issues outlined herein. See **Exhibit 1.**

8. The court appears to be deliberately refusing to rule on these motions in order to retaliate against or punish me because of concerns raised about race discrimination by the Lowell superior court.

9. These concerns are buttressed by the highly irregular and unusual occurrences in this case. There is simply no rational explanation for these irregularities in this case, especially after notice and reminders from me alerting the court to this issue.

10. By failing to rule on these motions, the court has violated my rights.

11. By failing to rule on these motions, the court is depriving me of an opportunity to timely seek reconsideration or appellate relief.

12. By failing to rule one these motions, the court is disregarding the law and its duty to act on motions.

13. By failing to rule on these motions, the court is failing to provide me a rightful opportunity to be heard.

14. By failing to rule on these motions, the court is dodging its responsibility to correct its errors and to do justice.

15. The collective impact of these acts/patterns/practices prevents me from obtaining a fair and impartial administration of justice in this case.

16. The SJC has stated In re DeSaulnier, 360 Mass. 787 (1972), that:

    "A judge should show respect for and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary…" and "[p]ublic confidence in the judiciary is eroded by irresponsible or improper conduct by judges. The judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen, and he should do so freely and willingly."

17. See also In re Brown, 427 Mass. 146 (1998) ("[a] judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."…"The Code of Judicial Conduct requires judges in this Commonwealth to exhibit the highest standards of professional conduct." Matter of Donohue, 390 Mass. 514, 518 (1983)."

2

18. These irregularities also deprive me of substantial rights, as the court disregards or is indifferent to my rights and the law (See In re Markey, 427 Mass. 797 (1998) ("judge…exhibited a wilful disregard of the law and not merely an error of law"). See also Matter of King, supra at 608; Matter of Troy, 364 Mass. 15, 40 (1973) (judge…engaged in a "pattern of disregard or indifference").

19. The above demonstrates multiple violations of law, the rules of the court, the code of ethical conduct, as well as the principles of fundamental fairness and due process including but not limited to:

    a. Failure to, at all times, act in a manner that promotes public confidence in the independence, integrity, and/or impartiality of the judiciary,

    b. Failure to avoid impropriety and/or the appearance of impropriety.

    c. The appearance that the court is not performing all duties of judicial office fairly and impartially.

    d. Failure to ensure all parties with a legal interest in the proceedings a right to be heard.

20. This is being filed as an **emergency** motion because time is of the essence as critical timelines are expiring.

21. Without immediate action on these motions, I will feel I have no choice but to escalate this matter to the SJC for proper relief as I have tried to obtain relief from every other possible avenue (including alerting the clerk, the chief justice, and the judge on more than one occasion) but evidently to no avail. Thus, I have now exhausted every possible avenue of relief and I have gone above and beyond to resolve this issue at the lower court level without going to the SJC for relief, leaving escalation to the SJC as the only avenue of relief remaining.

22. WHEREFORE, I respectfully request that this court grant this motion and rule on the outstanding motions forthwith.

Respectfully submitted by

Dated: December 28, 2021

Plaintiff Natalie Anderson

16

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                    SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,
v.                                                              **RECEIVED**
Residence Inn Nashua, et al; Defendants.

CIVIL ACTION NO.: 2081CV02957                                   12/28/2021

### [EMERGENCY] MOTION TO CORRECT THE RECORD

1.  I am requesting that the court correct the record as follows.

2.  On 11/16/21, I submitted a filing entitled:

    **NOTICE/LETTER TO CLERK OF COURT OF THE IRREGULARITY OF THE
    CLERK STAFF IMPROPERLY REJECTING PLAINTIFF'S FILINGS [WITH
    REQUEST TO THE CLERK TO CEASE THESE IRREGULARITIES] AND MOTION
    TO CLERK/COURT TO ACCEPT THE FILINGS OF 11-12-21 AND 11-15-21 AND/OR
    IN THE ALTERNATIVE MOTION TO VACATE 1-88 DISMISSAL**

3.  However, it was entered by the clerk on the docket as:

    **11/16/2021 - Plaintiff Natalie Anderson's Submission of Notice/Letter to Clerk of Courts of
    Irregularity; 9**

4.  This entry of the above filing is not correct on the docket. This entry cuts the title so that it is misleading.
    The title should have been spelled out in full, so that it is clear on the docket that this is a motion.

5.  It should be entered as follows:

    **11/16/2021 - Plaintiff's Submission of Notice/Letter to Clerk of Courts of Irregularity of Clerk
    Staff Improperly Rejecting Plaintiff's Filings [with Request to Cease These Irregularities] and
    Motion to Court to Accept the Filings of 11-21-21 and 11-15-21 and/or in the alternative to Motion
    to Vacate 1-88 Dismissal – Paper #9**

6.  I thus ask the court to correct the record and enter the filing as:

    **11/16/2021 - Plaintiff's Submission of Notice/Letter to Clerk of Courts of Irregularity of Clerk
    Staff Improperly Rejecting Plaintiff's Filings [with Request to Cease These Irregularities] and
    Motion to Court to Accept the Filings of 11-21-21 and 11-15-21 and/or in the alternative to Motion
    to Vacate 1-88 Dismissal – Paper #9**

7.  NB: This correction is also important so that the record is clear for appellate purposes as maybe necessary.

8.  WHEREFORE, I respectfully request that this court grant this motion.

Respectfully submitted by

_Natalie And_

Dated: December 28, 2021                                        Plaintiff Natalie Anderson

1

RM

15                                                                                        L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                          SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,                                    **RECEIVED**
v.
Residence Inn Nashua, et al; Defendants.                 12/16/2021
CIVIL ACTION NO.: 2081CV02957

### NOTICE OF APPEAL

1.  I, the plaintiff, hereby file this notice of appeal of the decision/judgment entered on 11-16-21 by Judge
    Joshua Wall of the Middlesex Superior Court of Massachusetts ("Trial Court"), as follows:

    - **11/16/2021   JUDGMENT OF DISMISSAL (1-88) entered, service not completed for any
      party by deadline review. Judge: Wall, Hon. Joshua, Paper #10**

    This decision is also reflected in the following entries by the clerk on the docket:

    - **11/16/2021   Document:**
      **A Judgment of Dismissal 1-88 was generated and sent to:**
      **Plaintiff:  Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824**
      **Defendant:  Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062**
      **Defendant:  Jennifer Brooks No addresses available**

    - **11/16/2021   Document:**
      **Judgment of Dismissal 1-88**
      **Sent On:  11/16/2021 09:50:24**
      **Notice Sent To:  Natalie Anderson 679 Washington Street #8-206, Chelmsford, MA 01824**
      **Notice Sent To:  Residence Inn Nashua 13 Trafalgar Rd, Nashua, NH 03062**
      **Notice Sent To:  Jennifer Brooks No addresses available**

2.  NB: I want to make clear that I am appealing all orders of denial or adverse decisions (including the
    judgement of dismissal as well as any other adverse rulings such as the court's 10-28-21 denial of my 10-
    22-21 motion to extend time to serve process on defendant), whether entered at the same time as, before
    or after the dismissal, as outlined on the trial court's docket and/or I am preserving the right to do so.

3.  I reserve all rights, via this notice of appeal, without waiving any rights whatsoever thereto.

Respectfully Submitted,

*Natalie And*

**NATALIE ANDERSON**

Dated: December 16, 2021

1

14                                                                                          L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                    SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,                                    **RECEIVED**
v.
Residence Inn Nashua, et al; Defendants.                        12/16/2021
CIVIL ACTION NO.: 2081CV02957

## [EMERGENCY] MOTION TO CHANGE VENUE

1. I, the plaintiff, respectfully submit this motion to change venue.

2. I have a change of address which I have notified the court of i.e., **679 Washington Street, #8-206, Attleboro, MA 02703.**

3. As this court is in Lowell, MA, it is not/no longer convenient or accessible for me (and cost prohibitive in terms of any travel). NB: The distance is about 80 miles and is over two-hours' drive round trip.

4. As noted elsewhere, I also have had difficulty obtaining a fair trial in this court and I anticipate that I will continue to have such difficulties. Moreover, it appears that this court does not want to deal with me or my case in any event. It seemed bent on dismissing my case in an unfair and draconian manner. Also, the court and/or the court staff seems non-responsive as well as exasperated, suspicious, and distrustful of me. As an African American female pro se plaintiff, I simply do not want to be subject to such unfairness, dismissiveness, contempt, hostility, or caprice. I do not want to be subject to any bias (racial or otherwise) nor do I want to subject to the sense of being unwanted or disregarded or not treated with respect, dignity and due regard. So, it seems best that I transfer to another court, and one that is also closer and more accessible in any event. That way this court can be fully rid of me. It won't have to listen to me or entertain my requests/motions or appeal.

5. Similarly, as the smaller satellite court for the main Woburn Middlesex Court, the Lowell Middlesex superior court seems understaffed both in terms of judges (i.e., with what appears to be only one or two judges in the civil session serving all cases before the court at one time) as well as clerks. This court also seems eager to clear or limits its calendar by getting rid of cases it deems unimportant, which evidently largely includes cases filed by pro se African American plaintiffs or indigent ones. And there also appears to be other systemic problems with the Lowell superior court.

6. I don't think this case can be fairly, impartially, and properly administered in this court for the above stated reasons.

7. Thus, I ask for the case to be transferred to another court.

8. I ask that this case at least be transferred to the Woburn Middlesex court, which provides more convenient access relative to Attleboro. It evidently also has access to more judges and staff and has a more accommodating calendar. It also would be an easy transfer since it technically would be under the same court administration of the Middlesex Court.

RM

9.   Please grant the request made herein.

Respectfully Submitted,

**NATALIE ANDERSON**

Dated: December 16, 2021

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,                        **RECEIVED**
v.
Residence Inn Nashua, et al; Defendants.            12/16/2021
CIVIL ACTION NO.: 2081CV02957

## EMERGENCY MOTION AND AFFIDAVIT FOR RECUSAL OF JUDGE JOSHUA WALL

I, the plaintiff, in the above captioned case, hereby move to recuse/disqualify Judge Joshua Wall of the Lowell Middlesex Superior Court and herein does say and depose, by way of affidavit, that the statements and facts asserted herein are true, correct and right according to the best of my knowledge, belief and recollection. I submit this Emergency Motion for Recusal.

## I. INTRODUCTION

1. I, the plaintiff, hereby respectfully moves and prays that Judge Joshua Wall recuse himself as judge (pursuant to the articles of the Massachusetts Constitution and declaration of rights and the Judicial Code of Conduct), to the end that another judge be assigned to hear and try all matters in the instant case.

2. This is a very serious matter and should not be treated lightly or dismissively. This matter goes to the very heart of the integrity of the judicial system and should be treated with the care, consideration, thoughtfulness, and prudence that is warranted under the circumstances.

3. No matter should continue to be heard by Judge Wall unless this matter of grave importance is settled honorably and honestly and in a fair and conscientious manner.

4. Unfortunately, I have no confidence that my motions will be treated fairly by Judge Wall, and I believe strongly that my concerns and requests will be ignored or treated dismissively and rashly without due consideration or due process as has been previously done by Judge Wall. This is borne out by the facts below.

5. In all good conscience and sense of fairness, I ask that Judge Wall allow another judge to step in his place if but only to avoid the appearance of impartiality.

6. NB: It should be noted that this motion highlights acts and conduct by Judge Wall that transcend mere errors or law but focuses on conduct that disregards law and violates the code of judicial conduct.

## II. SUMMARY OF BASIS FOR DISQUALIFICATION/RECUSAL - VIOLATIONS OF JUDICIAL CODE OF CONDUCT

7. I base my complaint as noted above, on the following:

    a. Judge Wall has violated the plaintiff's rights and in so doing had violated the law.

1

RM

    b.  Judge Wall has abused his discretion.

    c.  Judge Wall has failed to provide the plaintiff with a full opportunity to be heard.

    d.  Judge Wall has failed to be faithful to the law.

    e.  Judge Wall has failed to observe high standards of conduct required of judges.

    f.  Judge Wall has engaged in bias and/or created an appearance that he was biased against the plaintiff, among other things as noted herein and as will be set out more fully below.

8.  Examples of the violations of the Massachusetts judicial code of conduct in the SJC rules (Canon 2) include:

1)  **Rule 2.2 Impartiality and fairness**: A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially.

        [NB: with comment notes - [1] To ensure impartiality and fairness to all parties, a judge must be objective and open-minded. [4] It is not a violation of this Rule for a judge to make reasonable accommodations to ensure self-represented litigants are provided the opportunity to have their matters fairly heard. See Rule 2.6(A).].

2)  **Rule 2.3 Bias, prejudice, and harassment:**

    (A) A judge shall perform the duties of judicial office, including administrative duties, without bias, prejudice, or harassment.

    (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice or engage in harassment, including bias, prejudice, or harassment based upon a person's status or condition. A judge also shall not permit court personnel or others subject to the judge's direction and control to engage in such prohibited behavior.

        With comment notes:

        [1] A judge who manifests bias or prejudice or engages in harassment in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. A judge must avoid words or conduct that may reasonably be perceived as manifesting bias or prejudice or engaging in harassment.

        [2] As used in this Rule, examples of status or condition include but are not limited to race, color, sex, gender identity or expression, religion, nationality, national origin, ethnicity, citizenship or immigration status, ancestry, disease or disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

        [3] As used in this Rule, examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; improper suggestions of connections between status or condition and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey an appearance of bias or prejudice to parties and lawyers in the proceeding, jurors, the media, and others.

        [4] As used in this Rule, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as those listed in Comment [2].

3)  **Rule 2.5 Competence, diligence, and cooperation:**

    (A) A judge shall perform judicial and administrative duties competently, diligently, and in a timely manner.

4)  **Rule 2.6 Ensuring the right to be heard:**

    (A) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge may make reasonable efforts, consistent with the law, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard.

        With comment notes: [1] The right to be heard is an essential component of a fair and impartial* system of justice. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed. [1A] The judge has an affirmative role in facilitating the ability of every person who has a legal interest in a proceeding to be fairly heard. In the interest of ensuring fairness and access to justice, judges may make reasonable accommodations that help self-represented litigants to understand the proceedings and

applicable procedural requirements, secure legal assistance, and be heard according to law. The judge should be careful that accommodations do not give self-represented litigants an unfair advantage or create an appearance of judicial partiality. In some circumstances, particular accommodations for self-represented litigants are required by decisional or other law. In other circumstances, potential accommodations are within the judge's discretion. By way of illustration, a judge may: (1) construe pleadings liberally; (2) provide brief information about the proceeding and evidentiary and foundational requirements; (3) ask neutral questions to elicit or clarify information; (4) modify the manner or order of taking evidence or hearing argument; (5) attempt to make legal concepts understandable; (6) explain the basis for a ruling; and (7) make referrals as appropriate to any resources available to assist the litigants

5) **Rule 2.11 Disqualification**
   (A) A judge shall disqualify himself or herself in any proceeding in which the judge cannot be impartial or the judge's impartiality* might reasonably be questioned, including but not limited to the following circumstances:

## III. SUMMARY OF BACKGROUND FACTS OF THE UNDERLYING COURT MATTER

### A.  BRIEF RELEVANT PROCEDURAL HISTORY

9. On or about 12-7-20, I previously filed a motion for funds for normal fees and costs for fees, summons and service of process. It has not been ruled on by the court.

   a. I did not receive a summons for this case from the court.

   b. This indicates that these things fell through the cracks or that the court staff dropped the ball somehow.

   c. This could have been due to the fact that there was a pandemic in 2020 at the time and the court was shut down for months and understaffed for months in 2020. NB: I am myself was significantly impacted by the pandemic and had to seek extensions of time to serve process due to Covid/health reasons on a few occasions.

   d. Because the court had not approved the motion for funds for the summons and for service of process, then I had not received the summons from the court, nor could I serve process on the defendant.

   e. I was not able to serve process unless I received the summons from the court and unless the court approved my motion for funds for service of process on the defendant.

   f. I brought to the attention of the court, in my 10-22-21 motion to extend time to serve process on defendant, that I had not received the summons from the court and that I needed it to serve process on the defendant. But the court ignored that fact and denied my motion to extend time to serve process on the defendant. This is not fair or right.

   g. NB: I have filed, again, on 11-26-21, a motion for funds for normal fees and costs for fees, summons and service of process. However, again, the motion for funds has also been ignored by the judge and has not been ruled upon by the judge.

3

10. The deadline to serve process was 10-22-21.

11. I filed for an extension of time to serve process but the court denied it.

12. So, under the long arm statute, I mailed summons[1] and complaints of the above-captioned case to Defendant Residence Inn Nashua and to Defendant Jennifer Brooks on October 22, 2021, to the last known out of state address that I had for them located in the state New Hampshire at 25 Trafalgar Square, Nashua, NH 03063.

13. Thus, service was complete upon mailing pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b).

14. October 22, 2021 was the deadline to serve process on the Defendants, which was the result of the court's order on 9-21-21 on my third request for an extension of the service of process deadline (NB: up until the time of my third request for extension and the court's order of 9-21-21, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion).

15. After filing the fourth/most recent request for extension, which in addition to the continuing impact of the pandemic included additional reasons for a final extension including but not limited to the discovery of a recent change in location of one of the defendants among other things, I had hoped the court would allow my request under the circumstances but when I did not see any ruling by the court as of end of the business day on October 22, 2021, I had moved to protect myself by using the last known address that I had, to serve process by mailing under the long arm statute on October 22, 2021 before expiration of the deadline.

16. Hence, I was/am in compliance with the service of process deadline and the court's 9-21-21 order, pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b), which states that "service is complete upon mailing

17. On 10-28-21, I filed an affidavit of service informing the court that I timely served process.

18. The deadline for the defendants to respond to the summons was 11-12-21.

19. I subsequently received confirmation from the defendants that they received service of process.

20. On 11-12-21, I submitted a return of service/supplemental affidavit of service in this court. This was done by e-filing.

21. Also, I submitted an amended complaint[2] in this court at or around 8:42am on Monday, November 15, 2021. This was also done by e-filing.

---

[1] At the last moment, I was able to fortuitously obtain a summons form by another means.

[2] According to the Massachusetts Rules of Procedure 15(a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading. The defendants in this case have not yet responded and thus this amended complaint being filed is proper.

22. Later, on Monday November 15, 2021, the court staff rejected my two above-noted filings. See court docket entry listing the rejections, thus not accepting the filings.

    a.  This is not only highly irregular, but it is also improper.

    b.  According to the rules of the court, any filing made by a party is to be accepted by the clerk. See Massachusetts Rules of Procedure 79, which states: **"All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number."**

    c.  The clerk cannot reject the filings of a party in this way.

    d.  My filings are legitimate filings for this case. It should have been accepted and docketed by the clerk and then presented to the judge. It is highly irregular and improper for the clerk to reject my filings for my own case.

    e.  Furthermore, it should be noted that I was filing a supplemental affidavit of service/return of service showing that I had timely served process on defendants. This is the first time I have heard of a clerk rejecting a filing under these circumstances. Is the intent to muzzle me from presenting facts that support the affidavit of service that I filed on 10-28-21. Is the intent to prevent me from showing or correcting the error of the court?

    f.  Moreover, the reason given by the clerk staff for rejecting my filings is that "the case was dismissed on 10-28-21." Yet, this is not grounds for rejecting my filings especially my supplemental affidavit of service. A 1-88 dismissal is a ministerial act of dismissal without prejudice that is not based on the merits and can be undone or vacated by the court. If the case in fact had been dismissed on 10-28-21, then I still have the right to submit filings that show that such dismissal was premature or entered in error.

    g.  But at the time, there had been no entry of dismissal on this case. The case status was still "open." There was no clerk's notice of dismissal[3]. There can be no actual dismissal until the clerk's notice of dismissal. If the court intended to effectuate an actual dismissal, then why was no clerk's dismissal entered if the case had been dismissed? And when would the time for appeal begin to be counted if there was no clerk's entry of dismissal? This whole situation is a highly irregular, improper, and violative of the rules. The court or clerk staff has not been following the rules of the court. They are engaging in arbitrary and capricious acts that are evidently intended to deprive me of my rights.

    h.  Because there was no actual dismissal at the time, then even if, assuming arguendo, dismissal was

---

[3] This filing is also to be construed as notice to the clerk/court that no entry of dismissal by clerk's notice has occurred.

a basis to reject my filings, then my filings cannot be rejected here because no actual dismissal had yet occurred. It seems as though the clerk staff was playing games with the court rules and with my case. This is a violation of my constitutional right to due process. As a pro se African American, it is also a violation of my constitutional right to equal protection, especially if it is related to the prior protected activity based on race, as raised concerning this clerk staff/court by my spouse.

23. Similarly, I did not know there was a dismissal because the case was open, and no entry of dismissal had occurred.

24. Given that I had filed my affidavit of service on 10-28-21, I was led to believe that the court read my affidavit of service filed on 10-28-21, which showed proof of service by mailing on 10-22-21, meaning thereby that service was made timely and thus that the court saw my request that the court not dismiss the case for lack of service and observed my request that the court allow time for the defendants to respond as mandated by the rules or allow me time to obtain confirmation of receipt of the mailing by the defendants.

25. In other words, the judge issued an order, on 10-28-21, in response to my motion to extend time to serve process, denying the extension of time and also stating that he was dismissing the complaint. But I on the same date had filed an affidavit of service, stating the following:

> I, the Plaintiff in this case, being duly sworn hereby state that I, under the long arm statute, mailed summons and complaints of the above-captioned case to Defendant Residence Inn Nashua and to Defendant Jennifer Brooks on October 22, 2021, to the last known out of state address that I had for them located in the state New Hampshire at 25 Trafalgar Square, Nashua, NH 03063. Thus, service was complete upon mailing pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b). October 22, 2021 was the deadline to serve process on the Defendants, which was the result of the court's order on 9-21-21 on my third request for an extension of the service of process deadline (NB: up until the time of my third request for extension and the court's order of 9-21-21, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion). After filing the fourth/most recent request for extension, which in addition to the continuing impact of the pandemic included additional reasons for a final extension including but not limited to the discovery of a recent change in location of one of the defendants among other things, I had hoped the court would allow my request under the circumstances but when I did not see any ruling by the court as of end of the business day on October 22, 2021, I had moved to protect myself by using the last known address that I had, to serve process by mailing under the long arm statute on October 22, 2021 before expiration of the deadline. Hence, I certify that I am in compliance with the service of process deadline and the court's 9-21-21 order, pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b), which states that "service is complete upon mailing". **Therefore, based on the rules, when I mailed the documents on October 22, 2021, I met the service of process deadline, in so doing. I have attached a US postal service receipt showing mailing on October 22, 2021, as evidence of the foregoing. I am currently awaiting delivery confirmation from the US post office so that I can provide it to the court as a supplement to this affidavit. The time for the defendants to respond has not passed as yet, which is 20 days from the date of service (i.e., November 11, 2021)1. I am informing the court of the above in the meantime and I ask the court to not dismiss this case for lack service under 1-88 pursuant to the above.**

26. The court then did not enter a clerk's dismissal. I believed that the reason the clerk did not enter dismissal was because of the above affidavit of service filed at the same time that the judge issued his order denying the extension of time. Why else would the clerk not enter dismissal?

27. If the clerk had thus not entered dismissal because of the above affidavit of service, then the clerk cannot now say that the case was dismissed when the clerk did not enter a clerk's notice or entry of dismissal in this case.

28. So again, what is the reason that the clerk did not enter dismissal on this case?

29. Also, the court cannot dismiss the case in a ruling on a motion to extend time. The court has to provide actual notice of entry of dismissal. No dismissal occurred until that happened. In this instance, no such notice or entry of dismissal occurred until 11-16-21. There had to be a separate order of dismissal.

30. NB: The judge's order of 10-28-21 (See again court docket) states the following:

    a. NB: The judge's order of 10-28-21 states the following:

       "The fifth motion to extend time to serve is DENIED. Plaintiff filed the complaint in December 2020 and has received four extensions to serve. In granting the fourth extension, the Court ordered service no later than October 22, 2021. The fifth motion cites a change of address, but waiting ten months to discover a change of address is not good cause. Under Rule 4(j), the Court DISMISSES the complaint. SO ORDERED."

    b. It should also be noted that the court also exaggerated the number of extensions and misstated the facts as a basis for denial of my motion to extend time to serve process. I only received three extensions of time, not four. The motion that the judge denied was not the fifth motion to extend time to serve, it was the fourth motion to extend time to serve. The judge thus misstated the facts and erroneously used that as a basis to deny my motion.

    c. Similarly, the judge evidently twisted around my words that I stated in my motion[4] and misstated the facts, by him saying in his order that I waited "ten months to discover a change of address". This is false. I did not wait 10 months to discover a change in address. I only recently discovered a change of address. The court forgets that I am not a lawyer and don't have the resources to hire someone to track down everyone's change of address. Moreover, because the defendants are out of state, it makes it difficult to track address changes. The court is being unreasonable and hostile for no good reason or for mistaken, faulty or erroneous reasons.

    d. The court also ignored the fact up until the time of my third request for extension, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion. There was a pandemic that has killed millions globally. The court appears to be ignoring that fact. Furthermore, the SJC did not prohibit, after a certain time, the allowance of motions to extend

---

[4] NB: See the wording in my fourth motion to extend time to serve.

time for litigants stating they have been impacted by the pandemic. People are still being impacted in various ways by the pandemic, including medically, financially, situationally, family-wise, etc. I am one of them. The court appears to be taking a heartless callous approach in ignoring this fact.

    e.   The court ignored the fact that it did not provide me a summons. The court evidently failed to take into consideration that I had requested a waiver of indigency for summons and service of process on this case.

    f.   The court ignored the fact that there was a change in one of the defendant's location, that came to my attention only recently. The court's denial of my last request for extension of time was thus draconian and unreasonable. Even if the court allowed only one week (or even 3 days, etc.), it would have been more reasonable than trying to effect a dismissal of the case upon denying the motion to extend time or within the same order denying the motion to extend time. This is procedurally flawed and improper.

31. Yet even so, even upon denying the extension of time, the court should have allowed a moment of time to see if I had in fact served process and would provide an affidavit of service.

32. Similarly, how can the court deny a motion to extend time and dismiss a complaint for lack of service at that same time? This is improper and a premature rush to dismiss the case without due process. A ruling on a motion to extend time is a ruling on that motion to extend time. The adjudication of a1-88 dismissal has to take place separately or after the denial of the motion to extend time. The clerk cannot rely on the footnote to a ruling on a motion to extend time as a basis to say the case has been dismissed. It would be analogous to a judge denying a motion to extend time and ordering a denial of a motion to waive costs in the same order. This is not proper. There had to be a separate order of dismissal, which there was not at the time.

33. So, in sum, on 10-28-21, I informed the court by affidavit of service that I had filed service of process timely and I asked that the court allow time to obtain confirmation of receipt of delivery (at least until the time for the defendants has expired which was on 11-12-21), so that I could file a supplemental affidavit of service with confirmation of receipt of service by the defendants. Then there was no further action by the court for about 20 days. The case had remained opened on the docket. Then on Friday 11-12-21, I filed my supplemental affidavit with proof of service and receipt by the defendants. Why is the filing of my proof of service rejected? This is unheard of. Moreover, even if the case had been technically dismissed, my filing could be treated by the court as a motion to vacate dismissal. Thus, my filing should have been accepted.

34. Either way, I have the right to address the rulings of the court. Furthermore, even if the case was technically dismissed or was correctly dismissed (which it was not), it does not mean that I am barred from seeking reconsideration, clarification or filing other post-judgment motions, or filing a notice of appeal. I cannot

be blocked from filing documents that correct the errors of the court. Why is the clerk or the court so invested in shutting down my case and dismissing my case or keeping my case dismissed? Why not let the defendants respond or let them raise any challenge? If I tell the court that the defendants have confirmed receipt, then why is the court not allowing that to play out? Something is clearly wrong with this picture. The clerk and the court are not following its own rules here. Why is that?

35. To add insult to injury, the court rushed to then enter dismissal on 11-16-21, after receiving my notice and request to not reject my filings, to accept my return of service and amended complaint and motion to stop or rescind dismissal. To this day, the court has not ruled on my motion.

36. I am concerned that this is retaliation because my spouse filed a complaint against certain clerk staff and a judge at Lowell superior court including raising concerns about bias including racial bias. [NB: The clerk staff knows about my spouse and there are several filings in court that have disclosed a marital connection]. It makes no sense why the clerk or the court is behaving so hostile and unreasonable unless it is related to retaliatory animus. These adverse acts are not consistent with court rules. The clerk and the court appear to be going above and beyond to deprive me of my rights.

37. I have requested that my rejected filings be accepted/that the court accept my filings of 11-12-21 and 11-15-21 but that has also been ignored by the judge and has not been ruled upon by the judge to this day

## B. DISMISSAL IS UNFAIR, UNREASONABLE, DRACONIAN AND PUNITIVE UNDER THESE CIRCUMSTANCES

38. To dismiss the case in the way the court did under these circumstances is draconian and punitive.

39. Dismissal is a drastic act that should not be done lightly or capriciously, especially without proper notice and due process.

40. This is totally unfair and unreasonable. This is unfair, draconian, and unjust.

41. If courts operate this way, it will destroy public confidence in the legal system.

42. [NB: Rule 2.2 of the Massachusetts judicial code of conduct states that: "A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Under the Comment section, the code of conduct instructs judges: [1] to show impartiality and fairness to all parties, and…must be objective and open-minded; [2]…to interpret and apply the law without regard to whether the judge approves or disapproves of the law in question; and to conduct themselves without [3]…fraud, corrupt motive, or clear indication that the judge's conduct was in bad faith or otherwise violates this Code…"].

43. The case was dismissed prematurely and unfairly.

44. NB: The entry of a judgment of 1-88 dismissal is a significant event that threatens to severely affect the rights of the plaintiff. The rights of a plaintiff will be significantly affected if the plaintiff's case is dismissed for lack of service. Moreover, this 1-88 dismissal could create some statute of limitations issues, should the case have to be re-filed. Hence, the effect of the 1-88 dismissal could result in a dismissal with prejudice,

9

at least with respect to some of the claims. Thus, these are harms that may not be curable.

45. The above acts by Judge Wall constitutes a violation of law and the code of judicial conduct.

---

## IV. LEGAL BASIS FOR RECUSAL OF JUDGE WALL

---

### A. RECUSAL BASIS DERIVED FROM CONSTITUTIONAL AND CASE LAW GROUNDS

46. The principle of impartial justice is expressly enshrined in article 29 of the Massachusetts Constitution Declaration of Rights: It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit. "A rigid adherence to that principle is essential to the maintenance of free institutions…It may never be relaxed."

47. Article 29 is "at least as rigorous in exacting high standards of judicial propriety" as is the due process clause of the Fourteenth Amendment. Article 29 extends not only to judges but also to all persons authorized to decide the rights of litigants, including masters, auditors, and presumably clerk-magistrates.

48. See also King v. Grace, 293 Mass. 244, 247 (1936). "A fair trial in a fair tribunal is a basic requirement of due process." Caperton v. A.T. Massey Coal Co., Inc., -- U.S. --, --, 129 S.Ct. 2252, 2259 (2009) (citing and quoting from In re Murchison, 349 U.S. 133, 136 (1955)); Weiss v. United States, 210 U.S. 163, 178 (1994). "Not only is a biased decisionmaker constitutionally unacceptable, but 'our system of law has always endeavored to prevent even the probability of unfairness…'".

49. In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable. See Withrow v. Larkin, 421 U.S. 35, 47 (1975). "Justice must satisfy the appearance of justice" (Offutt v. United States, 348 U.S. 11, 14 (1954)), and therefore, "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused denies the latter due process of law." Tumey v. Ohio, 273 U.S. 510, 532 (1927), cited and quoted in Caperton v. A.T. Massey Coal Co., Inc., -- U.S. --, --, 129 S.Ct. 2252, 2260 (2009). See Ward v. Village of Monroeville, 409 U.S. 57, 59 (1972).

50. So important is the appearance of fairness that it may require a judge to disqualify himself even though he has no actual bias or prejudice and would in fact do "his very best to weigh the scales of justice equally." Taylor v. Hayes, 418 U.S. 488, 501 (1974).

51. The reason for such safeguards is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.

52. The framers of the Fourteenth Amendment stressed that the due process and equal protection clauses created a right to a fair and impartial hearing and trial. Courts have repeatedly held that an impartial judge is an indispensable element of that right.

53. The basic requirement of constitutional due process is a fair and impartial tribunal, and the Supreme Court has consistently enforced this basic procedural right.

54. When judges act on the basis of their prior predilections, ignore facts, and even make up supposed counter facts, they destroy a central tenet of the judicial system: decision of cases based on facts rather than prejudice. They also destroy faith in the judicial system. The general public will not continue to give its trust and confidence to a system which makes decisions by ignoring truths that are plain for all to see. And persons who are directly and personally injured by such decisions will be bitter toward a system which they rightly feel denied them a fair chance after promising it to them.

55. This bad situation is made even worse when disregard of facts is combined with other "features" that often are concomitants. Judges with a predilection for one side can and too often do suppress contrary truth by denying discovery or using one pretext or another for the denial on important motions.

56. Bias or prejudice on the part of a judge may exhibit itself prior to the trial by acts or statements on his part. Or it may appear during the trial by reason of the actions of the judge in the conduct of the trial. If it is known to exist before the trial it furnishes the basis for disqualification of the judge to conduct the trial.

57. Plaintiff's due process and equal protection rights under the Fifth and Fourteenth Amendments were, and continue to be, severely abridged in his civil suit. The judge's strong appearance of impropriety results in his impartiality being reasonably questioned and has affected the outcome of certain motions. Plaintiff has serious concerns that all of this has and will continue to result in denying plaintiff a trial on the merits of his case.

58. It may be noted that many courts now admit prior rulings in considerations of bias and prejudice. Because the goal is to seek to protect the public's confidence in the judiciary, the inquiry should focus not on whether the judge actually harbored subjective bias, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias. United States v. Antar, 53 F.3d 568 (3d Cir.1995) at 574; United States v. Bertoli , 40 F.3d 1384, 1412 (3d Cir.1994); Alexander v. Primerica Holdings, Inc., 10 F.3d 155 (3d Cir. 1993) at 162; Haines v. Liggett Group, Inc., 975 F.2d 81, 98 (3d Cir.1992). In re Antar, 71 F.3d 97 (3rd Cir. 1995), at 101.

## B.  BASIS FOR RECUSAL DERIVED FROM CODE OF JUDICIAL CONDUCT

59. Judge Wall has engaged in disregard of the law, abuse of power and failure to treat litigants fairly. His conduct shows disregard of, or indifference to, fact or law, which has resulted in injustice.

60. This case was dismissed prematurely. The case was dismissed without notice from the court.

11

61. Judge Wall did not exercise good faith, did not give the issue fair consideration, but was most arbitrary and capricious in exercising his discretion, and did not act in good faith and abused his power in a tyrannical and unlawful manner. See Gildea v. Ellershaw, 363 Mass. 800 (1973) (Court found that there was a lack of exercise of good faith, fair consideration, and the arbitrary and capricious exercise of discretion while not acting in good faith and abusing power in a tyrannical and unlawful manner).

62. The legal system should not operate so cavalierly and unfairly to deprive pro se plaintiffs of their rights or of the opportunity to have their full day in court and/or to have a fair and impartial trial on the merits. If courts operate this way, it will destroy public confidence in the legal system.

63. Judge Wall's conduct falls far short of conduct that promotes "public confidence in the integrity and impartiality of the judiciary."  See In re DeSaulnier, 360 Mass. 787 (1972) ("Judge DeSaulnier's conduct…falls far short of promoting "public confidence in the integrity and impartiality of the judiciary.")

    a. See In re DeSaulnier, 360 Mass. 787 (1972) ("A judge should show respect for and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.")

    b. See In re DeSaulnier, 360 Mass. 787 (1972) ("Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. The judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen, and he should do so freely and willingly.").

    c. See In re DeSaulnier, 360 Mass. 787 (1972) (Massachusetts judge are required to "possess the perfect confidence of the community, that he bear not the sword in vain.").

64. The SJC has stated, In re Brown, 427 Mass. 146 (1998), the following:

    > Judges wield an awesome and final power over the liberty and property of their fellow citizens. This power is the more awesome because in this Commonwealth, as in the Federal system, we are neither elected nor subject to recall or retention elections. This power is tolerable in a democracy because judges speak only for reason and the law. As stated in The Federalist No. 78 (Alexander Hamilton), we have "neither force nor will, but merely judgment." For every litigation at least one-half of those involved are likely to come away sorely dissatisfied, and every citizen has reason to apprehend that one day he might be on the losing side of our exercise of judgment. Therefore, this arrangement requires an exacting compact between judges and the citizenry. It is not enough that we know ourselves to be fair and impartial or that we believe this of our colleagues. Our power over our fellow citizens requires that we appear to be so as well…"

65. Similarly, Judge Wall has shown judicial conduct which is without justification in law. It has resulted in the violation of legal rights, including constitutional rights, of an indigent African American pro se plaintiff before him. These constitute serious improprieties.

    a. See In re Scott, 377 Mass. 364 (1979) ("Here the judge…has followed "a course of judicial conduct" which was without justification in law…It resulted in the violation of legal rights, including constitutional rights, of the parties before her. Individuals were denied fair treatment and often

denied personal freedom in violation of their rights. These individuals were generally indigent and thus the least able among our citizens to protect their rights by resort to higher judicial authority...There were not only distinct acts of misconduct, but the appearance of partiality or bias damaging to public trust in the judicial process. We take a most serious view of these improprieties.").

b. See also In re Brown, 427 Mass. 146 (1998) ("[a] judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."..."The Code of Judicial Conduct requires judges in this Commonwealth to exhibit the highest standards of professional conduct." Matter of Donohue, 390 Mass. 514, 518 (1983)."

c. The SJC has also stated, that instances and patterns of bias or abuses by a judge can be determined by the record. See In re the Enforcement of a Subpoena, 463 Mass. 162 (2012), (...identifying the judge's outward expressions of partiality or by examining the judge's conduct over time through which that partiality or other abuse has become apparent.); See Pratt v. Gardner, 2 Cush. 63, 69-70 (1848) (best and conclusive evidence of judge's own convictions is his "recorded judgment"). See Miller, Bad Judges, 83 Tex. L. Rev. *177431, 445-447 (2004) (collecting cases in which judges were disciplined for bias based on statements in public record); See also Matter of Donohue, 390 Mass. 514, 518, 522 (1983) (public censure for six separate acts that showed pattern of "wilful disregard of the law and not mere error of law"); Matter of Scott, 377 Mass. 364, 366-367, 370-382 (1979) (cataloging twenty-nine instances in which judge disregarded law...).

d. See also In re Markey, 427 Mass. 797 (1998) ("judge...exhibited a wilful disregard of the law and not merely an error of law. See Matter of King, supra at 608; Matter of Troy, 364 Mass. 15, 40 (1973). judge...engaged in a "pattern of disregard or indifference". Matter of Scott, supra at 367.; ...judge nowhere recognize that those "deviations" also deprived numerous defendants of a substantial constitutional right.")

e. Similarly, in these circumstances, the issue of recusal involves the disregard of law and rules of the court. Judge Wall's conduct has been improper and is in disregard of my right to fairness and due process.

f. See also In re King, 409 Mass. 590 (1991) (The Judge also argues that his decisions...are inappropriate for consideration by the Commission because they were based on the exercise of his legal judgment and reviewable on appeal. The Judge is correct that, generally, judges are immune from sanctions based solely on appealable errors of law or abuses of discretion. See Matter of Troy, 364 Mass. 15, 40 (1973). This is not an unqualified proposition, however; we will impose sanctions upon judges who utterly disregard law and established rules of practice in the face of contrary orders. See id. at 40-41. In this case, the implication of the Judge's argument is that a judge can make a single judicial decision for expressly racist and vindictive reasons and, so long as he does not make a habit of it, neither the Commission nor this court (outside of the usual avenues of appeal) can respond to that action. That is an implication that we will not countenance. It may be that the defendants in these cases had valid grounds on which to challenge the Judge's decisions... It does not follow, however, that there was no judicial misconduct...).

66. **Therefore, if the above conduct is susceptible to sanctions by the Judicial Commission, then it serves as grounds for recusal.**

67. When combined together, these violations or improper conduct rises to the level of lack of impartiality that warrant recusal. Even if Judge Wall personally thinks he can still be fair, the appearance of impropriety from the above is inescapable.

68. The collective impact of these acts prevents me from obtaining a fair and impartial administration of justice in this case.

13

69. I am concerned that this judge will not be fair to me and that he will find ways to rule against me.

70. Consequently, this is why I am filing this motion to recuse Judge Wall.

## V. CONCLUSION

71. On a final note, it saddens me to have to write this complaint, but I feel it is my duty to do so not only for me but for those who would come after me, who may not be able to or be willing to take the risk in taking a stand for what is right.

72. Clearly, I risk retaliation (or further retaliation) and the subtle ways in which a judge could try to exact revenge, including using all of the brain power, smarts, and legal training to respond in a way to trivialize my concerns or to skew the facts in a way to make me seem frivolous. I have a business background in systems thinking and process improvement consulting for organizations, among other things. I know it is possible for "games to be played" and to be outmaneuvered by those who know how to game the system and avoid accountability.

73. But the issues raised herein generally imply that the legal system is in a state of crisis. It used to be that judges were symbols of justice, good nature, and integrity and that carried a high calling to ensure the good of society and the peaceful administration of all that right, true, fair, and just.  Today, this is fast no longer remaining true as more and more people view judges as biased and political (take for examples recent fights over the supreme court appointments such as with Bret Kavanaugh or Amy Coney Barrett).

74. At some point, the system is going to break if more and more people like me (even smart and educated people) no longer trust the courts as place for the fair administration of justice.

WHEREFORE, I hereby humbly request the court grant my request and/or other relief that the court deems just and proper.

### SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

Respectfully submitted by,
Plaintiff Natalie Anderson

679 Washington Street, Suite # 8-206
Attleboro, MA 02703

Dated: December 16, 2021

14

12

L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,                         **RECEIVED**
v.
Residence Inn Nashua, et al; Defendants.
CIVIL ACTION NO.: 2081CV02957                        11/26/2021

### SECOND MOTION TO VACATE 1-88 DISMISSAL

1. I, the plaintiff, hereby ask that the court **vacate** the 1-88 dismissal on 11-16-21, and **allow** the case to proceed. See __Exhibit A__ for current court docket.
2. **Grounds for my request is as follows:**
3. The deadline to serve process was 10-22-21.
4. I filed for an extension of time to serve process but the court denied it.
5. So, under the long arm statute, I mailed summons and complaints of the above-captioned case to Defendant Residence Inn Nashua and to Defendant Jennifer Brooks on October 22, 2021, to the last known out of state address that I had for them located in the state New Hampshire at 25 Trafalgar Square, Nashua, NH 03063.
6. Thus, service was complete upon mailing pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b).
7. October 22, 2021 was the deadline to serve process on the Defendants, which was the result of the court's order on 9-21-21 on my third request for an extension of the service of process deadline (NB: up until the time of my third request for extension and the court's order of 9-21-21, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion).
8. After filing the fourth/most recent request for extension, which in addition to the continuing impact of the pandemic included additional reasons for a final extension including but not limited to the discovery of a recent change in location of one of the defendants among other things, I had hoped the court would allow my request under the circumstances but when I did not see any ruling by the court as of end of the business day on October 22, 2021, I had moved to protect myself by using the last known address that I had, to serve process by mailing under the long arm statute on October 22, 2021 before expiration of the deadline.
9. Hence, I was/am in compliance with the service of process deadline and the court's 9-21-21 order, pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b), which states that "service is complete upon mailing
10. On 10-28-21, I filed an affidavit of service informing the court that I timely served process.
11. The deadline for the defendants to respond to the summons was 11-12-21.
12. I subsequently received confirmation from the defendants that they received service of process.
13. On 11-12-21, I submitted a return of service/supplemental affidavit of service in this court. This was done by e-filing.
14. Also, I submitted an amended complaint[1] in this court at or around 8:42am on Monday, November 15, 2021. This was also done by e-filing.
15. Later, on Monday November 15, 2021, the court staff rejected my two above-noted filings. See court docket entry listing the rejections, thus not accepting the filings.
    a. This is not only highly irregular, but it is also improper.
    b. According to the rules of the court, any filing made by a party is to be accepted by the clerk. See Massachusetts Rules of Procedure 79, which states: "**All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be**

---

[1] According to the Massachusetts Rules of Procedure 15(a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading. The defendants in this case have not yet responded and thus this amended complaint being filed is proper.

1

TK

entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number."

c. The clerk cannot reject the filings of a party in this way.

d. My filings are legitimate filings for this case. It should have been accepted and docketed by the clerk and then presented to the judge. It is highly irregular and improper for the clerk to reject my filings for my own case.

e. Furthermore, it should be noted that I was filing a supplemental affidavit of service/return of service showing that I had timely served process on defendants. This is the first time I have heard of a clerk rejecting a filing under these circumstances. Is the intent to muzzle me from presenting facts that support the affidavit of service that I filed on 10-28-21. Is the intent to prevent me from showing or correcting the error of the court?

f. Moreover, the reason given by the clerk staff for rejecting my filings is that "the case was dismissed on 10-28-21." Yet, this is not grounds for rejecting my filings especially my supplemental affidavit of service. A 1-88 dismissal is a ministerial act of dismissal without prejudice that is not based on the merits and can be undone or vacated by the court. If the case in fact had been dismissed on 10-28-21, then I still have the right to submit filings that show that such dismissal was premature or entered in error.

g. But at the time, there had been no entry of dismissal on this case. The case status was still "open." There was no clerk's notice of dismissal[2]. There can be no actual dismissal until the clerk's notice of dismissal. If the court intended to effectuate an actual dismissal, then why was no clerk's dismissal entered if the case had been dismissed? And when would the time for appeal begin to be counted if there was no clerk's entry of dismissal? This whole situation is a highly irregular, improper, and violative of the rules. The court or clerk staff has not been following the rules of the court. They are engaging in arbitrary and capricious acts that are evidently intended to deprive me of my rights.

h. Because there was no actual dismissal at the time, then even if, assuming arguendo, dismissal was a basis to reject my filings, then my filings cannot be rejected here because no actual dismissal had yet occurred. It seems as though the clerk staff was playing games with the court rules and with my case. This is a violation of my constitutional right to due process. As a pro se African American, it is also a violation of my constitutional right to equal protection, especially if it is related to the prior protected activity based on race, as raised concerning this clerk staff/court by my spouse.

16. Similarly, I did not know there was a dismissal because the case was open, and no entry of dismissal had occurred.

17. Given that I had filed my affidavit of service on 10-28-21, I was led to believe that the court read my affidavit of service filed on 10-28-21, which showed proof of service by mailing on 10-22-21, meaning thereby that service was made timely and thus that the court saw my request that the court not dismiss the case for lack of service and observed my request that the court allow time for the defendants to respond as mandated by the rules or allow me time to obtain confirmation of receipt of the mailing by the defendants.

18. In other words, the judge issued an order, on 10-28-21, in response to my motion to extend time to serve process, denying the extension of time and also stating that he was dismissing the complaint. But I on the same date had filed an affidavit of service, stating the following:

> I, the Plaintiff in this case, being duly sworn hereby state that I, under the long arm statute, mailed summons and complaints of the above-captioned case to Defendant Residence Inn Nashua and to Defendant Jennifer Brooks on October 22, 2021, to the last known out of state address that I had for them located in the state New Hampshire at 25 Trafalgar Square, Nashua, NH 03063. Thus, service was complete upon mailing pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b). October 22, 2021 was the deadline to serve process on the Defendants, which was the result of the court's order on 9-21-21 on my third request for an extension of the service of process deadline (NB: up until the time of my third request for extension and the court's order of 9-21-21, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion). After filing the fourth/most recent request for extension, which in addition to the continuing impact of the pandemic included additional reasons for a final extension including but not limited to the discovery of a recent change in location of

---

[2] This filing is also to be construed as notice to the clerk/court that no entry of dismissal by clerk's notice has occurred.

one of the defendants among other things, I had hoped the court would allow my request under the circumstances but when I did not see any ruling by the court as of end of the business day on October 22, 2021, I had moved to protect myself by using the last known address that I had, to serve process by mailing under the long arm statute on October 22, 2021 before expiration of the deadline. Hence, I certify that I am in compliance with the service of process deadline and the court's 9-21-21 order, pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b), which states that "service is complete upon mailing". **Therefore, based on the rules, when I mailed the documents on October 22, 2021, I met the service of process deadline, in so doing. I have attached a US postal service receipt showing mailing on October 22, 2021, as evidence of the foregoing. I am currently awaiting delivery confirmation from the US post office so that I can provide it to the court as a supplement to this affidavit. The time for the defendants to respond has not passed as yet, which is 20 days from the date of service (i.e., November 11, 2021)1. I am informing the court of the above in the meantime and I ask the court to take action in this case for lack service under 1-88 pursuant to the above.**

19. The court then did not enter a clerk's dismissal. I believed that the reason the clerk did not enter dismissal was because of the above affidavit of service filed at the same time that the judge issued his order denying the extension of time. Why else would the clerk not enter dismissal?

20. If the clerk had thus not entered dismissal because of the above affidavit of service, then the clerk cannot now say that the case was dismissed when the clerk did not enter a clerk's notice or entry of dismissal in this case.

21. So again, what is the reason that the clerk did not enter dismissal on this case?

22. Also, the court cannot dismiss the case in a ruling on a motion to extend time. The court has to provide actual notice of entry of dismissal. No dismissal occurred until that happened. In this instance, no such notice or entry of dismissal occurred until 11-16-21. There had to be a separate order of dismissal.

23. NB: The judge's order of 10-28-21 (See again court docket) states the following:

    a. NB: The judge's order of 10-28-21 states the following:

       "The fifth motion to extend time to serve is DENIED. Plaintiff filed the complaint in December 2020 and has received four extensions to serve. In granting the fourth extension, the Court ordered service no later than October 22, 2021. The fifth motion cites a change of address, but waiting ten months to discover a change of address is not good cause. Under Rule 4(j), the Court DISMISSES the complaint. SO ORDERED."

    b. It should also be noted that the court also exaggerated the number of extensions and misstated the facts as a basis for denial of my motion to extend time to serve process. I only received three extensions of time, not four. The motion that the judge denied was not the fifth motion to extend time to serve, it was the fourth motion to extend time to serve. The judge thus misstated the facts and erroneously used that as a basis to deny my motion.

    c. Similarly, the judge evidently twisted around my words that I stated in my motion[3] and misstated the facts, by him saying in his order that I waited "ten months to discover a change of address". This is false. I did not wait 10 months to discover a change in address. I only recently discovered a change of address. The court forgets that I am not a lawyer and don't have the resources to hire someone to track down everyone's change of address. Moreover, because the defendants are out of state, it makes it difficult to track address changes. The court is being unreasonable and hostile for no good reason or for mistaken, faulty or erroneous reasons.

    d. The court also ignored the fact up until the time of my third request for extension, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion. There was a pandemic that has killed millions globally. The court appears to be ignoring that fact. Furthermore, the SJC did not prohibit, after a certain time, the allowance of motions to extend time for litigants stating they have been impacted by the pandemic. People are still being impacted in various ways by the pandemic, including medically, financially, situationally, family-wise, etc. I am one of them. The court appears to be taking a heartless callous approach in ignoring this fact.

    e. Moreover, the court also previously approved me for an indigent waiver for filing fees, summons and service of process. The court evidently failed to take into consideration that I have a waiver of indigency for service of process on this case.

---

[3] NB: See the wording in my fourth motion to extend time to serve.

3

f.  The court ignored the fact that it did not provide me a summons. The court ignored the fact that there was a change in one of the defendant's location, that came to my attention only recently. The court's denial of my last request for extension of time was thus draconian and unreasonable. Even if the court allowed only one week (or even 3 days, etc.), it would have been more reasonable than trying to effect a dismissal of the case upon denying the motion to extend time or within the same order denying the motion to extend time. This is procedurally flawed and improper.

24. Yet even so, even upon denying the extension of time, the court should have allowed a moment of time to see if I had in fact served process and would provide an affidavit of service.

25. Similarly, how can the court deny a motion to extend time and dismiss a complaint for lack of service at that same time? This is improper and a premature rush to dismiss the case without due process. A ruling on a motion to extend time is a ruling on that motion to extend time. The adjudication of a1-88 dismissal has to take place separately or after the denial of the motion to extend time. The clerk cannot rely on the footnote to a ruling on a motion to extend time as a basis to say the case has been dismissed. It would be analogous to a judge denying a motion to extend time and ordering a denial of a motion to waive costs in the same order. This is not proper. There had to be a separate order of dismissal, which there was not at the time.

26. So, in sum, on 10-28-21, I informed the court by affidavit of service that I had filed service of process timely and I asked that the court allow time to obtain confirmation of receipt of delivery (at least until the time for the defendants has expired which was on 11-12-21), so that I could file a supplemental affidavit of service with confirmation of receipt of service by the defendants. Then there was no further action by the court for about 20 days. The case had remained opened on the docket. Then on Friday 11-12-21, I filed my supplemental affidavit with proof of service and receipt by the defendants. Why is the filing of my proof of service rejected? This is unheard of. Moreover, even if the case had been technically dismissed, my filing could be treated by the court as a motion to vacate dismissal. Thus, my filing should have been accepted.

27. Either way, I have the right to address the rulings of the court. Furthermore, even if the case was technically dismissed or was correctly dismissed (which it was not), it does not mean that I am barred from seeking reconsideration, clarification or filing other post-judgment motions, or filing a notice of appeal. I cannot be blocked from filing documents that correct the errors of the court. Why is the clerk or the court so invested in shutting down my case and dismissing my case or keeping my case dismissed? Why not let the defendants respond or let them raise any challenge? If I tell the court that the defendants have confirmed receipt, then why is the court not allowing that to play out? Something is clearly wrong with this picture. The clerk and the court are not following its own rules here. Why is that?

28. To add insult to injury, the court rushed to then enter dismissal on 11-16-21, after receiving my notice and request to not reject my filings, to accept my return of service and amended complaint and motion to stop or rescind dismissal. To this day, the court has not ruled on my motion. See **Exhibit B.**

29. I am concerned that this is retaliation because my spouse filed a complaint against certain clerk staff and a judge at Lowell superior court including raising concerns about bias including racial bias. [NB: The clerk staff knows about my spouse and there are several filings in court that have disclosed a marital connection]. It makes no sense why the clerk or the court is behaving so hostile and unreasonable unless it is related to retaliatory animus. These adverse acts are not consistent with court rules. The clerk and the court appear to be going above and beyond to deprive me of my rights.

30. I request that my rejected filings be accepted/that the court accept my filings of 11-12-21 and 11-15-21.

31. I also request that the court vacate dismissal, and allow the case to proceed.

32. NB: Please grant a pro se liberal construction to my writings.

**I hereby depose and saith under oath that the above statements are true and correct to the best of my knowledge, belief and recollection, and sign under the pains and penalties of perjury.**

Respectfully submitted by,

_Natalie Anderson_

Dated: November 26, 2021

Natalie Anderson

4

Commonwealth of Massachusetts

# AFFIDAVIT OF INDIGENCY

2081CV2a57

RECEIVED

AND REQUEST FOR WAIVER, SUBSTITUTION
OR STATE PAYMENT OF FEES & COSTS

11/16/21

*(Note: If you are currently confined in a prison or jail and are not seeking immediate release under G.L. c. 248 §1, but you are suing correctional staff and wish to request court payment of "normal" fees (for initial filing and service), do not use this form. Obtain separate forms from the clerk.)*

| Middlesex superior court | Anderson v. Residence Inn Nashua, et al |
|---|---|
| Court | Case Name and Number (if known) |

Name of applicant: **Natalie Anderson**

Address: **679 Washington Street, #8-206    Attleboro    MA**

(Street and number)          (City or town)          (State and Zip)

SECTION 1:   Under the provisions of General Laws, Chapter 261, Sections 27A-27G, I swear (or affirm) as follows:
**I AM INDIGENT** in that (*check only one* ):

☐(A)  I receive public assistance under (*check form of public assistance received*):

☐ Transitional Aid to Families with Dependent Children (TAFDC)     ■ Medicaid (MassHealth)

☐ Emergency Aid to Elderly, Disabled or Children (EAEDC)     ☐ Supplemental Security Income (SSI)

☐ Massachusetts Veterans Benefits Programs; **or**

☐(B)  My income, less taxes deducted from my pay, is $ _____ per ☐week ☐biweekly ☐month ☐year
(*check the period that applies*)  for a household of _____ persons, consisting of myself and _____ dependents;
which income is at or below the court system's poverty level; (*Note: The court system's poverty levels for households of various sizes must be posted in this courthouse. If you cannot find it, ask the clerk or check online at: https://www.mass.gov/doc/poverty-threshold-guidelines/download. The court system's poverty level is updated each year.*)(List any other available household income for the checked period on this line: $ _____ ); **or**

☐(C)  I am unable to pay the fees and costs of this proceeding, or I am unable to do so without depriving myself
or my dependents of the necessities of life, including food, shelter and clothing.

IF YOU CHECKED (C), YOU MUST ALSO COMPLETE THE SUPPLEMENT TO THE AFFIDAVIT OF
INDIGENCY.

<u>SECTION 2:</u>   *(Note: In completing this form, please be as specific as possible as to fees and costs known at the time of filing this request. A supplementary request may be filed at a later time, if necessary.)*

I request that the following **NORMAL FEES AND COSTS** be waived (not charged) by the court, or paid by the state, or that the court order that a document, service or object be substituted at no cost (or a lower cost, paid for by the state): *(Check all that apply and, in any "$____" blank, indicate your best guess as to the cost, **if known**.)*

☐ Filing fee and any surcharge. $ _____

☐ Filing fee and any surcharge for appeal. $ _____

☑ Fees or costs for serving court summons, witness subpoenas or other court papers. $ _____

☐ Other fees or costs of $ _____ for *(specify)*: _____

_____

☐ Substitution *(specify)*: _____

_____


<u>SECTION 3:</u>   I request that the following **EXTRA FEES AND COSTS** either be waived (not charged), substituted or paid for by the state:

☐ Cost, $ _____, of expert services for testing, examination, testimony or other assistance *(specify)*:

_____

☐ Cost, $ _____, of taking and/or transcribing a deposition of *(specify name of person)*:

_____

☐ Cassette copies of tape recording of trial or other proceeding, needed to prepare appeal for applicant **not** represented by Committee for Public Counsel Services (CPCS-public defender).

☐ Appeal bond

☐ Cost, $ _____, of preparing written transcript of trial or other proceeding

☐ Other fees and costs, $ _____, for *(specify)*: _____

_____


☐ Substitution *(specify)* _____

| Date signed | Signed under the penalties of perjury |
|---|---|
| 11/16/21 | x— *Abbie A̶i̶d̶* |

**By order of the Supreme Judicial Court, all information in this affidavit is CONFIDENTIAL. Except by special order of a court, it shall not be disclosed to anyone other than authorized court personnel, the applicant, applicant's counsel or anyone authorized in writing by the applicant.**

This form prescribed by the Chief Justice of the SJC pursuant to G.L. c. 261, § 27B. Promulgated March  , 2003. Fillable PDF created August 2013.

**Continuation of Request for Waiver of Costs/Affidavit of Indigency**
**[NB: This is an attachment to the Request for Waiver of Costs/Affidavit of Indigency. Do not separate. This is to be impounded by operation of statute and by order of the SJC.]**
By Natalie Anderson

1. On Friday, November 12, 2021, I submitted a return of service/supplemental affidavit of service in this court. This was done by e-filing.

2. Also, I submitted an amended complaint in this court at or around 8:42am on Monday, November 15, 2021. This was also done by e-filing.

3. NB: According to the Massachusetts Rules of Procedure 15(a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading. The defendants in this case have not yet responded and thus this amended complaint was properly filed.

4. My supplemental affidavit of service/return of service shows that I had timely served process on defendants.

5. On 10-28-21, I informed the court by affidavit of service that I had filed service of process timely and I asked that the court allow time to obtain confirmation of receipt of delivery (at least until the time for the defendants has expired which was on 11-12-21), so that I could file a supplemental affidavit of service with confirmation of receipt of service by the defendants. Then, there was no further action by the court for the last 20 days. The case has remained opened on the docket. Then on Friday 11-12-21, I filed my supplemental affidavit with proof of service and receipt by the defendants. My supplemental affidavit of service was thus timely in accordance with the rules of procedure.

6. Therefore, also my amended complaint was also timely to be filed once as a matter of course. There was no entry of dismissal by the court in this case, at that time, and there was no responsive pleading by the defendants in this case, at that time.

7. In that amended complaint:
   a. I clarified the Defendant Residence Inn Nashua as a tradename for Residence Inn By Marriott of Nashua and other entities operating behind it.
   b. I also added two new defendants as follows:
      i. Marriott International, Inc. Marriott is the parent franchise company of Residence Inn By Marriott of Nashua or simply Residence Inn Nashua. [NB: Marriott International Inc. was referenced as a party in the original complaint but was not formally included in the caption as a party. This was an oversight. The amended complaint corrects that oversight.]
      ii. True North Hotel Group is the operations management company and/or also the development company-owner of Residence Inn By Marriott of Nashua hotel property and thus True North Hotel Group is a real party of interest behind Residence Inn Nashua tradename.
      iii. NB: Thus, they are proper parties in interest to be added to the complaint by amendment.

8. I plan to serve a new summons and the amended complaint by mailing the amended complaint to Defendant Marriott International, Inc at 10400 Fernwood Road, Bethesda, Maryland 20817. [NB: Under the rules of procedure, I have 90 days to serve this new defendant, but I intend to promptly serve this new defendant as soon as possible.]

9. I plan to also serve a new summons and the amended complaint by mailing the amended complaint to Defendant True North Hotel Group at 7300 West 110th Street, Suite 990, Overland Park, Kansas 66210. [NB: Under the rules of procedure, I have 90 days to serve this new defendant, but I intend to promptly serve this new defendant as soon as possible.]

10. I am this filing a motion to waive costs for service to the new defendants, so that upon approval by the court, I can execute service of process promptly thereafter upon the two new defendants.

11. I will be filing an affidavit of service/return of service pertaining to the new defendants after service is completed for the new defendants.

12. NB: I have already served the amended complaint upon the original defendants (Defendant Residence Inn

1

Nashua and Defendant Jennifer Brooks).

Respectfully submitted by,

Natalie Anderson

Dated: November 16, 2021

2

| JUDGMENT OF DISMISSAL UNDER STANDING ORDER 1-88 | DOCKET NUMBER 2081CV02957 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME **Anderson, Natalie vs. Residence Inn Nashua et al** | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: File Copy | | COURT NAME & ADDRESS Middlesex Superior - Lowell 370 Jackson Street Lowell, MA 01852 |

This action came on before the Court, pursuant to Standing Order 1-88, and it appearing that service of process has not been completed upon the defendant(s) named below, it is **ORDERED and ADJUDGED** that the complaint is hereby dismissed, without prejudice, with respect to said defendant(s).

**Defendant(s):**   **Residence Inn Nashua**

   **Jennifer Brooks**

| DATE ISSUED 11/16/2021 | CLERK OF COURTS **Michael A. Sullivan, Clerk of Court** | ASSISTANT CLERK **X** | SESSION PHONE# |
|---|---|---|---|

Date/Time Printed: 11-16-2021 09:50:42

SCV12R 11/2014

9

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                        SUPERIOR COURT DEPARTMENT

Natalie Anderson, Plaintiff,

v.                                            **RECEIVED**

Residence Inn Nashua, et al; Defendants.
                                                    11/16/2021
CIVIL ACTION NO.: 2081CV02957

## NOTICE/LETTER TO CLERK OF COURT OF THE IRREGULARITY OF THE CLERK STAFF IMPROPERLY REJECTING PLAINTIFF'S FILINGS [WITH REQUEST TO THE CLERK TO CEASE THESE IRREGULARITIES] AND MOTION TO CLERK/COURT TO ACCEPT THE FILINGS OF 11-12-21 AND 11-15-21 AND/OR IN THE ALTERNATIVE MOTION TO VACATE 1-88 DISMISSAL

1. I, the plaintiff, hereby provide this notice[1] to the clerk of court/the court of the highly irregular act of the clerk staff rejecting my filings, which is improper and in violation of the rules of the court. I ask that the clerk **cease** these irregularities forthwith.

2. I also hereby request that the clerk/court **accept** my filings of 11-12-21 and 11-15-21, and/or in the alternative, I ask that the court **overturn or vacate** any possible dismissal, and **allow** the case to proceed.

3. **Grounds for my requests are as follows:**

4. On Friday, November 12, 2021, I submitted a return of service/supplemental affidavit of service in this court. This was done by e-filing. See **Exhibit 2.**

5. Also, I submitted an amended complaint[2] in this court at or around 8:42am on Monday, November 15, 2021. This was also done by e-filing. See **Exhibit 3.**

6. Late, on Monday November 15, 2021, the court staff rejected my two above-noted filings. See **Exhibit 4.** for court docket entry listing the rejections, thus not accepting the filings.

7. This is not only highly irregular, but it is also improper.

8. According to the rules of the court, any filing made by a party is to be accepted by the clerk. See Massachusetts Rules of Procedure 79, which states: "**All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number.**"

9. The clerk cannot reject the filings of a party in this way.

10. My filings are legitimate filings for this case. It should have been accepted and docketed by the clerk and then presented to the judge. It is highly irregular and improper for the clerk to reject my filings for my own case.

11. Furthermore, it should be noted that I was filing a supplemental affidavit of service/return of service showing that I had timely served process on defendants.  This is the first time I have heard of a clerk rejecting a filing under these circumstances. Is the intent to muzzle me from presenting facts that support the affidavit of service that I filed on 10-28-21. Is the intent to prevent me from showing or correcting the error of the court?

12. Moreover, the reason given by the clerk staff for rejecting my filings is that "the case was dismissed on 10-

---

[1] NB: On November 15, 2021, I also sent a letter by email to the clerk of court notifying him of the contents of this filing and requesting relief, but I have not received a response. [See **Exhibit 1** for that email letter]. This filing is a formal follow-up to that email with this filing being made directly on the court record.

[2] According to the Massachusetts Rules of Procedure 15(a) the plaintiff has the automatic right to file an amended complaint once as a matter of course, without leave of court, before the defendant files a responsive pleading. The defendants in this case have not yet responded and thus this amended complaint being filed is proper.

Case 1:22-cv-11553-NMG   Document 31   Filed 10/24/22   Page 148 of 169

28-21." Yet, this is not grounds for rejecting my filings especially my supplemental affidavit of service. A 1-88 dismissal is a ministerial act of dismissal without prejudice that is not based on the merits and can be undone or vacated by the court. If the case in fact had been dismissed on 10-28-21, then I still have the right to submit filings that show that such dismissal was premature or entered in error. But there has been no entry of dismissal on this case. The case status is still "open." There is no clerk's notice of dismissal[3]. There can be no actual dismissal until the clerk's notice of dismissal. If the court intended to effectuate an actual dismissal, then why was no clerk's dismissal entered if the case had been dismissed? And when would the time for appeal begin to be counted if there is no clerk's entry of dismissal? This whole situation is a highly irregular, improper, and violative of the rules. The clerk staff is not following the rules of the court. They are engaging in arbitrary and capricious acts that are evidently intended to deprive me of my rights.

13. Because there has been no actual dismissal, then even if, assuming arguendo, dismissal was a basis to reject my filings, then my filings cannot be rejected here because no actual dismissal has yet occurred. It seems as though the clerk staff is playing games with the court rules and with my case. This is a violation of my constitutional right to due process. As a pro se African American, it is also a violation of my constitutional right to equal protection, especially if it is related to the prior protected activity based on race, as raised concerning this clerk staff/court by my spouse.

14. Similarly, I did not know there was a dismissal because the case was open, and no entry of dismissal occurred.

15. Given that I had filed my affidavit of service on 10-28-21, I was led to believe that the court read my affidavit of service filed on 10-28-21, which showed proof of service by mailing on 10-22-21, meaning thereby that service was made timely and thus that the court saw my request that the court not dismiss the case for lack of service and observed my request that the court allow time for the defendants to respond as mandated by the rules or allow me time to obtain confirmation of receipt of the mailing by the defendants.

16. In other words, the judge issued an order, on 10-28-21, in response to my motion to extend time to serve process, denying the extension of time and also stating that he was dismissing the complaint. But I on the same date had filed an affidavit of service (see **Exhibit 5**), stating the following:

> I, the Plaintiff in this case, being duly sworn hereby state that I, under the long arm statute, mailed summons and complaints of the above-captioned case to Defendant Residence Inn Nashua and to Defendant Jennifer Brooks on October 22, 2021, to the last known out of state address that I had for them located in the state New Hampshire at 25 Trafalgar Square, Nashua, NH 03063. Thus, service was complete upon mailing pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b). October 22, 2021 was the deadline to serve process on the Defendants, which was the result of the court's order on 9-21-21 on my third request for an extension of the service of process deadline (NB: up until the time of my third request for extension and the court's order of 9-21-21, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion). After filing the fourth/most recent request for extension, which in addition to the continuing impact of the pandemic included additional reasons for a final extension including but not limited to the discovery of a recent change in location of one of the defendants among other things, I had hoped the court would allow my request under the circumstances but when I did not see any ruling by the court as of end of the business day on October 22, 2021, I had moved to protect myself by using the last known address that I had, to serve process by mailing under the long arm statute on October 22, 2021 before expiration of the deadline. Hence, I certify that I am in compliance with the service of process deadline and the court's 9-21-21 order, pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b), which states that "service is complete upon mailing". **Therefore, based on the rules, when I mailed the documents on October 22, 2021, I met the service of process deadline, in so doing. I have attached a US postal service receipt showing mailing on October 22, 2021, as evidence of the foregoing. I am currently awaiting delivery confirmation from the US post office so that I can provide it to the court as a supplement to this affidavit. The time for the defendants to respond has not passed as yet, which is 20 days from the date of service (i.e., November 11, 2021)**1. I am informing the court of the above in the meantime and I ask the court to not dismiss this case for lack service under 1-88 pursuant to the above.

17. The court then did not enter a clerk's dismissal. I believed that the reason the clerk did not enter dismissal was because of the above affidavit of service filed at the same time that the judge issued his order denying the extension of time. Why else would the clerk not enter dismissal?

---

[3] This filing is also to be construed as notice to the clerk/court that no entry of dismissal by clerk's notice has occurred.

18. If the clerk had thus not entered dismissal because of the above affidavit of service, then the clerk cannot now say that the case was dismissed when the clerk did not enter a clerk's notice or entry of dismissal in this case.

19. So again, what is the reason that the clerk did not enter dismissal on this case?

20. Also, the court cannot dismiss the case in a ruling on a motion to extend time. The court has to provide actual notice of entry of dismissal. No dismissal has occurred until that happens. In this instance, no such notice or entry of dismissal has occurred. There has to be a separate order of dismissal.

21. NB: The judge's order of 10-28-21 (See again **Exhibit 4** for court docket) states the following:

    a. NB: The judge's order of 10-28-21 states the following:

    > "The fifth motion to extend time to serve is DENIED. Plaintiff filed the complaint in December 2020 and has received four extensions to serve. In granting the fourth extension, the Court ordered service no later than October 22, 2021. The fifth motion cites a change of address, but waiting ten months to discover a change of address is not good cause. Under Rule 4(j), the Court DISMISSES the complaint. SO ORDERED."

    b. It should also be noted that the court also exaggerated the number of extensions and misstated the facts as a basis for denial of my motion to extend time to serve process. I only received three extensions of time, not four. The motion that the judge denied was not the fifth motion to extend time to serve, it was the fourth motion to extend time to serve. The judge thus misstated the facts and erroneously used that as a basis to deny my motion.

    c. Similarly, the judge evidently twisted around my words that I stated in my motion[4] and misstated the facts, by him saying in his order that I waited "ten months to discover a change of address". This is false. I did not wait 10 months to discover a change in address. I only recently discovered a change of address. The court forgets that I am not a lawyer and don't have the resources to hire someone to track down everyone's change of address. Moreover, because the defendants are out of state, it makes it difficult to track address changes. The court is being unreasonable and hostile for no good reason or for mistaken, faulty or erroneous reasons.

    d. The court also ignored the fact up until the time of my third request for extension, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion. There was a pandemic that has killed millions globally. The court appears to be ignoring that fact. Furthermore, the SJC did not prohibit, after a certain time, the allowance of motions to extend time for litigants stating they have been impacted by the pandemic. People are still being impacted in various ways by the pandemic, including medically, financially, situationally, family-wise, etc. I am one of them. The court appears to be taking a heartless callous approach in ignoring this fact.

    e. Moreover, the court also previously approved me for an indigent waiver for filing fees, summons and service of process. The court evidently failed to take into consideration that I have a waiver of indigency for service of process on this case.

    f. The court ignored the fact that it did not provide me a summons. The court ignored the fact that there was a change in one of the defendant's location, that came to my attention only recently. The court's denial of my last request for extension of time was thus draconian and unreasonable. Even if the court allowed only one week (or even 3 days, etc.), it would have been more reasonable than trying to effect a dismissal of the case upon denying the motion to extend time or within the same order denying the motion to extend time. This is procedurally flawed and improper.

22. Yet even so, even upon denying the extension of time, the court should have allowed a moment of time to see if I had in fact served process and would provide an affidavit of service.

23. Similarly, how can the court deny a motion to extend time and dismiss a complaint for lack of service at that same time? This is improper and a premature rush to dismiss the case without due process. A ruling on a motion to extend time is a ruling on that motion to extend time. The adjudication of a1-88 dismissal has to take place separately or after the denial of the motion to extend time. The clerk cannot rely on the footnote to a ruling on a motion to extend time as a basis to say the case has been dismissed. It would be

---

[4] NB: See the wording in my fourth motion to extend time to serve, as shown in **Exhibit 6.**

analogous to a judge denying a motion to extend time and ordering a denial of a motion to waive costs in the same order. This is not proper. There has to be a separate order of dismissal.

24. So, in sum, on 10-28-21, I informed the court by affidavit of service that I had filed service of process timely and I asked that the court allow time to obtain confirmation of receipt of delivery (at least until the time for the defendants has expired which was on 11-12-21), so that I could file a supplemental affidavit of service with confirmation of receipt of service by the defendants. Then there was no further action by the court for the last 20 days. The case has remained opened on the docket. Then on Friday 11-12-21, I filed my supplemental affidavit with proof of service and receipt by the defendants. Why is the filing of my proof of service being rejected? This is unheard of. Moreover, even if the case had been technically dismissed, my filing could be treated by the court as a motion to vacate dismissal. Thus, my filing should have been accepted.

25. Either way, I have the right to address the rulings of the court. Furthermore, even if the case was technically dismissed or was correctly dismissed (which it was not), it does not mean that I am barred from seeking reconsideration, clarification or filing other post-judgment motions, or filing a notice of appeal. I cannot be blocked from filing documents that correct the errors of the court. Why is the clerk or the court so invested in shutting down my case and dismissing my case or keeping my case dismissed? Why not let the defendants respond or let them raise any challenge? If I tell the court that the defendants have confirmed receipt, then why is the court not allowing that to play out? Something is clearly wrong with this picture. The clerk and the court are not following its own rules here. Why is that?

26. I am concerned that this is retaliation because my spouse filed a complaint against certain clerk staff and a judge at Lowell superior court including raising concerns about bias including racial bias. [NB: The clerk staff knows about my spouse and there are several filings in court that have disclosed a marital connection]. It makes no sense why the clerk or the court is behaving so hostile and unreasonable unless it is related to retaliatory animus. These adverse acts are not consistent with court rules. The clerk and the court appear to be going above and beyond to deprive me of my rights.

27. I request that my rejected filings be accepted/that the court accept my filings of 11-12-21 and 11-15-21.

28. I also request, to the extent necessary, that the court reverse/rescind any process for dismissal for lack of service or overturn/vacate any possible dismissal, and allow the case to proceed.

29. NB: Please grant a pro se liberal construction to my writings.

**I hereby depose and saith under oath that the above statements are true and correct to the best of my knowledge, belief and recollection, and sign under the pains and penalties of perjury.**

Respectfully submitted by,

Natalie Anderson

Dated: November 16, 2021

Natalie Anderson

4

8

L1

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss                                    SUPERIOR COURT DEPARTMENT

Case #: 2081CV02957

**RECEIVED**

Natalie Anderson vs. Residence Inn Nashua et al

TK    10/28/2021

<u>AFFIDAVIT OF SERVICE OF PROCESS</u>

I, the Plaintiff in this case, being duly sworn hereby state that I, under the long arm statute, mailed summons and complaints of the above-captioned case to Defendant Residence Inn Nashua and to Defendant Jennifer Brooks on October 22, 2021, to the last known out of state address that I had for them located in the state New Hampshire at 25 Trafalgar Square, Nashua, NH 03063. Thus, service was complete upon mailing pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b). October 22, 2021 was the deadline to serve process on the Defendants, which was the result of the court's order on 9-21-21 on my third request for an extension of the service of process deadline (NB: up until the time of my third request for extension and the court's order of 9-21-21, these three prior requests were made because of the impact of the Covid-19 pandemic, for which the SJC issued directives to all Massachusetts trial courts to liberally allow such extensions by motion). After filing the fourth/most recent request for extension, which in addition to the continuing impact of the pandemic included additional reasons for a final extension including but not limited to the discovery of a recent change in location of one of the defendants among other things, I had hoped the court would allow my request under the circumstances but when I did not see any ruling by the court as of end of the business day on October 22, 2021, I had moved to protect myself by using the last known address that I had, to serve process by mailing under the long arm statute on October 22, 2021 before expiration of the deadline. Hence, I certify that I am in compliance with the service of process deadline and the court's 9-21-21 order, pursuant to the Massachusetts Rules of Civil Procedure Rule 5(b), which states that "service is complete upon mailing". Therefore, based on the rules, when I mailed the documents on October 22, 2021, I met the service of process deadline, in so doing. I have attached a US postal service receipt showing mailing on October 22, 2021 as evidence of the foregoing. I am currently awaiting delivery confirmation from the US post office so that I can provide it to the court as a supplement to this affidavit. The time for the defendants to respond has not passed as yet, which is 20 days from the date of service (i.e., November 11, 2021)[1]. I am informing the court of the above in the meantime and I ask the court to not dismiss this case for lack service under 1-88 pursuant to the above.

Signed under the pains and penalties of perjury.

Respectfully Submitted,

**NATALIE ANDERSON**

Dated: October 28, 2021

---

[1] NB: Rule 4 states: "The person serving the process shall make proof of service thereof in writing to the court promptly and in any event within the time during which the person served must respond to the process."



UNITED STATES
POSTAL SERVICE

BURLINGTON
5 BEDFORD ST
BURLINGTON, MA 01803-9998
(800)275-8777

10/22/2021                                    10:23 PM

Product                    Qty       Unit      Price
                                      Price

First Class Mail
Large Envelope                  1
    Nashua, NH  03063                           $2.38
    Weight: 6.80 oz
    Estimated Delivery Date
        Mon 10/25/2021

7

L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                          SUPERIOR COURT DEPARTMENT

| | | |
|---|---|---|
| NATALIE ANDERSON; | ) | **RECEIVED** |
| Plaintiff, | ) | |
| v. | ) | TK   10/22/2021 |
| | ) | |
| RESIDENCE INN NASHUA; | ) | CIVIL ACTION NO.: 2081CV02957 |
| JENNIFER BROOKS; | ) | |
| Defendants. | ) | |

## <u>FINAL [EMERGENCY] MOTION TO EXTEND TIME TO SERVE PROCESS ON DEFENDANTS</u>

1. I hereby request an extension of time to provide service of process on the defendants. Grounds are below.

2. The time for service of process expires after 10-22-21, which is after today.

3. It has recently come to my attention that one of the defendants, Jennifer Brooks, has changed her location. I need time to properly determine her new address so that I may accurately effectuate service of process under the long arm statute.

4. I also have not received a summons from the court. I thought I had received it but when I checked, I had not. NB: I have a waiver that is supposed to cover the cost of the summons.

5. I also hope to amend the complaint and file it before service but I need legal assistance to do so which I am in the process of seeking.

6. I have also been significantly impacted by and continue to experience difficulties due to the Covid-19 pandemic. This has hampered me and presented obstacles as a pro se African American female, with a higher chance of severe repercussions from Covid-19 due to certain medical conditions.

7. Therefore, due to the foregoing reasons, I ask for a final 60-day extension of time until December 22, 2021. In the alternative, if the court is more inclined to grant 30 days extension, then I would prefer that, instead of a flat denial. But given the above issues including time, as a pro se, to track down a new out of state location/address, during a pandemic, and to ensure it is accurate, I really need 60 days extension.

8. This final extension will also facilitate time for the possible settlement of this case, which would serve judicial economy and spare resources, making the need for litigation moot.

9. This will be the last time that I will request an extension of time to service process.

10. I ask the court to expedite ruling on this motion, so that I can know if it has been allowed, before end of today, so that I will not be prejudiced.

11. I respectfully request that this motion is granted and/or other relief the Court deems just or proper.

Respectfully Submitted,

Natalie Anderson

Dated: October 22, 2021

**6**

L1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT DEPARTMENT

| | | |
|---|---|---|
| NATALIE ANDERSON; | ) | **RECEIVED** |
| Plaintiff, | ) | |
| v. | ) | TK        9/7/2021 |
| | ) | |
| RESIDENCE INN NASHUA; | ) | CIVIL ACTION NO.: 2081CV02957 |
| JENNIFER BROOKS; | ) | |
| Defendants. | ) | |

---

<u>MOTION FOR EXTENSION OF TIME TO SERVE PROCESS ON DEFENDANTS DUE
TO HEALTH REASONS/COVID-19</u>

1. I request an extension of time to provide service of process to the defendants due to health reasons/Covid-19.

2. Grounds are based on the below.

3. The time for service of process expires after 9-7-21.

4. I am still experiencing difficulties due to health reasons/Covid-19, and other personal reasons, and thus I need/ask for, a 90-day extension of time until December 7, 2021.

5. NB: It is my understanding that, based on SJC directives, I do not need to go into any further personal details for this motion.

6. WHEREFORE, I respectfully request that this motion be granted and/or other relief the Court deems just and proper.

Respectfully<br>Submitted,<br><br>_____<br>**Natalie Anderson**

Dated: September 7, 2021

**5**

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                      SUPERIOR COURT DEPARTMENT

| | | |
|---|---|---|
| NATALIE ANDERSON; | ) | |
|      Plaintiff, | ) | **L1** |
| v. | ) | |
| | ) | |
| RESIDENCE INN NASHUA; | ) | CIVIL ACTION NO.: 2081CV02957   **RECEIVED** |
| JENNIFER BROOKS; | ) | 6/3/2021 |
|      Defendants. | ) | |

<u>MOTION FOR EXTENSION OF TIME TO SERVE PROCESS ON DEFENDANTS DUE TO HEALTH REASONS/COVID-19</u>

1. I request an extension of time to provide service of process to the defendants due to health reasons/Covid-19.

2. Grounds are based on the below.

3. The time for service of process expires after 6-7-21.

4. I am still experiencing difficulties due to health reasons/Covid-19, and other personal reasons, and thus I need/ask for, a 90-day extension of time until September 7, 2021.

5. NB: It is my understanding that, based on SJC directives, I do not need to go into any further personal details for this motion.

6. WHEREFORE, I respectfully request that this motion be granted and/or other relief the Court deems just and proper.

Respectfully Submitted,

*Natalie A.L.*

**Plaintiff Natalie Anderson**

Dated: June 3, 2021

JN

4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT

NATALIE ANDERSON;                    )
    Plaintiff,                            )
v.                                                  )
                                                 )
RESIDENCE INN NASHUA;                )     CIVIL ACTION NO.: 2081CV02957
JENNIFER BROOKS;                         )
    Defendants.                          )

**MOTION FOR EXTENSION OF TIME TO SERVE PROCESS ON DEFENDANTS DUE TO HEALTH REASONS/COVID-19**

1. I request an extension of time to provide service of process to the defendants due to health reasons/Covid-19.

2. Grounds are based on the below.

3. The time for service of process expires after 3-8-21.

4. Since the time that I filed the complaint, my spouse has become very ill with symptoms of Covid-19. I am currently caretaking for him and am unable to begin litigation (including effecting service of process) at the present time until he has recovered. This has also created additional difficulties related to the impacts and effects of the pandemic.

5. Therefore, due to health reasons/Covid-19, and other personal reasons, I need, and therefore ask for, a 90-day extension of time until June 7, 2021.

6. NB: It is my understanding that, based on SJC directives, I do not need to go into any further personal details for this motion.

7. WHEREFORE, I respectfully request that this motion be granted and/or other relief the Court deems just and proper.

Respectfully Submitted,

Plaintiff Natalie Anderson

Dated: March 8, 2021

RECEIVED

3/8/2021

Commonwealth of Massachusetts

# AFFIDAVIT OF INDIGENCY

### AND REQUEST FOR WAIVER, SUBSTITUTION
### OR STATE PAYMENT OF FEES & COSTS

*(Note: If you are **currently confined in a prison or jail** and are not seeking immediate release under G.L. c. 248 §1, but you are suing correctional staff and wish to request court payment of "normal" fees (for initial filing and service), **do not use this form.** Obtain separate forms from the clerk.)*

Middlesex Superior                                    20-2957
_____      _____
      **Court**                          **Case Name and Number (if known)**

Name of applicant: Natalie Anderson

Address: 119 Drum Hill Rd. #233   Chelmsford MA   01824
_____   _____   _____
      **(Street and number)**               **(City or town)**        **(State and Zip)**

**SECTION 1:**   Under the provisions of General Laws, Chapter 261, Sections 27A-27G, I swear (or affirm) as follows:
            **I AM INDIGENT** in that *(check only one)*:

Allowed

☑ (A)  I receive public assistance under *(check form of public assistance received)*:

☐ Transitional Aid to Families with Dependent Children (TAFDC)    ☑ Medicaid (MassHealth)

☐ Emergency Aid to Elderly, Disabled or Children (EAEDC)    ☐ Supplemental Security Income (SSI)

☐ Massachusetts Veterans Benefits Programs; **or**

☐ (B)  My income, less taxes deducted from my pay, is $_____ per ☐ week ☐ biweekly ☐ month ☐ year
    *(check the period that applies)* for a household of _____ persons, consisting of myself and _____ dependents;
    which income is at or below the court system's poverty level; *(Note: The court system's poverty levels for households of various sizes must be posted in this courthouse. If you cannot find it, ask the clerk or check online at: http://www.mass.gov/courts/sjc/docs/povertyguidelines.pdf. The court system's poverty level is updated each year.)*

    (List any other available household income for the checked period on this line: $_____ ); **or**

☐ (C)  I am unable to pay the fees and costs of this proceeding, or I am unable to do so without depriving myself
    or my dependents of the necessities of life, including food, shelter and clothing.

**IF YOU CHECKED (C), YOU MUST ALSO COMPLETE THE SUPPLEMENT TO THE AFFIDAVIT OF INDIGENCY.**

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 0 7 2020

_____
CLERK

SECTION 2:    (Note: In completing this form, please be as specific as possible as to fees and costs known at the time of filing this request. A supplementary request may be filed at a later time, if necessary.)

I request that the following **NORMAL FEES AND COSTS** be waived (not charged) by the court, or paid by the state, or that the court order that a document, service or object be substituted at no cost (or a lower cost, paid for by the state): (Check all that apply and, in any "$____" blank, indicate your best guess as to the cost, if known.)

☑ Filing fee and any surcharge. $ _____

☐ Filing fee and any surcharge for appeal. $ _____

☐ Fees or costs for serving court summons, witness subpoenas or other court papers. $ _____

☐ Other fees or costs of $ _____ for (specify): _____

_____

☐ Substitution (specify): _____

_____

SECTION 3:    I request that the following **EXTRA FEES AND COSTS** either be waived (not charged), substituted or paid for by the state:

☐ Cost, $ _____ , of expert services for testing, examination, testimony or other assistance (specify):

_____

☐ Cost, $ _____ , of taking and/or transcribing a deposition of (specify name of person):

_____

☐ Cassette copies of tape recording of trial or other proceeding, needed to prepare appeal for applicant **not** represented by Committee for Public Counsel Services (CPCS-public defender).

☐ Appeal bond

☐ Cost, $ _____ , of preparing written transcript of trial or other proceeding

☐ Other fees and costs, $ _____ , for (specify): _____

_____

☐ Substitution (specify) _____

| Date signed | Signed under the penalties of perjury |
|---|---|
| 12-7-20 | x _Natelie A Al_ |

**By order of the Supreme Judicial Court, all information in this affidavit is CONFIDENTIAL. Except by special order of a court, it shall not be disclosed to anyone other than authorized court personnel, the applicant, applicant's counsel or anyone authorized in writing by the applicant.**

This form prescribed by the Chief Justice of the SJC pursuant to G.L. c. 261, § 27B. Promulgated March   , 2003. Fillable PDF created August 2013.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER `20-2957` | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Natalie Anderson

**ADDRESS:** 679 Washington Street, #8-206
Chelmsford, MA 01824

**COUNTY:** Middlesex

**DEFENDANT(S):** Residence Inn Nashua, Jennifer Brooks

**ATTORNEY:** PRO SE

**ADDRESS:** 25 Trafalgar Square, Nashua, NH 03063.

**BBO:**

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| BE1 | Business Torts | A | ☑ YES  ☐ NO |

**"If "Other" please describe:**
Invasion of privacy, retaliation, consumer violations, breach of contract, interference with contract, IIED, etc

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, §3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

Damages exceeds $50,000 in an amount to be determined at trial

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ................................................................. $ _____
   2. Total doctor expenses .................................................................. $ _____
   3. Total chiropractic expenses ......................................................... $ _____
   4. Total physical therapy expenses ................................................... $ _____
   5. Total other expenses (describe below) .......................................... $ _____
   Subtotal (A): $ _____

B. Documented lost wages and compensation to date ............................. $ _____
C. Documented property damages to dated ........................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ............ $ _____
E. Reasonably anticipated lost wages .................................................. $ _____
F. Other documented items of damages (describe below) ....................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$ _____

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $ _____

**Signature of Attorney/Pro Se Plaintiff:** X _Natalie And_   **Date:** 12-7-20

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X _____   **Date:** _____

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT

NATALIE ANDERSON;                        )
      Plaintiffs,                             )
v.                                                    )
                           )
RESIDENCE INN NASHUA;                  )        CIVIL ACTION NO.: 20-2957
JENNIFER BROOKS;                          )
                                                      )
      Defendants.                            )

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 0 7 2020

CLERK

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. The plaintiff in the above captioned case hereby submits this complaint against the Defendants for invasion of privacy, breach of contract, retaliation in violation of state and federal anti-discrimination laws in public accommodations, among other claims as outlined below. Plaintiff demands a jury trial.

## INTRODUCTION

2. The plaintiffs bring a claim of invasion of privacy, breach of contract, breach of the covenant of good faith and fair dealing, interference with contract and business advantage, unfair treatment based on having made complaints about discrimination based on race (including violations of Title II, and Section 1981, and other state regulations, etc.), unfair and deceptive practices, infliction of emotional distress, consumer protection violations, and other wrongs, on the part of the defendants. All of which have caused the plaintiffs injury and substantial damages as outlined in this complaint.

## PARTIES

3. Plaintiff Natalie Anderson is an individual who resides in Massachusetts.

4. Defendant Marriott International (hereinafter "Marriott") engages in the operation, management, and franchising of hotels, including the Residence Inn line of franchises. Marriott owns, operates, manages, or franchises multiple hotels in the New England area, including Massachusetts and New Hampshire. Marriott operates, manages or franchises the Residence Inn Nashua hotel property.

5.  Defendant Residence Inn of Nashua ("Residence Inn Nashua") is a franchisee of Marriott and is managed by a operations company that owns or operates multiple commercial and residential properties in Massachusetts and New Hampshire.

6.  Defendant Jennifer Brooks is the general manager of Residence Inn Nashua.

## JURISDICTION AND VENUE

7.  The Massachusetts Superior Court has jurisdiction over this action pursuant to its laws and the amount in controversy exceeds $50,000, exclusive of interest and costs, in an amount to be determined at trial.

## INVASION OF PRIVACY

8.  The defendants violated the plaintiff's privacy by divulging to a hostile third party certain sensitive private and personal information about the plaintiff and about its agreement with plaintiff and about plaintiff's stay at Defendants' hotel. This invasion of privacy was wanton and reckless and without regard to the plaintiff's rights, and resulted in damages.

### Plaintiff Had Privacy and Contractual Rights

9.  Marriott hotels, including Residence Inn Nashua, generally has a privacy and confidentiality agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at the hotel and, in this case, when the plaintiff stayed at defendants' hotel in 2017.

10. Additionally, the defendants had a specific agreement with the plaintiff, that was entered into between the plaintiff and the Residence Inn specifically in November 2017, to keep information about their stay private and confidential and to not release any information to anyone without their consent. This agreement was triggered specifically because of the harassing anonymous phone-calls that were made/directed to plaintiff at the end of November 2017.

11. Hence, in addition to the expectation of privacy that attaches generally to any hotel guest when they stay at a Marriott hotel, as a matter of privacy law and constitutional law, there is an additional expectation of privacy that attaches to a guest that stays at a Marriott hotel given Marriott's publicly announced policies and promises, upon which customers rely on to their detriment. And beyond even that, the plaintiff had an even greater or additional expectation of privacy based on the specific agreement that was entered by defendants to protect and safeguard the information of the Plaintiff for safety and privacy reasons.

12. The plaintiff therefore had a strong privacy interest and a contractual interest in keeping this information private and confidential. Such information also contains credit card

information used, and other personal and private information including but not limited to rewards card information, rewards and loyalty patterns, purchase habits, other private financial data, data regarding personal preferences and requests.

13. Courts across the nation have enforced the privacy rights of hotel guests. See Erin Andrews v. Marriott International, Inc., 2016 IL App (1st) 122731, where the plaintiff was awarded approximately $55 million for the violations of the privacy rights of a hotel guest.

## More on Privacy Rights

14. All hotels also have an interest in protecting the privacy of their hotel guests. See City of Los Angeles v. Patel (US Supreme Court 2015).

15. If hotel guests are made to believe that their information will not be protected, hotels will lose customers and market share. This is especially true for larger global brands, who rely heavily on their reputational assets for global market share.

16. Because defendants had a specific agreement with the plaintiff to keep information about their stay private and confidential and to not release any information to anyone without their consent, then the defendants also had a contractual obligation towards the plaintiff.

17. This obligation should not have been interrupted because of a third party wanted to go on a fishing expedition and obtain private information about the plaintiff

18. The defendants know better and they know that Marriott hotels have privacy agreements concerning their guest information. The fact that the defendants were so cavalier with divulging plaintiff's private information to a third party shows a wanton disregard for plaintiff's privacy rights.

## Breach of Implied Contract

19. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiffs.

20. Marriott, including Residence Inn line of business, have a contractual agreement with customers, as represented by its policies and promises made public. This agreement is in effect whenever a guest stays at their hotels and, in this case, when the plaintiffs stayed at Residence Inn Nashua.

21. Plaintiffs relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail themselves of all of the benefits, access, resources and protections available to them as promised by Defendants.

22. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive and disparate manner and by retaliating against plaintiff when defendants learned she had raised concerns in a court complaint about how she was treated by a neighboring hotel.

23. As a result of those actions, plaintiff has suffered and will continue to suffer damages.

24. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

25. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

26. Plaintiff had a reasonable expectation that defendants would adhere to the terms of such contract.

27. Plaintiffs further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and other federal and state regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation.

28. Moreover, the defendants allowed itself be influenced by the third party interference.

29. Similarly, the complaint of discrimination against a neighboring hotel, did cause conflict between the plaintiff and the defendants, where the defendants allows that complaint against a neighboring hotel to influence how it treated the plaintiff, which is a form of associational discrimination. It was only after the defendants became aware that plaintiff had previously made a discrimination claim against a neighboring hotel, did the defendants then suddenly began to shift its dealing and treatment of the plaintiff, resulting subtle and constructive attempts at breaching the agreement with plaintiff.

## RETALIATION

30. The defendants sought to constructively break plaintiff's rental agreement for reasons related to plaintiff raising concerns that a neighboring hotel (not the defendants' hotel) had engaged in racial discrimination and retaliation for raising concerns about discrimination, against the plaintiff.

31. Defendants then, suddenly and without explanation, began to treat the plaintiffs differently and less favorably, and thus engaged in intentional conduct in violation of laws against discrimination and retaliation with malice and reckless indifference with respect to plaintiffs' protected rights.

32. Defendants sought to breach the agreement with plaintiff in retaliation because she raised concerns about racial discrimination by another neighboring hotel.

33. The defendants engaged in conduct adverse to the plaintiff within weeks of them finding out about the discrimination complaints against the neighboring hotel.

34. There is a temporal proximity and a 'causal connection' or 'causal link' between the protected activity and the adverse action i.e. defendants took adverse action because plaintiff engaged in protected activity.

## DISCRIMINATION

35. Defendants thus have also violated 42 U.S.C. § 1981. Section 1981 provides: *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to **make and enforce contracts**, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).* The statute also states that *"[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."* 42 U.S.C. § 1981(b).

36. The Defendants denied plaintiff the use and enjoyment of the benefits, privileges, terms and conditions that they extend to all other similarly situated guests, residents and invitees. The Defendants breached their contract with plaintiff and discriminated against plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the state code.

37. To state a *prima facie* case of discrimination, the plaintiff is to show that: (1) they belonged to a protected class; (2) they sought to make a contract for services ordinarily provided by the defendant; and (3) they were denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory. *Id.* at 872. In our case, we have clearly met this burden for a prima facie case of discrimination, as follows:

38. The plaintiff is African-American and belong to a protected class. This is undisputable.

39. Plaintiff sought to make and enforce a contract for services ordinarily provided by the defendants. This is undisputable.

40. Plaintiff was denied the right to enter/enforce a contract for such services while similarly situated persons outside the protected class were not and plaintiff was treated in such a hostile manner that a reasonable person would find it objectively discriminatory.

41. By not completing the contract, Defendants have interfered with the making and enforcement of a contract.

42. Defendant's actions against Plaintiff have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiff.

## VIOLATION OF FEDERAL CIVIL RIGHTS STATUTE 42 U.S.C. § 1981

43. By the above acts, Defendants violated 42 U.S.C § 1981 by discriminating against plaintiff because of their race as African American [black].

44. Section 1981 guarantees freedom from racial discrimination in the making, enforcement performance, modification, and termination of contracts.

45. Section 1981 also guarantees enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

46. Plaintiff's use of the Defendant's hotel and services falls under section 1981 protection.

47. Defendant has (1) intentionally discriminated against Plaintiff with respect to the terms and conditions and privileges of a place of public accommodations, because of Plaintiff's race; and (2) limited and classified Plaintiff's in ways that adversely affected their status as customers, because of their race; all in violation of Title II of the Civil Rights Act of 1964. As a direct and proximate result of Defendant's intentional, deliberate and willful discriminatory acts and omissions, Plaintiff has suffered damages.

48. Discrimination in hotel accommodations include refusals to provide African Americans service, or the harassment of African-American customers, or providing inferior service to African Americans. This country has had a dark history throughout the country, including throughout the south where the Civil Rights Movement of the 1960s was symbolized by challenges to segregation in places of public accommodations and gaining equal access to hotels, restaurants, lunch counters, and stores for African Americans.

49. The right of African-American customers to be free from discrimination in hotel accommodations have been upheld in landmark cases such as: Gilliam v. HBE Corp. (d/b/a Adam's

50. Mark Hotel), a challenge to discriminatory treatment of African-American guests at the Adam's Mark Hotel during the 1999 Black College Reunion in Daytona Beach that settled for $2.1 million; and the series of cases challenging the pervasive discrimination against African-Americans during the annual Black Bike Week in Myrtle Beach, South Carolina.

51. Moreover, retaliation for opposing discrimination is against public policy because it creates a chilling effect on the society's goal of encouraging citizens to oppose, report and speak up about discriminatory practices wherever they occur.

52. The above raises an important question of federal law as it implicates federal concerns pertaining to the eradication or prevention of race discrimination in public accommodations. It also implicates the issue of the right to make and enforce contracts as an equal protection/constitutional right (as well as certain rights under Title VIII and/or Title II of the Civil Rights Act).

## PLAINTIFF'S FURTHER CONTRACT CLAIMS

53. Where there is an agreement between a hotel and a customer to rent a unit for a specified time, the hotel has a duty to the customer, who has confirmed this arrangement, to honor its end of the bargain by providing the customer with the service which they both agreed upon.

54. In Kellogg v. Commodore Hotel, 187 Misc. 319, 64 N.Y.S.2d 131 (Sup. Ct. 1960), the parties entered into a written contract for accommodations. The defendant hotel for value received promised to provide the plaintiff with a room for four days. Upon defendant's refusal to honor the contract, made two weeks in advance, the plaintiff recovered $5000 for the extra expenses caused by the defendant's cancellation of the contract.

55. In Thomas v. Pick Hotels Corporation, 224 F.2d 664 (10th circuit, 1955), the plaintiffs in that case, who were black, were refused accommodations because of their race. The defendant hotel had previously agreed in writing and later by telephone to provide the plaintiffs lodging on a specified date. The court held that Plaintiffs' complaint based on such facts, stated a claim on an express written contract. The Plaintiffs' reservations were held to constitute a contractual obligation. By refusing to honor this reservation, the hotel breached that contract. The Thomas court stated that there was no statutory, common-law, or public policy barrier preventing the parties from entering into a valid and enforceable contract for hotel accommodations.

56. By seeking to breach or facilitate the breach of our agreement, the defendants also sought to interfere with our contractual relations with the Defendants.

## BREACH OF CONTRACT AND IMPLIED CONTRACT

57. Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

58. In addition to the breach of expressed contract outlined above, the Defendants have also published materials containing policies, terms, guidelines, representations and promises which created an implied contract with plaintiff.

59. Plaintiff relied on the terms and conditions of the published policies, terms, guidelines, representations and promises of Defendants in seeking to avail himself of all of the benefits, access, resources and protections available to his as promised by Defendants.

60.

61. Defendants breached this implied contract by refusing to follow their own policies, by treating the plaintiff in an unfair, deceptive and disparate manner and by retaliating against plaintiffs when they raised concerns about how they were being treated or about their adherence to their own policies.

62. As a result of those actions, plaintiff have suffered and will continue to suffer damages.

63. Plaintiff and the defendants had a contractual relationship both expressed as well as implied.

64. Such contract was formed on the one hand by the agreement entered into through the sales office but also by the advertisement and inducements offered by the defendants to customers with the terms contained in materials on its websites and other places.

65. Plaintiff had a reasonable expectation that the defendants would adhere to the terms of such contract.

66. Plaintiff further had a reasonable expectation that Defendants would comply with the requirement under Title II regulations and federal regulations to provide equal treatment and equitable process to all guests including black guests. The public has a right to know if the defendants will stand behind their policies of non-discrimination and non-retaliation. If plaintiff had known upfront that the defendants would have engaged in such discriminatory and retaliatory practices, plaintiff would likely have elected to stay elsewhere, investing their resources, equity and time other than at Residence Inn Nashua.

67. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

68. Plaintiff re-allege and incorporate all paragraphs above as if fully set forth herein.

69. Defendants owed to Plaintiff a duty of utmost good faith and fair dealing and thereby was obligated to consider the welfare of Plaintiff, to refrain from acting for purely selfish motives or private gain, and to desist from destroying or injuring the right of the Plaintiff to receive the fruits of the contract.

70. Through its actions and inactions, Defendants breached its duty of good faith and fair dealing to plaintiff, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Plaintiff's rights and interests.

71. By the conduct alleged herein, the defendants have breached the implied covenant of good faith and fair dealing and caused harm to plaintiff.

72. As a result, Plaintiff has suffered damages.

## INTERFERENCE WITH ADVANTAGEOUS RELATIONSCONTRACTUAL RELATIONS

73. Plaintiff hereby reallege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

74. Plaintiff possessed an advantageous relation with Marriott and thereby all Marriott franchises.

75. As a result of these employee defendants' misconduct, Plaintiff's advantageous relations/contractual relations may be irretrievably damaged. Plaintiff has suffered and will continue to suffer substantial and irreparable harm.

76. Plaintiff anticipated further advantageous relations with Marriott and Residence Inn Nashua in the future.

77. By its above described conduct, *inter alia,* these certain defendants have knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with Plaintiff's actual and potential advantageous relations and contractual relations.

78. As a result of these certain Defendants' intentional interference, plaintiff has suffered and continue to suffer damages.

## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiff hereby reallege and incorporate by reference each of the preceding paragraphs of this as if fully stated herein.

80. Defendants have caused harm to plaintiff, including stress, loss of sleep, emotional upset, anxiety, etc.

81. Defendants caused or created emotional distress for Plaintiff.

82. Defendants knew that discriminating/retaliating/threatening/harassing Plaintiff would cause emotional distress.

83. Defendants intentionally inflicted emotional distress on Plaintiff when as a direct and proximate result of Defendants actions and inactions Plaintiff were caused to suffer severe

emotional distress as the result of which a reasonable person in Plaintiff's position would have suffered similar emotional distress under like circumstances.

84. Plaintiff sustained damages as a result of Defendants intentional infliction of emotional distress on them.

85. Intentional infliction of emotional distress requires "extreme and outrageous conduct intentionally or recklessly cause[d] severe distress to another."

86. Alternatively, plaintiff plead a negligent infliction of distress claim, relying upon the same facts and elements of an intentional infliction of emotional distress claim.

WHEREFORE, I respectfully pray that the Court grant the following relief:

(1) Enter judgment in Plaintiff's favor and against Defendants for: any and all damages acceptable by law, including compensatory damages, statutory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, relief pleaded in the preceding paragraphs, injunctive relief and such other and further relief as Plaintiff may be entitled to by bringing this action.

(2) Award damages within the jurisdictional limits of this court and enhanced damages as appropriate.

(3) Award reasonable attorneys' fees and costs including service and filing fees.

(4) Order such other relief as this Court deems just and equitable.

(5) Enter an order, enjoining the defendants from : i) destroying, altering, deleting relevant information or any other act that would impede or hinder their obligation to preserve any relevant information, including electronically stored materials such as email communications, hotel video footage, etc., relating in any way to the subject matter of this dispute.

Respectfully Submitted,

Natalie Anderson
679 Washington Street, #8-206
(617) 710-7093

Dated: December 7, 2020

MIDDLESEX, SS.   *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set by hand and affix the seal of said Superior Court this 5TH DAY OF OCTOBER, 2022

Deputy Assistant Clerk